# EXHIBIT 21

**Charitable DAF HoldCo, Ltd**
(the "**Company**")

_____

**Unanimous Written Resolutions of the Board of Directors of the Company**
_____

**1      Directors' Interests**

1.1    It is noted that none of the directors of the Company (together the "**Directors**", and each a "**Director**") have any monetary or financial interest in the matters referred to herein.

**2      Recent Developments**

2.1    It is noted that the Directors have received communications from certain current Participating Shareholders requesting information and making false and misleading claims regarding the Company's and its subsidiaries' finances.

2.2    It is noted that the Directors believe the aforementioned communications were motivated and/or directed by James Dondero as retaliation for Mark Patrick's resignation from Skyview Group and the Company's various efforts to create independence between the Company and its subsidiaries on the one hand and James Dondero and his affiliates on the other hand.

2.3    It is noted that the Directors have knowledge that the false and misleading information forming the basis of these claims was provided by SEI, a back-office service provider to the Company and certain of its subsidiaries, to employees of certain Dondero-controlled entities such as Skyview Group or NexPoint.

2.4    It is noted that none of the concerns raised by the current Participating Shareholders were raised prior to Mark Patrick's resignations from Skyview Group, despite there being no change in the information provided or the frequency of information provided.

**3      U.S. Counsel Tax Advice**

3.1    It is noted that the Directors have received United States Tax Counsel advice that, among other things:

      (a)    "there is a significantly heightened risk that the Internal Revenue Service of the United States could severely penalize and/or revoke the tax-exempt status of one or more of the current Participating Shareholders, which could imperil the status and assets of the Company"; and

      (b)    "Increasing the number of Participating Shareholders would mitigate considerations of undue influence/private inurement/private benefit and broaden the scope of DAF's charitable reach to the public; and

      (c)    "The IRS will look favorably upon any and all attempts for DAF to maintain its

independence from what seems to be persistent attempts by James Dondero and the entities controled by him to use DAF for his private benefit and private inurement."

3.2    It is noted that the Directors believe the Share Issuance (as defined below) to DFW (as defined below) is based on this U.S. tax advice and will protect the Company and the current Participating Shareholders and will also further the Company's charitable mission.

**4    Cayman Counsel Legal Advice**

4.1    It is noted that the Directors have sought and obtained legal advice from separate Cayman Islands counsel ("**Walkers**"), who have confirmed that (i) the Directors have the ability to issue new Participating Shares as contemplated by the Share Issuance, (ii) if the Directors believe the Participating Shares are held by a Restricted Person (as defined in Article 21 of the Company's M&A), the Directors may require such shareholder to transfer its shares, and (iii) the Participating Shareholders have no or limited rights to information.

4.2    It is noted that attached as Exhibit A hereto is the Walkers presentation outlining the rights accompanying the Participating Shares (the "**Walkers Presentation**").

**5    Issue of Shares**

5.1    It is noted that the Company proposes to issue 318 Participating Shares of a nominal or par value of US$0.01 each as fully paid up (the "**Participating Shares**") to DFW Charitable Foundation ("**DFW**"), a Delaware non-profit non-stock corporation (the "**Share Issuance**").

5.2    Following the Share Issuance, DFW shall own 51.04% of the issued Participating Shares of the Company.

5.3    It is resolved that:

    (a)    the Share Issuance be approved with effect from the date of these resolutions;

    (b)    Campbells Corporate Services Limited be and is hereby instructed to make the appropriate entry in the register of members of the Company in respect of the Share Issuance;

    (c)    any and all actions of the Company, the Directors or any officer of the Company taken in connection with the actions contemplated by the foregoing resolutions prior to the execution hereof be and are hereby ratified, confirmed, approved and adopted in all respects as fully as if such actions had been presented for approval and approved by the Directors prior to such action(s) being taken; and

    (d)    the Directors shall meet on not less than a quarterly basis to discuss recent developments and how to best protect the Company and its shareholders.

**6**      **Ancillary Documents**

6.1     It is further resolved that:

(a)      the Company do give, make, sign, execute and deliver all such agreements, letters, notices, certificates, acknowledgements, instructions and other documents (whether of a like nature or not) (the "**Ancillary Documents**") as may in the sole opinion and absolute discretion of any Director be considered necessary or desirable for the purpose of compliance with any condition precedent or the coming into effect of or otherwise giving effect to, consummating or completing or procuring the performance and completion of all or any of the transactions contemplated by or referred to in all or any of the documents referred to above and the Company do all other such acts and things as might in the sole opinion and absolute discretion of any Director be necessary or desirable for the purpose aforesaid;

(b)      the Ancillary Documents be in such form as any Director should in his absolute discretion and sole opinion approve, the signature of any such person on any of the Ancillary Documents being due evidence for all purposes of his approval of the terms thereof on behalf of the Company;

(c)      the Ancillary Documents (where required to be executed by the Company) be executed by the signature thereof of any one Director together with such changes as such Director shall in his absolute discretion consider necessary or appropriate (the signature of such Director on any Ancillary Document being conclusive evidence of his approval of the same for and on behalf of the Company);

(d)      the Ancillary Documents be valid, conclusive, binding on and enforceable against the Company when executed and delivered in the manner aforesaid;

(e)      any and all actions of the Company, or of any Director or officer, taken in connection with the actions contemplated by the foregoing resolutions prior to the execution hereof be and hereby are ratified, confirmed, approved and adopted in all respects as fully as if such action(s) had been presented to for approval, and approved by, the Directors prior to such action being taken; and

(f)      the prior execution of any Ancillary Documents by any Director are approved, ratifed and confirmed in all respects.

*[signature page(s) follow(s)]*

_____
Name: **Mark Patrick**
Title: Director


Date: 2-7-2025


Name: **Paul Murphy**
Title: Director


Date: 7th February 2025

#6777948v3

**Exhibit A**

**Walkers Presentation**

 Walkers

Participating Shareholder Rights
**Charitable DAF Holdco Ltd.**

Making financial services work

Bermuda | British Virgin Islands | Cayman Islands | Dubai | Guernsey | Hong Kong | Ireland | Jersey | London | Singapore



# Binding Effect of Articles of Association

Walkers  |  Making financial services work

# Binding Effect of Articles of Association

"… the binding effect of the Articles as they stand … is given statutory force by section 25(3) of the Companies Law which reads:

'(3) Where registered the said articles of association shall bind the company and the members thereof to the same extent as if each member had subscribed his name and affixed his seal thereto, and there were in such articles contained a covenant on the part of himself, his heirs, executors and administrators to conform to all the regulations contained in such articles subject to this law; ….'"

(*In the Matter of Strategic Turnaround Master Partnership Ltd* [2008] CIGC J1128-1, per Chief Justice Smellie at paragraph 135)

# Participation in Discretionary Dividends

# Participate in Discretionary Dividends

"The Participating Shares shall confer upon the Shareholders … the right to participate in the profits or assets of the Company in accordance with these Articles." **(Art 12)**

# Participation in Discretionary Dividends

"The Directors may, before recommending or declaring any dividend, set aside out of the funds legally available for distribution such sums as they think proper as a reserve or reserves which shall, in the absolute discretion of the Directors be applicable for meeting contingencies, or for equalising dividends or for any other purpose to which those funds may be properly applied and pending such application may in the absolute discretion of the Directors, either be employed in the business of the Company or be invested in such investments as the Directors may from time to time think fit." **(Art 102)**

"Subject to any rights and restrictions for the time being attached to any Participating Shares, all dividends shall be declared and paid in such amounts as may be declared by the Director's in their sole and absolute discretion without a requirement to pay such dividends on a pro-rata basis as to the paid-up or par value of the Shares." **(Art 105)**

**Participating Shareholders do not have:**

- **the right to cause or vote on distributions;**

- **the right to pro rata distributions based on their shareholding;**

- **the right to annual or timed distributions; or**

- **the right to receive notice of distributions to other Participating Shareholders.**

# Removal of Directors

Walkers | Making financial services work

# Removal of Directors

"Subject to these Articles, a Director shall hold office until such time as he is removed from office by Ordinary Resolution." **(Art 65)**

**Participating Shareholders do not have:**

- the right to remove Directors; or

- the right to appoint Directors.

**Note: the right to appoint Directors is held by the Management Shareholder and the Directors, and the right to remove Directors is held solely by the Management Shareholder (Articles 64, 65, and 69, and Definition of "Ordinary Resolution").**

# Modification of Rights

# Modification of Rights

"… the rights attached to [any] Class may … only be materially adversely varied or abrogated with the consent in writing of the holders of not less than two-thirds of the issued Participating Shares of the relevant Class or with the sanction of a resolution passed at a separate meeting of the holders of the Participating Shares of such Class by a majority of two-thirds of the votes cast at such a meeting." **(Art 13)**

**Participating Shareholders do not have:**

- **the right to cause a distribution; or**

- **the right to amend the Articles.**

# Modification of Rights – Issuance of Shares

"The rights conferred upon the holders of the Participating Shares of any Class issued with preferred or other rights shall not … be deemed to be materially adversely varied or abrogated by, *inter alia*, the creation, allotment or issue of further Participating Shares ranking *pari passu* with or subsequent to them or the redemption or purchase of any Participating Shares of any Class by the Company." **(Art 14)**

"… all Shares for the time being unissued shall be under the control of the Directors who may:

(a)     issue, allot and dispose of the same to such Persons, in such manner, on such terms and having such rights and being subject to such restrictions as they may from time to time determine;

(b)     and grant options with respect to such Shares and issue warrants or similar instruments with respect thereto;

and, for such purposes, the Directors may reserve an appropriate number of Shares for the time being unissued." **(Art 7)**

**Participating Shareholders do not have:**

• **the right to vote on the issuance of further Participating Shares;**

• **pre-emption rights; or**

• **the right to receive notice of such issuance.**

# Modification of Rights – Issuance of Shares

"The capital of the Company is US$50,000.00 divided into 4,999,900 Participating Shares of a nominal or par value of US$0.01 each 100 Management Shares of a nominal or par value of US$0.01 each…" **(Art 7)**

**Note:** Of the authorised share capital of the Company, 305 Participating Shares have been issued. In accordance with the Articles, the Directors may unilaterally issue additional Participating Shares and thereby dilute the power of existing shareholders for the purposes of voting on matters that may materially adversely vary or abrogate the rights of the Participating Shareholders.

**Additional Note: many of the rights that shareholders of a company typically hold (e.g. the right to receive notices, and the right to vote at general meetings, including in respect of the appointment and removal of directors) are held by the Management Shareholder (Mark Patrick) rather than the Participating Shareholders. In addition, the Directors (Mark Patrick and Paul Murphy) have the ability to unilaterally declare dividends and issue new Participating Shares without the approval of the Participating Shareholders (or the Management Shareholder).**

# Share Redemption

# Share Redemption

""**Participating Share"** means a non-voting, participating, <u>non-redeemable share</u> in the capital of the Company of $0.01 nominal or par value issued subject to and in accordance with the provisions of the Act and these Articles…"

"… the Company shall have <u>power to redeem</u> or purchase any of its shares and to sub-divide or consolidate the said shares or any of them…" **(Paragraph 7, Memorandum)**

"The rights conferred upon the holders of the Participating Shares … shall not … be deemed to be materially adversely varied or abrogated by … <u>the redemption</u> or purchase of any Participating Shares of any Class by the Company." **(Art 14)**

**Participating Shareholders do not have:**

- the right to redeem their shares; or

- the right to vote on the Company's redemption of their shares.

# Transfer of Shares

# Share Transfer by Notice of the Directors – Restricted Person

"If it comes to the notice of the Directors that any Shares are held by a Restricted Person the Directors may by notice in writing require the transfer of such Shares in exercise of their powers under these Articles." **(Art 21)**

"**Restricted Person**" means any Person holding Participating Shares:

a) in breach of the law or requirements of any country or governmental authority;

b) that is not an entity or organisation exempt from taxation under Section 501(c)(3) of the Code or an entity or organisation all of whose beneficiaries are exempt under Section 501 (c)(3) of the Code; or

c) in circumstances (whether directly or indirectly affecting such Person and whether taken alone or in conjunction with any other Person, connected or not, or any other circumstances) which, in the opinion of the Directors, might result in the Company incurring any liability to taxation or suffering any other pecuniary, legal, regulatory or administrative disadvantage which the Company might not otherwise have incurred or suffered."

**<u>Note: the Directors have duties to act, and to exercise their powers, in the best interests of the Company. The scope of those duties includes continually evaluating whether any Participating Shareholder may pose a threat to the Company which could cause them to fall within the definition of Restricted Person, and how best to protect the Company against any such threat.</u>**

# General Meetings

# General Meetings

"Participating Shares shall confer upon a Shareholder no right to receive notice of, to attend, to speak at nor to vote at general meetings of the Company..." **(Art 12)**

**Participating Shareholders do not have:**

- **the right to receive notice of general meetings;**

- **the right to attend general meetings;**

- **the right to speak at general meetings;**

- **the right to vote at general meetings; or**

- **the right to information regarding proceedings of general meetings.**

# Limited Information Rights

# Limited Information Rights

"The books of account relating to the Company's affairs shall be kept in such manner as may be determined from time to time by the Directors." **(Art 108)**

"The Directors may from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of Shareholders not being Directors, and <u>no Shareholder</u> (not being a Director) <u>shall have any right of inspecting any account or book or document of the Company</u> except as conferred by law or authorised by the Directors or by Ordinary Resolution." **(Art 110)**

**Participating shareholders have <u>very limited </u>information rights. Specifically, the articles do not provide the Participating Shareholders with the following:**

- **the right to inspect any account;**

- **the right to inspect any book; or**

- **the right to inspect any document of the Company.**

Further to the above, we note that :

- This only applies to the limited company which issued the participation shares, i.e. DAF HoldCo;

- It does not apply to subsidiary entities;

- It does not apply to entities in which DAF HoldCo holds a passive interest; and

- There is no "look- through" down through all the entities in the structure.