# EXHIBIT 58

**CHARITABLE DAF HOLDCO, LTD.**
**(THE "COMPANY")**

**WRITTEN RESOLUTIONS OF THE**
**DIRECTORS OF THE COMPANY**

**MADE ON 1 October 2024**

The undersigned, being all of the Directors of the Company, hereby resolve, pursuant to the Articles of Association of the Company, the following directors' resolutions. Any capitalized terms not defined herein are taken from the Directors' Resolution dated 12th September 2024.

1. **ESTABLISHMENT OF COMPENSATION COMMITTEE/GUIDELINES AND APPOINTMENT OF MEMBERS OF COMPENSATION COMMITTEE.**

   1.1 **NOTED THAT:**

   (a) The Company does not presently have a compensation committee and the Directors believe it is in the best interest of the Company to establish a compensation committee which will be guided and governed by compensation committee guidelines established by the Directors.

   (b) Given the Directors knowledge and experience of the Company, the initial appointments to the compensation committee will be Mark Patrick and Paul Murphy.

   1.2 **IT IS RESOLVED THAT:**

   (a) The Company establish a compensation committee (**"Compensation Committee"**) and adopt the guidelines in the form substantially contained in Appendix 1 to these resolutions (**"Compensation Committee Guidelines"**).

   (b) Mark Patrick and Paul Murphy be appointed to the Compensation Committee.

   (c) The Company empowers the Compensation Committee to make recommendations to the Directors on all matters outlined in the Compensation Committee Guidelines, provided that, all recommendations by the Compensation Committee are subject to review and approval by the Directors.

   (d) The Compensation Committee shall not make any recommendations in relation to Mark Patrick's compensation arising from the resolution passed by the Directors on 12th September 2024, in particular, the LTI payment and annual bonus resolution passed in these Directors' Resolutions paragraph number 2.

2. **FURTHER REVIEW AND APPROVAL OF COMPENSATION FOR MARK PATRICK AND EMPLOYMENT AGREEMENT.**

   2.1 **NOTED THAT:**

   (a) On 12 September 2024, the Directors passed a directors' resolution addressing Mark Patrick's compensation as a Director, President/CEO, Chief Investment Officer and General Counsel of the Company. The Directors approved compensation in the following amounts:

      a. Base salary: USD $850,000.

**340**

      b. LTI tied to Charitable DAF Fund LP ("DAF LP") returns: 7.5% of annualized net fund returns in excess of 10% (capped at 25% annualized return).

(b) In addition, the Directors resolved that they would assess:

      a. Whether any adjustment should be made to the LTI calculation based on whether the calculation should be made net of all expenses or net of fund expenses; and

      b. Whether Mr. Patrick should receive an annual bonus and the basis of that annual bonus.

LTI

(c) Paul Murphy noted that the return of the Company is impacted by whether legal expenses should be included as an operational expense of the Company (in which case the LTI payment would be lower) or whether legal expenses have been incurred not as an operational expense but as an expense to preserve, protect and maximize returns to the Company (in which case it is appropriate to exclude these expenses when assessing the Company's return thereby raising the LTI payment, in whole or in part).

(d) Paul Murphy, having a detailed and working knowledge of the Company's legal issues, and having commissioned Shawn Raver, legal advisor to the Company, to provide a breakdown of legal fees (i) which are attributable to the normal operation of the Company's investment portfolio, and (ii) which have been incurred to preserve, protect and maximize returns to the Company, who has assessed that 75% of those legal fees have been incurred to preserve, protect and maximize returns to the Company.

(e) Accordingly, the LTI calculation should be adjusted to award 75% of the difference between the figures noted in page 9 of the Mercer Report which is $975,000.[1]

Annual Bonus

(f) Paul Murphy conducted an independent assessment of whether Mark Patrick should receive an annual bonus and the basis of that annual bonus having regard to the Mercer Report, further discussions with Heidi O'Brien (Partner at Mercer), further review of industry comparables with CEO/CIO roles in complex structured finance senior positions, and assessment of other charitable organisations/structures (acknowledging that the Company and its subsidiaries are not subject to United States of America regulations).

(g) Having (i) reviewed the Compensation Committee Guidelines and, (ii) a detailed working knowledge of the Company and Mark Patrick's roles and responsibilities, Paul Murphy assessed that Mark Patrick is eligible for an annual bonus in the amount of 2.5 times his base salary for the year 2023 and payable immediately for, inter alia, the following reasons:

      a. CEOs and CIOs in comparable positions are typically awarded a base salary, annual bonus and form of long term incentive plan which is designed to compensate senior executives for their performance and value to a company on an annual and long term basis (see Mercer Report page 17, which is consistent with and supported by Paul Murphy's

---

[1] The calculation net of all expense is $4,459,000 and net of fund expenses is $5,759,000 leaving a difference of $1.3m of which $975,000 is 75%.

      knowledge of US based asset managers).

   b. The Company, in the absence of a senior executive willing to undertake the roles and responsibilities of a CEO, CIO and general counsel would, in the US, have to incur annual expenses of at least $3-4m at the median range and $5-6m at the upper range[2] to appropriately staff these positions.[3] By undertaking the roles of CEO, CIO and General Counsel, Mark Patrick would be undercompensated if the Company were only to award a base salary and LTI.

   c. The Company has faced/is facing significant and complex legal issues in Texas, New York, the Cayman Islands and, until recently, Guernsey, which it has had to manage on a reactive and proactive basis and which Mark Patrick has been instrumental in the prosecution and defence of. These include sophisticated parties including US Bank, UBS and a Trustee in Bankruptcy.

   d. Mark Patrick was instrumental in 2023/2024 defeating an action by UBS against the Company in New York which significantly reduced the Company's potential liabilities.

   e. The risk profile to Mark Patrick as a director, CEO and CIO is high and his decision making will and is likely to be scrutinized which may lead to personal liability. He is undertaking these positions without the benefit of directors' and officers' insurance.

   f. Mark Patrick has been instrumental in implementing and driving forward policies that will bring rigorous scrutiny and governance to the Company.

   g. The Company's investments over the past three years have outperformed the S&P 500 significantly where the average returns for the S&P 500 over the same period returned 11.49% compared to 16.46% for the Company.

   h. To date, Mark Patrick has not been awarded an annual bonus during his tenure at the Company nor has he received benefits which a CEO/CIO would typically enjoy.

(h) These are not a comprehensive list of factors Paul Murphy took into account but form the basis of his independent conclusion that the Directors should (i) enter into an employment agreement in a form drafted by the Company's US and Cayman Islands counsel which reflects the on-going compensation package, and (ii) award an annual discretionary bonus for 2023 at an amount of 2.5 times his base salary.

(i) Mr. Patrick has declared his interests to the Company in relation to the matters the subject of this resolution, being that Mr Patrick is Director of the Company, and also employed by the Company as President, Chief Investment Officer, and General Counsel of the Company.

2.2    **IT IS RESOLVED** by unanimous written resolution that:

---

[2] Per Mercer Report at page 7 and adjusted to account for base compensation and annual bonus/long term incentive for general counsel.

[3] It is noted that the basis for these figures includes assessment of charities and foundations in the US which the Company is not. Whilst useful guidance, the Company must be mindful of the fact that the Company is a Cayman Islands company that holds complex structured financial products through Cayman Islands companies and is not bound by the same provisions that relate to US charities and foundations.

(a) Mark Patrick be awarded:

    a. An adjustment to the LTI incentive payment in the amount of $975,000.

    b. An annual bonus for the year 2023, payable immediately, of 2.5 times his base salary.

    c. No annual bonus for the years 2021 and 2022 given the entirety of the compensation package provided to Mark Patrick as of 12th September 2024 and the date of this resolution.

Executed by the Directors comprising the entire Board of Directors of the Company:

**BY** _____
Paul Murphy - Director

CHARITABLE DAF HOLDCO, LTD.

**BY** _____
Mark Patrick - Director

CHARITABLE DAF HOLDCO, LTD.

### APPENDIX 1
### COMPENSATION COMMITTEE GUIDELINES

### Compensation Policy for Executives and Directors

As adopted on October 1, 2024

1. **Overview and Objectives**

This document sets forth the Compensation Policy for Executives and Directors of Charitable DAF HoldCo, Ltd., its subsidiaries, and CDH GP, Ltd. (collectively, "**Company**").

Compensation is a key component of the Company's overall human capital strategy to attract, retain, reward, and motivate highly skilled individuals that will enhance the Company's value and otherwise assist the Company's to reach its long-term goals. Accordingly, the structure of this Policy is established to tie the compensation of each officer to the Company's goals and performance.

For purposes of this Policy, "Executive Officers" shall mean the Company's Chief Executive Officer, Chief Investment Officer, Chief Company Officer, and Chief Operating Officer, and such other executive officers as appointed by the Company from time to time.

For purposes of this Policy, "Directors" shall mean the Directors as defined in the organizational and governing documents of the Company.

This Policy is subject to applicable law and is not intended, and should not be interpreted as limiting or derogating from, provisions of applicable law to the extent not permitted.

This Policy shall apply to compensation agreements and arrangements which will be approved after the date on which this Policy is adopted and shall serve as Company's Compensation Policy for five (5) years, commencing as of its adoption, unless amended earlier.

The Compensation Committee and the Board of Directors of the Company (the "**Compensation Committee**" and the "**Board**", respectively) shall review and reassess the adequacy of this Policy from time to time.

The Compensation Committee and Board shall have regard to the fact that Charitable DAF HoldCo, Ltd. and its subsidiaries are incorporated and subject to Cayman Islands law ("**Cayman Islands Entities**"). Accordingly, whilst US law, regulation and industry standards ("**US Practices**") may be taken into account when considering the Objectives (as defined below), the US Practices are not binding on the Cayman Islands Entities, the Cayman Islands Entities having been purposely established as non-US entities, and the Compensation Committee will have regard to all factors which, in its discretion, achieve the Objectives (as defined below).

2. **Objectives**

Company's objectives and goals in setting this Policy are to attract, motivate and retain highly experienced leaders who will contribute to Company's success and enhance shareholder value, while demonstrating professionalism in a highly achievement-oriented culture that is based on merit and rewards excellent performance in the long term, and embedding Company's core values as part of a motivated behavior ("**Objectives**"). To that end, this Policy is designed, among others:

2.1. To closely align the interests of the Executive Officers and Directors with those of Company's shareholders in order to enhance shareholder value;

2.2. To align a significant portion of the Executive Officers' and Directors' compensation with Company's short and long-term goals and performance;

2.3. To provide the Executive Officers and Directors with a structured compensation package, including competitive salaries, performance-motivating cash and equity incentive programs and benefits;

2.4. To strengthen the retention and the motivation of Executive Officers and Directors in the long term; and

2.5. To provide appropriate awards in order to incentivize superior individual excellency and corporate performance.

3. **Compensation Instruments**

   3.1 Compensation instruments under this Policy may include, but need not be limited to, the following:

   3.1.1 Base salary;

   3.1.2 Benefits;

   3.1.3 Annual cash bonuses;

   3.1.4 Change of control terms;

   3.1.5 Retirement and termination terms; and

   3.1.6 Long-term and short-term incentive payments

   3.2 When fixing compensation instruments the Company may have regard to any matter which, in the Company's complete discretion, is commensurate with the Objectives. Without limitation, this may include:

   3.2.1 Assessing an Executive Officer and Director's performance with regard to their contribution to and management of any assets or investments the Company sources or owns from time to time;

   3.2.2 Assessing the performance of assets or investments of the Company in relation to overall returns to the Company;

   3.2.3 Mitigation of Company liabilities;

   3.2.4 Ensuring sound and prudent corporate governance including compliance with all legal, regulatory and industry standards;

   3.2.5 Efficient management of service providers;

      3.2.6    Risk the Executive Officer and/or the Director is exposed to;

      3.2.7    Responsibilities the Executive Officer and/or the Director undertakes; and

      3.2.8    Achieving the Company's business and charitable objectives

4. **Benefits**

    4.1    The following benefits may be granted to the Executive Officers and Directors in order, among other things, to comply with legal requirements:

        4.1.1    Vacation days in accordance with market practice;

        4.1.2    Sick days in accordance with market practice;

        4.1.3    Convalescence pay according to applicable law;

        4.1.4    Company may contribute on behalf of the Executive Officer or Director to an insurance policy (including, without limitation, split-dollar life insurance) or a pension fund, as allowed by applicable law and with reference to Company's policies and procedures and the practice in peer group companies (including contributions on bonus payments); and

        4.1.5    Company may contribute on behalf of the Executive Officer or Director towards work disability insurance, as allowed by applicable law and with reference to Company's policies and procedures and to the practice in peer group companies.

    4.2    In events of relocation or repatriation of an Executive Officer or Director to another geography, such Executive Officer or Director may receive other similar, comparable or customary benefits as applicable in the relevant jurisdiction in which he or she is employed or additional payments to reflect adjustments in cost of living. Such benefits may include reimbursement for out of pocket one-time payments and other ongoing expenses, such as housing allowance, car allowance, and home leave visit, etc.

    4.3    Company may offer additional benefits to its Executive Officers and Directors, which will be comparable to customary market practices, such as, but not limited to: cellular and land line phone benefits, company car and travel benefits, reimbursement of business travel including a daily stipend when traveling and other business related expenses, insurances, other benefits (such as newspaper subscriptions, academic and professional studies), etc., provided, however, that such additional benefits shall be determined in accordance with Company's policies and procedures.

5. **Miscellaneous**

    5.1    Nothing in this Policy shall be deemed to grant to any of Company's Executive Officers, employees, directors, or any third party any right or privilege in connection with their employment by or service to the Company, nor deemed to require Company to provide any compensation or benefits to any person. Such rights and privileges shall be governed by applicable personal

employment agreements or other separate compensation arrangements entered into between Company and the recipient of such compensation or benefits. The Board may determine that none or only part of the payments, benefits and perquisites detailed in this Policy shall be granted, and is authorized to cancel or suspend a compensation package or any part of it.

5.2  In the event that new regulations or law amendment in connection with Executive Officers' and Directors' compensation will be enacted following the adoption of this Policy, Company may follow such new regulations or law amendments, even if such new regulations are in contradiction to the compensation terms set forth herein.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This Policy is designed solely for the benefit of Company and none of the provisions thereof are intended to provide any rights or remedies to any person other than Company.