# EXHIBIT 67



IN THE GRAND COURT OF THE CAYMAN ISLANDS

FINANCIAL SERVICES DIVISION

FSD NO.     OF 2025 (JAJ)

IN THE MATTER OF SECTION 131 OF THE COMPANIES ACT (2025 REVISION)

AND IN THE MATTER OF CHARITABLE DAF HOLDCO, LTD

**PETITION FOR COURT SUPERVISION
OF A VOLUNTARY LIQUIDATION**

TO:    THE GRAND COURT OF THE CAYMAN ISLANDS

THE **HUMBLE PETITION** of (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund (the *Supporting Organisations* or *Petitioners*), in their capacity as members of Charitable DAF Holdco, Ltd (the *Company* or *HoldCo*):

1.  The purpose of this petition (the *Supervision Application*) is to seek an order that the voluntary liquidation of the Company continue under the supervision of this Honourable Court pursuant to section 131 of the Companies Act (2025 Revision) (the *Act*) and Order 15, Rule 3 of the Companies Winding Up Rules (2023 Consolidation) (the *CWR*). The Company was placed into voluntary liquidation, and Mitchell Mansfield and William Clarke (together, the *JVLs*) of Kroll (Cayman) Ltd, pursuant to written resolutions of the directors of the Company dated 2 April 2025.

2.  The petitioning Supporting Organisations are non-profit charitable entities exempt from taxation under s.501(c)(3) of the US Internal Revenue Code who collectively hold (or in light of recent developments allegedly held) 100% of the Participating Shares in the Company. Holders of Participating Shares are entitled under the Company's Amended and Restated Memorandum and Articles of Association dated 20 February 2025 (the *Articles*) to participate in the profits or assets of the Company but are not entitled to attend, to speak at, or to vote at general meetings. By contrast, holders of Management Shares are entitled to attend, to speak at and to vote at any general meeting, but have no right to participate in the profits or assets of the Company.

3. HoldCo is a Cayman Islands exempt company formed on 27 October 2011 (registration no. 263805) whose registered office is Campbells Corporate Services Ltd, Floor 4, Willow House, Cricket Square, Grand Cayman, KY1-9010, Cayman Islands. HoldCo is purportedly governed by the Articles.

4. HoldCo is (or at least was) the limited partner of Charitable DAF Fund, LP (the **Fund**), a Cayman Islands limited partnership formed on 28 October 2011 (registration no. 53083) whose registered office is Campbells Corporate Services Ltd, Floor 4, Willow House, Cricket Square, Grand Cayman, KY1-9010, Cayman Islands. The Fund is, to the best of the Petitioners' knowledge, governed by the Amended and Restated Limited Partnership Agreement dated 7 November 2011 (the **ARLPA**).

5. This Petition refers to the Supporting Organisations' petition seeking the winding up of the Company on just and equitable grounds dated 10 April 2025 (the **J&E Petition**), and the summons for the appointment of provisional liquidators dated 10 April 2025 (the **PL Summons**), in Proceedings FSD. No. 99 of 2025, the latter of which is listed for hearing before this Honourable Court on 29 April 2025 (the **Hearing**) – copies of which are at **Schedules A** and **B**, respectively.

**VOLUNTARY LIQUIDATION OF THE COMPANY**

6. On 23 April 2025 at 1:42pm, Johnstone Law (the Petitioners' attorneys) sent an email to Walkers (Cayman) LLP advising that they acted for the Supporting Organisations and seeking confirmation as to whether Walkers acted for and were instructed to accept service on the Company's behalf.

7. On 24 April 2025 at 11:35am, Walkers responded to Johnstone Law requesting confirmation of the nature of the proceeding to be served – but not addressing whether they acted for or had instructions to accept service on the Company's behalf. Johnstone Law replied that given their failure to respond the day prior, the papers would be served on HoldCo's registered office. That same day, copies of the Petition, the PL Summons and supporting materials were served on the Company's registered office.

8. On 25 April 2025, the Petitioners were preparing for the Hearing of the J&E Petition / PL Summons and in the course of finalising the hearing materials for delivery to the Court. At 3.32pm that day however Johnstone Law received a letter from Walkers (the **Walkers Letter**) that stated *inter alia*:

   (a) On 2 April 2025, nearly four weeks ago: (i) HoldCo was placed into voluntary liquidation, and the JVLs appointed, by way of written resolutions of the directors, and (ii) the directors had executed a declaration of solvency with respect to the Company.

2

(b)   On 14 April 2025, Gazette Issue No. 8/2025 (the **Gazette**) was published, which included notice that the Company was placed into voluntary liquidation.

(c)   Nothing in the Articles entitled the Petitioners to receive notice from the Company of its entry into Voluntary Liquidation, and "[*t*]*he fact should have been evident from a search of the Gazette prior to service, as per the enclosed notice*".

(d)   As the Company was already in voluntary liquidation, the Petition and Summons were "*plainly redundant*" and should be withdrawn. If they were not withdrawn, this letter must be brought to the Court's attention at the Hearing, at which Walkers will appear for the Company and seek costs if appropriate.

9.   Enclosed to the Walkers Letter were copies of the following:

(a)   director resolutions dated 2 April 2025 (the **Director Resolutions**);

(b)   management shareholder resolution dated 2 April 2025;

(c)   the JVLs' consents to act;

(d)   declaration of solvency;

(e)   the Gazette;

(f)   the Articles;

(g)   the Company's register of members as at 25 April 2025.

10.   Although not stated anywhere in the Walkers Letter, the enclosures revealed the following matters, which were previously unknown to the Petitioners:

(a)   On 7 February 2025, HoldCo allotted 318 participating shares to an entity named 'DFW Charitable Foundation' (**DFW**) – the effect being the substantial dilution of the Supporting Organisations' interest in the Company, from a cumulative holding of **100%** of the Participation Shares to **48.9%**. The Petitioners have since discovered that DFW is a Delaware company incorporated on 9 December 2024, registered to Mark Patrick's home address and Mark Patrick being the sole member. Mark Patrick is a director of and holds the Management Shares in HoldCo. DFW was purportedly granted charitable status by the State of Delaware on 7 February 2025, the same day it was allotted 318 participating shares in the Company.

(b)   On 20 February 2025, HoldCo amended its Articles by way of special resolution, such special resolution passed solely by Mark Patrick.

    (c)    The Company's sole investment, being an interest in an entity by the name of CDMCFAD LLC was redeemed on 27 March 2025 and, on 2 April 2025, the proceeds available for distribution from this redemption were distributed in the amount of US$1,612,192 purportedly to HoldCo's participating shareholders;

    (d)    As at 2 April 2025, the Company has no assets.

11.    On 27 April 2025, Johnstone Law responded to the Walkers Letter setting out the Petitioners' serious concerns arising from the matters disclosed therein, and stating *inter alia*:

    (a)    There can be no honest, reasonable or lawful justification or basis for the Company taking the steps it has, or for doing so without notifying and consulting the Petitioners in advance, and the subsequent failure to provide notice of such actions makes clear the information was deliberately withheld (supported further by the matters being disclosed only 1 clear working day before the Hearing).

    (b)    The steps were taken while the Supporting Organisations and HoldCo were engaged in correspondence about financial irregularities and lacking transparency on the part of the Company and its underlying interests. The failure of HoldCo (through its current directors or its US attorneys) to disclose this information in the course of that correspondence is proof of the utmost bad faith and deception on the part of HoldCo and its directors.

    (c)    The fact that the JVLs appointed by the Company have themselves taken no steps to inform the Supporting Organisations of such matters since their appointment causes them to conclude the JVLs lack sufficient independence required to protect the interests of the Supporting Organisations and the Company as a whole.

    (d)    The Walkers Letter makes it more, not less, essential that independent officer holders operating under the Court's supervision are appointed over the Company without delay. The Supporting Organisations will not withdraw the Petition or the PL Summons, but plan to issue or at least finalise additional proceedings on 28 April 2025, and to invite the Court to appoint Margot MacInnis and Sandipan Bhowmik as official liquidators of the Company at the Hearing – and seeking the Company's agreement by 12pm on 28 April 2025.

    (e)    The Supporting Organisations were, until 7 February 2025, and in law remain, owners of 99% of the economic interest in HoldCo. They do not approve of the purported share dilution nor the appointment of JVLs and their rights are fully reserved, and in the circumstances, it is inappropriate for assets of the Company, or any related entities, to be used for the purpose of payment of legal fees.

    (f)    A request for details of DFW, including when it was formed and received charitable status, the identity of its owners/controllers, its registered address and centre of operations.

(g)      A request for confirmation by 8pm on 27 April 2025: (i) what has become of the Company's interest in the Fund, and (ii) to whom and in what amounts were the distributions referred to in the Director Resolutions transferred.

12.      No response was received from Walkers by 8pm on 27 April 2025. At 9:16pm, Johnstone Law sent an email to Walkers noting the failure to provide the information and requesting that, in the circumstances and, if within their knowledge, the JVLs provide such information.

**NOTICE OF SUPERVISION APPLICATION**

13.      In the circumstances, in particular that the Supporting Organisations (and purportedly DFW, although the Petitioners do not accept the validity of the share allotment to DFW) are the Company's only contributories – and given the clear evidence that the Supporting Organisations' interests in the Company have been diluted and the assets of the Company dissipated without notice or justification – the Petitioners respectfully request the Court exercise its discretion to dispense, as it is entitled to do, with the notice requirements in O.15 of the CWR.

**APPLICATION FOR SUPERVISION ORDER**

14.      The Petitioners respectfully seek an Order from this Honourable Court that the voluntary liquidation of the Company continue under the supervision of the Court pursuant to section 131 of the Act, and that Margot MacInnis and Sandipan Bhowmik of Grant Thornton be appointed as joint official liquidators (together, the ***JOLs***) of the Company, for the following reasons:

(a)      The making of a supervision order will allow the JOLs to conduct a proper investigation of the affairs of the Company and conduct an orderly winding up under the supervision of this Honourable Court for the benefit of all stakeholders.

(b)      There is to say the least a large cloud hanging over Mr Patrick and Mr Murphy, as directors of HoldCo, who should not be allowed or entitled, irrespective of the professionalism of the JVLs, to retain the role and functions that directors normally retain attendant upon voluntary liquidations.

(c)      The Supporting Organisations, as the owners of 100% of the economic interest in the Company (at least prior to the purported allotment of shares to DFW on 7 February 2025) should be entitled to choose the liquidator, or at least a liquidator not appointed by the directors, the conduct of whom has raised serious concerns even prior to the events disclosed in the Walkers Letter.

(d)      Court supervision will result in an indisputably more effective, economic, and expeditious liquidation of the Company in the interests of the Supporting Organisations as contributories. Save in respect of any claim the Supporting Organisations save, there

   does not appear to be any creditors.

(e)  An investigation into the allegations of misconduct on the part of the management of the Company will be substantially expedited and more effective if conducted by official liquidators, who are not the same persons as the JVLs.

(f)  Should an investigation identify transactions that should be set aside, or claims that should be advanced, whether against the directors of the Company or third parties, such actions are most appropriately and effectively undertaken by official liquidators, who are not the same persons as the JVLs.

(g)  As the holder of the Management Shares in the Company (Mr Patrick) is resident in the US and as are many of the entities related to and with whom the Fund transacts, it is highly likely, if not certain, that the liquidators will need to instruct attorneys in the US, obtain recognition under chapter 15 of the US Bankruptcy Code, and commence proceedings in the US to recover any assets wrongfully dissipated. Such steps necessitate the liquidation being conducted under the supervision of the Court.

15.  Ms MacInnis and Mr Bhowmik of Grant Thornton:

(a)  are "qualified insolvency practitioners" as defined in s.89 of the Act and as prescribed by Regulation 4 of the Insolvency Practitioners' Regulations (2023 Consolidation) (**IPR**);

(b)  meet the residency requirements contained in Regulation 5, IPR;

(c)  meet the independence requirements prescribed by Regulation 6, IPR;

(d)  meet the insurance requirements prescribed by Regulation 7, IPR, and Grant Thornton holds a trade licence which authorises its staff to carry on business as professional insolvency practitioners; and

(e)  consent to their appointment as official liquidators of the Company, if so appointed.

**YOUR PETITIONERS THEREFORE HUMBLY PRAY THAT:**

1.  The voluntary liquidation of the Company be continued under the supervision of the Court pursuant to s.131 of the Act and O.15, r.8 of the CWR.

2.  Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Ltd. of Second Floor, Century Yard, Cricket Square, George Town, Grand Cayman, Cayman Islands, be appointed as joint official liquidators (**JOLs**) of the Company pursuant to s.132 of the Act.

3.  The JOLs have the power to act jointly and severally.

4. The JOLs shall not be required to give security for their appointment.

5. The JOLs be authorised pursuant to s.110(2)(a) of the Act, to jointly and severally exercise all of the powers specified in Part II of the Third Schedule to the Act..

6. The JOLs be authorised pursuant to s.110(2)(a) of the Act to exercise the following powers in Part I of the Third Schedule to the Act, without the further sanction or intervention of the Court:

   a. The power to bring or defend any action or other legal proceeding in the name and on behalf of the company;

   b. The power to carry on the business of the company so far as may be necessary for its beneficial winding up;

   c. The power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

   d. The power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

   e. The power to engage staff, agents and/or consultants in the Cayman Islands and elsewhere to assist the JOLs in the performance of their functions; and

   f. The power to engage attorneys and other professionally qualified persons in the Cayman Islands and elsewhere to assist the JOLs in the performance of their functions.

7. The JOLs be specifically authorised and entitled without the further sanction of the Court to undertake the following:

   a. Presenting a petition for the winding up of the exempted limited partnership, Charitable DAF Fund, LP (the Fund).

   b. Taking control of the Company's subsidiaries, joint ventures, investments, associated companies, businesses, or other entities (collectively referred to as the "Associated Companies") in which the Company holds an interest (or such shares of such Subsidiaries and/or Associated Companies as are owned directly or indirectly by the Company), in each case, wherever located, as the JOLs see fit. Additionally, to call or cause to be called meetings of such Subsidiaries and/or Associated Companies, and to sign resolutions (in accordance with the provisions of any relevant constitutional or related documentation of

such companies) and take such other steps, including applications to and communications with appropriate courts and/or regulators, as the JOLs consider necessary to appoint or remove directors, legal representatives, officers, and/or managers to or from such Subsidiaries and/or Associated Companies. In each case, take the necessary steps to ensure that the registered agents (or other equivalent corporate administrators) of such Subsidiaries or Associated Companies implement the changes to the boards of directors, legal representatives, officers, and/or managers of such companies or entities. This includes (without limitation) effecting changes to the company registers of such Subsidiaries or Associated Companies as may be deemed appropriate by the JOLs. Furthermore, to take such other actions in relation to all such Subsidiaries or Associated Companies as the JOLs see fit for the purpose of protecting the assets of the Company and managing its affairs (which, to avoid any doubt, shall include the assets and affairs of the Subsidiaries and Associated Companies).

c. Issuing and pursuing an application by summons for an order appointing themselves or other fit and proper persons as joint provisional liquidators of the Fund.

d. Locating and taking possession of and preserving all the Company's books, records and other papers (whether hard copy, digital or otherwise).

e. Identifying the nature and location of all property and assets which appear to belong to the Company.

f. Getting in or otherwise securing and protecting all such property and assets.

g. Investigating the costs and expenses incurred by the Company.

h. Identifying any creditors of the Company.

i. Investigating the promotion, business, dealings, and affairs of the Company.

j. Investigating whether the Company or the JOLs may have any claims (either in this jurisdiction or elsewhere) against any officer or employee or former officer or employee of the Company, or against any other person or persons.

k. Commencing and pursuing any such or other claims, if the JOLs are of the view that that is necessary or desirable in order to protect the ability of the Company or any liquidator of the Company to pursue any such claims or otherwise to preserve the value of any such claims.

l. Seeking registration or recognition of themselves and/or the Official Liquidation in any State in the United States for any purpose connected with the liquidation.

m. Carrying on the business of the Company so far that may be beneficial for the Company, its

        creditors.

    n. Being at liberty to complete or terminate any contracts or transactions entered into by the Company.

    o. Retaining and operating the existing bank or other accounts of the Company and where necessary opening new accounts.

    p. Taking control of or redirecting any email or other digital communication method used for the purposes of the Company's business or affairs.

    q. Applying to the Court for directions, including on short notice, including for Orders to vary these powers and functions.

8. The Court dispenses with the requirement for this Supervision Application and the hearing of this Supervision Application to be advertised pursuant to O.15 of the CWR.

9. The JOLs' remuneration and expenses be paid out of the assets of the Company in accordance with s.109 of the Act, Part III of the Regulations, and O.20 of the CWR.

10. The costs of this Supervision Application shall be paid out of the assets of the Company as an expense in the liquidation, such costs to be taxed if not agreed with the JOLs.

11. The JVLs shall prepare a final report and accounts for the period from the commencement of the voluntary liquidation until the date of the supervision order, and deliver such report to the JOLs within 28 days of this Order.

12. Such further or other orders be made as the Court shall deem fit.

**AND** your Petitioner will ever pray etc.

Dated 28th April 2025

*Johnstone Law* (signature)

_____
**Johnstone Law Ltd.**
Attorneys for the Petitioners

**THIS PETITION** was presented by Johnstone Law Ltd., attorneys for the Plaintiffs, whose address for service is Unit 9, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref:AJ/RZ/00016**)

### NOTICE OF HEARING

**TAKE NOTICE THAT** the hearing of this Petition will take place at the Law Courts, George Town, Grand Cayman, Cayman Islands on                    at        am.

Any correspondence or communication with the Court relating to the hearing of this Petition should be addressed to the Registrar of the Financial Services Division of the Grand Court at PO Box 495, George Town, Grand Cayman KY1-1106, Cayman Islands; Tel: +1(345)949-4296.