# EXHIBIT 90

E-filed in the Office of the Clerk
for the Business Court of Texas
7/14/2025 11:05 PM
Accepted by: Alexis Jennings
Case Number: 25-BC01B-0027

| | | |
|---|---|---|
| THE HIGHLAND DALLAS FOUNDATION, INC., THE HIGHLAND KANSAS CITY FOUNDATION, INC., and THE HIGHLAND SANTA BARBARA FOUNDATION, INC., | § § § § § § § § § | THE BUSINESS COURT OF TEXAS<br><br>FIRST DIVISION |
| Plaintiffs, | § § | |
| v. | § § | Cause No. 25-BC-01B-0027 |
| MARK PATRICK, DFW CHARITABLE FOUNDATION, CDMCFAD, LLC, CHARITABLE DAF GP, LLC, and CDH GP, LTD., | § § § § § § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS
## AND PLEA TO THE JURISDICTION

**Brian P. Shaw**
  Texas Bar No. 24053473
**Monica E. Gaudioso**
  Texas Bar No. 24084570
**Andrea C. Reed**
  Texas Bar No. 24121791
**Emily H. Owen**
  Texas Bar No. 24116865
**CARRINGTON, COLEMAN,
  SLOMAN & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202

*Attorneys for Defendants*

# TABLE OF CONTENTS

Table of Contents ................................................................. 2

Table of Authorities ........................................................... 4

Table of Abbreviations and Defined Terms ............................. 7

Summary of the Motion ......................................................... 8

Factual Background ............................................................. 10

   A.  The Dondero Organizations pleaded themselves out of this Court's
       jurisdiction ................................................................. 10

   B.  Faced with mounting litigation losses, Dondero seeks to control
       the Charitable DAF to use its resources for his own ends. .......... 11

   C.  Seeking to gain control of the Charitable DAF for his own
       purposes, Dondero manufactures allegations of wrongdoing, many
       of them years old. ........................................................ 15

   D.  The Dondero Organizations do not own any of the Charitable DAF
       entities or allege standing facts to support jurisdiction. .......... 15

       1.  The Charitable DAF Fund ............................................ 16

       2.  Charitable DAF HoldCo—the Debtor ................................ 19

       3.  The Current Charitable DAF Fund ................................. 22

   E.  This case is Dondero's latest attempt to take control over the
       Charitable DAF so that he can misuse its assets for his own
       personal benefit. ........................................................ 25

Legal Standards .................................................................. 26

Argument and Authorities ..................................................... 27

   A.  This Court does not have statutory subject matter jurisdiction. ... 27

       1.  The Dondero Organizations cannot establish subject matter
           jurisdiction under § 25A.004(b)(4) because they are not "owners."
           ....................................................................... 27

       2.  This Court lacks jurisdiction under § 25A.004(b)(2) because the
           Dondero Organizations don't have standing to sue over the
           Charitable DAF's governance, governing documents, or internal
           affairs. ............................................................. 29

3.  The Dondero Organizations do not have standing under § 2 5A.004(b)(5). ................................................................. 34

B.  The Dondero Organizations do not have standing because their claims, if they had any merit, would belong solely to the Debtor. 35

Conclusion ............................................................................ 42

TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*In re Ascot Fund Limited,*
603 B.R. 271 (Bankr. S.D.N.Y. 2019) .................................................. 40

*Austin Nursing Center v. Lovato,*
171 S.W.3d 845 (Tex. 2005) ................................................................ 35

*Ayerst (Inspector of Taxes) v. C&K (Construction) Ltd.*
[1975] ................................................................................................... 39

*Bickham v. Dallas County,*
612 S.W.3d 663 (Tex. App.—Dallas 2020, pet. denied) ............... 31, 33

*Bland Indep. School Dist. v. Blue,*
34 S.W.3d 547 (Tex. 2000) ................................................................. 27

*In re Bullmore,*
300 B.R. 719 (Bankr. D. Neb. 2003) ................................................... 41

*Cobb v. Cent. States,*
461 F.3d 632 (5th Cir.2006) ................................................................ 39

*In re Dexterity Surgical, Inc.,*
365 B.R. 690 (Bankr. S.D. Tex. 2007) ................................................ 38

*In re Educators Group Health Trust,*
25 F.3d 1281 (5th Cir. 1994) .............................................................. 37

*In re Estate of Devitt,*
758 S.W.2d 601 (Tex. App.—Amarillo 1988, writ denied) ................. 32

*Foss v. Harbottle*
(1843) 67 Eng. Rep. 189, 202 (Eng.) ................................................. 37

*Genssler v. Harris Cnty.,*
584 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2010, no
pet.) ..................................................................................................... 30

*Heckman v. Williamson Cnty.*,
  369 S.W.3d 137 (Tex. 2012) .................................................................. 15

*In re Highland Capital Mgmt., L.P.*,
  No. 19-34054-SGJ11, 2021 WL 3418657 (Bankr. N.D. Tex.
  Aug. 4, 2021) ........................................................................... 11,14,36

*Highland Capital Mgmt. LP v. Chesapeake Energy Corp.*,
  522 F.3d 575 (5th Cir. 2008) ................................................................ 37

*Jose Carreras, M.D., P.A. v. Marroquin*,
  339 S.W.3d 68 (Tex. 2011) ................................................................... 33

*JSFN, LLC. V. SJ Properties, LLC*,
  No. 10-16-00362-cv, 2018 WL 1867105 (Tex. App.—Waco
  Apr. 18, 2018, no pet.) ......................................................................... 32

*Matter of Highland Capital Mgmt., L.P.*,
  116 F.4th 422 (5th Cir. 2024) ....................................................... 13, 14

*Moser, Trustee of Estate of Mason v. Dillon Investments,
  LLC*,
  649 S.W.3d 259 (Tex. App.—Dallas 2022, no pet.) ...................... 36, 37

*In re NC12, Inc.*,
  478 B.R. 820 (Bankr. S.D. Tex. 2012) .................................................. 38

*In re Ocean Rig UDW Inc.*,
  570 B.R. 687 (Bankr. S.D.N.Y. 2017) .................................................. 40

*Ritchie v. Rupe*,
  443 S.W.3d 856 (Tex. 2014) ................................................................. 31

*In re SPhinX, Ltd.*,
  351 B.R. 103 (Bankr. S.D.N.Y. 2007) .................................................. 40

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
  852 S.W.2d 440 (Tex. 1993) ................................................................. 26

*Tex. Dept. of Parks and Wildlife v. Miranda*,
  133 S.W.3d 217 (Tex. 2004) ................................................................. 26

*Town of Shady Shores v. Swanson,*
   590 S.W.3d 544 (Tex. 2019) ............................................................. 26

*Williams v. Stevens,*
   No. 05-22-00440-CV, 2023 WL 5621835 (Tex. App.—
   Dallas Aug. 31, 2023, no pet.) ......................................................... 31

## Statutes

26 U.S.C.A. § 170(a)(1) ...................................................................... 30

11 U.S.C. § 541(a)(1) .......................................................................... 36

TEX. GOV'T CODE § 25A.001(11) ...................................................... 28

TEX. GOV'T CODE § 25A.004 .............................................................. 31

TEX. GOV'T CODE § 25A.004(b) ......................................................... 32

TEX GOV'T CODE § 25A.004(b)(2) ............................................... 27, 29

TEX. GOV'T CODE § 25A.004(b)(4) ............................................... 27, 28

TEX. GOV'T CODE § 25A.004 (b)(5) .................................................... 27

## Other Authorities

Companies Act, 2025, s.110 ......................................................... 39, 41

Companies Act, 2025, s.110 and p.2.1 .............................................. 39

Grand Court. Companies Act, 2025, s.108 ........................................ 39

Grand Court Rules, O. 15 r. 12A (Cayman Islands 2022) ................. 38

## TABLE OF ABBREVIATIONS AND DEFINED TERMS

| Term | Definition | Pages |
| --- | --- | --- |
| Charitable DAF | The Charitable DAF Entities collectively | 8 |
| Charitable DAF Entity | DFW Charitable Foundation, CDMCFAD, LLC, Charitable DAF GP, LLC, or CDH GP, Ltd. individually | 8 |
| The Charitable DAF Fund | Charitable DAF Fund, L.P. | 16 |
| Charitable DAF HoldCo or Debtor | Charitable DAF HoldCo, Ltd. | 9 |
| Dondero Organizations | Plaintiffs The Highland Dallas Foundation, Inc., The Highland Kansas City Foundation, Inc., and The Highland Santa Barbara Foundation, Inc. collectively | 8 |
| Highland | Highland Capital Management, L.P. | 14 |

Defendants Mark Patrick, DFW Charitable Foundation, CDMCFAD, LLC, Charitable DAF GP, LLC, and CDH GP, Ltd. (each a "Charitable DAF Entity," and collectively the "Charitable DAF" or "Charitable DAF Entities") ask the Court to dismiss this action because the Court lacks subject matter jurisdiction over the claims brought by Plaintiffs The Highland Dallas Foundation, Inc., The Highland Kansas City Foundation, Inc., and The Highland Santa Barbara Foundation, Inc. (all of which James Dondero swore he serves on the board of directors for—and swore that he is funding this litigation—collectively the "Dondero Organizations").

## SUMMARY OF THE MOTION

This Court lacks subject matter jurisdiction over the claims asserted by the Dondero Organizations on at least two bases: (1) the claims do not fall under the Court's subject matter jurisdiction under the Government Code, and (2) the Dondero Organizations lack standing to bring these claims.

First, the Dondero Organizations' pleading demonstrates that the Government Code's jurisdictional requirements are not met. The Dondero Organizations admit they are not an owner of any Charitable

DAF Entity, only that they had "participating shares" in Charitable DAF HoldCo, Ltd., a different entity in wind-up proceedings in the Cayman Islands ("Charitable DAF HoldCo" or the "Debtor"), which is not a party here. Yet they argue at the same time that their lawsuit falls under this Court's jurisdiction as (1) an action by an owner of an organization brought against that organization; (2) an action alleging the breach of a duty owed to them as owners of an organization; and (3) an action regarding the governance, governing documents, or internal affairs of an organization. It is none of those on its face.

While *someone* could pursue Dondero's unfounded and unmeritorious claims against the Charitable DAF, the Dondero Organizations cannot—they are not the class of litigants entitled to bring an action complaining about the governance, governing documents, or internal affairs of organizations that *they do not own* by their own admission. This Court lacks a statutory basis to exercise subject matter jurisdiction under the Government Code.

The Court also lacks subject matter jurisdiction because the Dondero Organizations do not have standing to bring their claims. The Dondero Organizations do not have a justiciable interest in the claims

they assert because they do not have a sufficient relationship to any Charitable DAF Entity. The only entity that (a) has any relationship to any Charitable DAF Entity and (b) arguably has standing to assert the claims brought by the Dondero Organizations, are the Cayman liquidators of the non-party Debtor.[1] Accordingly, the Charitable DAF respectfully requests that the Court dismiss this suit for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND

### A.    The Dondero Organizations pleaded themselves out of this Court's jurisdiction.

The Dondero Organizations' Petition, including Dondero's attached sworn declaration, provides this Court with all it needs to find that it lacks subject matter jurisdiction over *these* claims between *these* parties.

To aid the Court's review of this jurisdictional challenge, the Charitable DAF therefore summarizes the portions of the Dondero Organizations' pleading and sworn proof that pleaded them out of this Court's jurisdiction.

---

[1] Even if these claims were brought by the Cayman liquidators, the Charitable DAF denies that any wrongdoing occurred.

This factual background relies only on the Dondero Organizations' Original Petition and attachments, published and unpublished court opinions and rulings, and other facts subject to judicial notice. It is organized in three sections: (1) general background of this dispute, (2) a brief statement regarding Dondero's oft-repeated, years-old and pretextual false allegations of wrongdoing, and (3) the facts that show the Dondero Organizations pleaded themselves out of this Court.

## B. Faced with mounting litigation losses, Dondero seeks to control the Charitable DAF to use its resources for his own ends.

One of the most extraordinary things so far in this case is Dondero's admission in his Declaration that he alone is financing this litigation. Ex. 6 to Orig. Pet. ¶¶ 35-36, Appx. 219-210. Dondero of course claims altruistic intentions. *Id.*

Dondero originally set up the Charitable DAF for "efficient management" such that power over it was "concentrated in one person." Orig. Pet. ⁋ 5.9. Initially Dondero put Grant Scott in place, "Dondero's long-time friend, college housemate, and best man at his wedding" who later "resigned from that role [] after apparent disagreements with Mr. Dondero." *In re Highland Capital Mgmt., L.P.*, No. 19-34054-SGJ11,

2021 WL 3418657, at *1 (Bankr. N.D. Tex. Aug. 4, 2021), *vacated and remanded sub nom. Matter of Highland Capital Mgmt., L.P.*, 98 F.4th 170 (5th Cir. 2024). Now the control person is Mark Patrick, who was *not* Dondero's long-time friend, college housemate, or best man at his wedding. Instead, Mr. Patrick is a tax attorney who Dondero swore is "well-qualified tax counsel." Orig. Pet. ¶ 5.19; *see also id.* Ex. 6 to Orig. Pet ¶ 34, Appx. 219.

Mark Patrick is not in sole control of the Charitable DAF—he ceded unilateral control to "a person named Paul Murphy based in the Cayman Islands …" Ex. 6 to Orig. ¶ 19, Appx. 214. So two individuals currently control the Charitable DAF. *Id.*

Dondero swears that Mr. Patrick "became openly hostile towards the Charities, my affiliated companies, and me." *Id.* ¶ 33, Appx. 219. It is true that, among other things, entities controlled by the Charitable DAF requested that entities controlled by Dondero pay substantial obligations owed to the Charitable DAF, and Dondero refused. *E.g.* Cause No. 25-BC01B-004; *Atlas IDF, LP v. NexPoint Real Estate Partners, LLC, et al*; In the Texas Business Court, First Division (where a Charitable DAF controlled entity demands payment on ~$12M demand notes; Dondero's

entity and sister, as trustee of his trust, refuse to pay the Charitable DAF; and Dondero's sister cross claims against Mark Patrick and Shawn Raver).[2] Seeking payment on ~$12M demand notes—money that would further the Charitable DAF's philanthropic mission—is in no way improper. *See, e.g. Matter of Highland Capital Mgmt., L.P.*, 116 F.4th 422, 429, 439 (5th Cir. 2024) (affirming summary judgment in favor of Highland, the payor, against Dondero and his entities, the payees, on promissory notes for "more than $60 million of unpaid principal and interest").[3]

It is also true that "communications between Mr. Patrick, Skyview, and [Dondero] began to become less frequent" as Mark Patrick and Paul Murphy sought to fortify the independence of the Charitable DAF. Ex. 6 to Orig. Pet. ¶ 20, Appx. 214. For example, NexPoint is Dondero's newest "alternate investment firm," after his former alternative investment

---

[2] Atlas is not owned by the Charitable DAF. A Charitable DAF Subsidiary is the investment manager of Atlas.

[3] In addition to the $60 million notes judgment against him and his entities affirmed by the Fifth Circuit Court of Appeals, and the bankruptcies of Highland and Acis Capital Management, Dondero also faces an action in New York State Court by UBS AG for over $1 billion. Index No. 650744/2023; *UBS Securities LLC v. Dondero et al*, In the Supreme Court of the State of New York, New York County; https://news.bloomberglaw.com/banking-law/ubs-sues-highlands-dondero-over-1-billion-it-won-in-long-fight.

firm, Highland Capital Management, L.P. ("Highland"), was forced to file bankruptcy. *Highland Capital*, 116 F.4th at 429; Ex. 6 to Orig. Pet. ¶ 3, Appx. 210-211. As Dondero notes in his Declaration, at one point "NexPoint provided, without charge, investment ideas to" the Charitable DAF. Ex. 6 to Orig. Pet. ¶ 20, Appx. 214. In the best interests of the Charitable DAF, the Charitable DAF no longer accepts Dondero's "investment ideas," *i.e.* investing in Dondero's deals. Ex. 6 to Orig. Pet. ¶ 20, Appx. 214. In addition, Mark Patrick resigned from his position at Skyview, "a service organization that provided support primarily to Mr. Dondero and entities in which Mr. Dondero had an interest." Orig. Pet. ¶ 5.21; *see also In re Highland Capital Mgmt., L.P.*, No. 19-34054-SGJ11, 2022 WL 3959550, at *16 (Bankr. N.D. Tex. Aug. 30, 2022) ("Skyview being owned and operated by individuals previously employed by Highland"). Mark Patrick had no legal obligation to work for Dondero's companies, or  to accept their services on behalf of the Charitable DAF, or  to have the Charitable DAF make investments in Dondero's self-interested transactions, *i.e.* his "investment ideas." Ex. 6 to Orig. Pet. ¶ 20, Appx. 214.

**C.    Seeking to gain control of the Charitable DAF for his own purposes, Dondero manufactures allegations of wrongdoing, many of them years old.**

For purposes of this Motion, the Court is to "construe the plaintiff's pleadings liberally, taking all factual assertions as true ..." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). Thus the Charitable DAF will not address here the Dondero Organizations' false allegations regarding Mark Patrick. Orig. Pet. ¶¶ 6.1-6.27.

However, as the Dondero Organizations are aware—because they are a party to the proceeding—Mark Patrick refuted in detail and under oath these false allegations in the Cayman proceeding for the Debtor on June 4, 2025. Notably, the other independent director, Paul Murphy, continues to serve the Charitable DAF alongside Mr. Patrick. Ex. 6 to Orig. Pet. ¶ 19, Appx. 214.

**D.    The Dondero Organizations do not own any of the Charitable DAF entities or allege standing facts to support jurisdiction.**

The following sections demonstrate each instance where the Dondero Organizations admit they have no ownership interest in any of the Charitable DAF Entities they sued in Business Court, or where the evidence attached to the Petition rebuts their allegations, such that they

cannot rely on the Business Court jurisdictional Sections 25A.004(b)(2), (b)(4), or (b)(5) of the Government Code.

### 1.    The Charitable DAF Fund

The Dondero Organizations correctly identify that $270 million in allegedly "stolen" assets are held by non-party Charitable DAF Fund, L.P. ("The Charitable DAF Fund"). Orig. Pet. ¶ 5.2. But as shown in more detail in the chart below, the only direct ownership interests any of the Dondero Organizations ever held were "Participating Shares" in non-party Charitable DAF HoldCo, Ltd. (the Debtor), which was the *limited partner* of the Charitable DAF Fund. *Id.* ¶ 5.3; *see also* Ex. 2-A to Orig. Pet., Appx. 49.[4]

| Pls.' Allegation | Evidence |
|---|---|
| "Non-Party] Charitable DAF Fund, L.P. ("Charitable DAF Fund") was formed to hold donated assets." (Orig. Pet. ¶ 5.2)<br><br>"The Charitable DAF Fund primarily holds assets through a [non-party] wholly owned subsidiary called CLO HoldCo, Ltd. ("CLO HoldCo")." (¶ 5.3) | The Dondero Organizations do not allege that they have a direct ownership interest in the Charitable DAF Fund itself. *See generally* Orig. Pet. |

---

[4] The Dondero Organizations expressly state that they had no ownership interest in the general partner of Charitable DAF Fund, Defendant Charitable DAF Fund GP, LLC. Orig. Pet. §§ 1.2, 3.8, 5.11.

| Pls.' Allegation | Evidence |
|---|---|
| "At the same time the Charitable DAF Fund was created, [non-party] Charitable DAF HoldCo, Ltd ("Charitable DAF HoldCo"),[5] a Cayman Island entity, was also organized. Charitable DAF HoldCo held all of the economic interest in the Charitable DAF Fund. In other words, Charitable DAF HoldCo was the beneficial owner of all monies flowing from the assets held in the Charitable DAF Fund." (¶ 5.4) | Charitable DAF HoldCo was the limited partner of the Charitable DAF Fund. (Ex. 2-A, Appx. 49). In other words, the Dondero Organizations held "Participating Shares" (described more fully below) in the former limited partner of the Charitable DAF Fund. |
| "Participating shares in Charitable DAF HoldCo were therefore issued to four Supporting Organizations,[6] which were the ultimate beneficial owners of the assets held in the Charitable DAF Fund. Together, the four Supporting Organizations owned 100% of Charitable DAF HoldCo." (¶ 5.5) | The only "economic interest" Charitable DAF HoldCo possessed in the Charitable DAF Fund was to **discretionary** distributions— "Distributions shall be made to the Limited Partner at the times, in a manner (including in kind) and in the aggregate amounts determined by the General Partner[.]" (*Id.* ¶ 4.2(a), Appx. 58) |
| "Control over the Charitable DAF Fund was reposited in the Control Position through its complete ownership of a Delaware entity named Charitable DAF GP, LLC (the 'Delaware GP'). The Delaware | As the former limited partner in the Charitable DAF Fund, Charitable DAF Holdco was prohibited from participating in the "management of or have any control over [Charitable DAF |

[5] Defendants also define Charitable DAF HoldCo as the Debtor, but the Charitable DAF Entities use "Charitable DAF HoldCo" in the charts because that is how the Dondero Organizations refer to it in the Original Petition.

[6] The "Supporting Organizations" are defined as Plaintiffs The Highland Dallas Foundation, Inc., The Highland Kansas City Foundation, Inc., and The Highland Santa Barbara Foundation, Inc. Orig. Pet. at 1.

| Pls.' Allegation | Evidence |
|---|---|
| GP was the managing general partner in the Charitable DAF Fund." (¶ 5.11) | Fund]'s business nor shall the Limited Partners have the power to represent, act for, sign for or bind the General Partner or the Partnership." (*Id.* ¶ 1.6(b), Appx. 51)<br><br>Charitable DAF HoldCo expressly "consent[ed] to the exercise by the General Partner of the Powers conferred on it by this Agreement." (*Id.*) Beyond that consent, Charitable DAF HoldCo had **no** voting or consent rights, or rights to information, related to the management of Charitable DAF Fund. (*See generally id.*) |

Based on the Dondero Organizations' own pleadings and evidence, the Dondero Organizations held "Participating Shares" (the limited nature of which is described in Section B below) in the limited partner of the Charitable DAF Fund. In essence, the Dondero Organizations were a limited partner of a limited partner of the Charitable DAF Fund. And Charitable DAF HoldCo, as the former limited partner in the Charitable DAF Fund, was only entitled to discretionary distributions from Charitable DAF Fund, determined by the General Partner in its *sole discretion*.

### 2.    Charitable DAF HoldCo—the Debtor

Based on the pleadings and evidence presented by the Dondero Organizations themselves, their so-called "Participating Shares" in a non-party—the Debtor currently in wind-up proceedings in the Cayman Islands—entitled them to discretionary dividends determined by the Control Position of the Debtor in their sole discretion. And their continued participation in the Debtor was far from guaranteed.

| Pls.' Allegations | Evidence |
|---|---|
| "[M]anagement control of the Charitable DAF Fund and Charitable DAF HoldCo was vested not with those [Supporting] Organizations but rather in 'Management Shares,' with general partner status. These 'Management Shares' provided the only voting rights for any and all shareholders in Charitable DAF HoldCo. But they did not convey a right to any economic benefit of the assets in the Charitable DAF Fund, which belonged solely to the Supporting Organizations." (¶ 5.8) | Management Shares are defined as "a voting non participating share in the capital of [Charitable DAF HoldCo][.]"  (Ex. 2-B at Appx. 71). Management Shares "carry the right to receive notice of and to attend, to speak at and to vote at any general meeting of the Company." (*Id*. ¶ 11)<br><br>"Participating Shares" are defined as "a non-voting, participating, non-redeemable share in the capital of [Charitable DAF HoldCo][.]" (*Id*. at Appx. 72). Participating Shares "shall confer upon a Shareholder no right to receive notice of, to attend, to speak at nor to vote at general meetings of the Company but shall confer upon the Shareholders rights in a winding- |

| Pls.' Allegations | Evidence |
|---|---|
|  | up or repayment of capital and the right to participate in the profits or assets of the Company in accordance with these Articles." (*Id.* ¶ 19) |
| "So, the 'Management Shares' exercised control over the assets and over the operations of the Charitable DAF HoldCo, even though they conveyed no economic benefit. [T]he Management Shares and general partner status in the Charitable DAF Fund were concentrated in one person, the 'Control Position.'" (¶ 5.9, *see also* ¶ 5.10) | The Director(s) of Charitable DAF HoldCo had considerable power:<br><br>"[T]he Directors **may** from time to time declare dividends (including interim dividends) and other distributions on Shares in issue and authorize payment of the same out of the funds of the Company lawfully available therefor." (*Id.* ¶ 108) "[A]ll dividends shall be declared and paid in such amounts as may be declared by the Director's in their sole and absolute discretion without a requirement to pay such dividends on a pro-rata basis as to the paid-up or par value of the Shares." (*Id.* ¶ 113)<br><br>There is no restriction on the dilution of any shares, including Participating Shares, in Charitable DAF Holdco, nor did the Dondero Organizations have any right to notice or input on any dilutive event: |

| Pls.' Allegations | Evidence |
|---|---|
| | • "[T]he Company shall have power to redeem or purchase any of its shares and to sub-divide or consolidate the said shares or any of them[.]" (*Id.* ¶ 7_ <br><br> • "[A]ll Shares for the time being unissued shall be under the control of the Directors who may: issue, allot and dispose of the same to such Persons, in such manner, on such terms and having such rights and being subject to such restrictions as they may from time to time determine." (*Id.* ¶ 7(a) ) <br><br> • "The rights conferred upon the holders of the Participating Shares of any Class issued with preferred or other rights shall not . . . be deemed to be materially adversely varied or abrogated by, *inter alia*, the creation, allotment or issue of further Participating Shares ranking *pari passu* with or subsequent to them or the redemption or purchase of any Participating Shares of any Class by the Company." (*Id.* ¶ 21) |

| Pls.' Allegations | Evidence |
|---|---|
| | The Dondero Organizations had no information rights—"[N]o Shareholder (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by law or authorized by the Directors or by Ordinary Resolution." (*Id.* ¶ 118.) |

Thus, the Dondero Organizations' so-called "Participating Shares" in the non-party Debtor entitled them to very little except for *discretionary* dividends determined by the Control Position of Debtor in their sole discretion. And Debtor, in turn, was only entitled to discretionary distributions from Charitable DAF Fund as determined by the General Partner in its sole discretion.

### 3.    The Current Charitable DAF Fund

James Dondero and Julie Diaz's declarations are riddled with mischaracterizations and mistruths regarding the alleged "dilution scheme and liquidation maneuver" vetted by a bevy of outside counsel and advisors by which the Charitable DAF was restructured beginning

in December 2024.[7] The Charitable DAF denies it committed any wrongdoing in connection with the restructure. As noted above, the Dondero Organizations, as Participating Shareholders *only* in the Debtor, had no right to vote on these transactions, nor did they have any right to any information or notice about them. *See supra* § B. Furthermore, the Participating Shares are subject to express dilution and liquidation rights, which the Dondero Organizations conveniently ignore:

> 21.   The rights conferred upon the holders of the Participating Shares of any Class issued with preferred or other rights shall not, subject to any rights or restrictions for the time being attached to the Participating Shares of that Class, be deemed to be materially adversely varied or abrogated by, *inter alia*, the creation, allotment or issue of further Participating Shares ranking *pari passu* with or subsequent to them or the redemption or purchase of any Participating Shares of any Class by the Company.

*See* Ex. 2-B to Orig. Pet. § 21, Appx. 76.

> **POWERS AND DUTIES OF DIRECTORS**
>
> 80.   Subject to the Law, these Articles and to any resolutions passed in a general meeting, the business of the Company shall be managed by the Directors, who may pay all expenses incurred in setting up and registering the Company and may exercise all powers of the Company. No resolution passed by the Company in general meeting shall invalidate any prior act of the Directors that would have been valid if that resolution had not been passed.

*Id.* § 80, Appx. 83.

---

[7] For purposes of this Motion, the Charitable DAF will not address the Dondero Organizations' false allegations regarding Mark Patrick's actions, all of which were done in the best interests of the Charitable DAF, and specifically to uphold its charitable purpose.

**WINDING UP**

130.  If the Company shall be wound up the liquidator shall apply the assets of the Company in such manner and order as he thinks fit in satisfaction of creditors' claims.

131.  Subject to any rights and restrictions for the time being attributed to any Class or Series, the assets available for distribution among the Shareholders shall then be applied in the following priority:

   (a)   first, in the payment to the holders of Participating Shares and Management Shares, *pari passu*, of a sum equal to the par value of the Participating Shares or Management Shares held by them; and

   (b)   second, in the payment of any balance to holders of Participating Shares, such payment being made in proportion to the number Participating Shares of the relevant Class and Series held.

132.  If the Company shall be wound up, the liquidator may, with the sanction of an Ordinary Resolution divide amongst the Participating Shareholders in specie or kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may, for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the Participating Shareholders or different Classes.  The liquidator may, with the like sanction, vest the whole or any part of such

*Id.* § 132, Appx. 91.

But even so, what is clear from the Dondero Organizations' allegations is they *do not own* any interest in any Charitable DAF Entity. The Dondero Organizations repeatedly disclaim ownership in any Charitable DAF Entity:[8]

- "The purpose and result of Patrick's moves was to entirely eliminate the Supporting Organization's ownership of the Charitable DAF Fund assets." Orig. Pet. § 5.41.

- "In December 2024, Patrick formed new entities (as described below) with Patrick as the sole director. He then replaced the current entities holding and

_____

[8] While the Dondero Organizations bring claims against CDH GP, Ltd., there are no real factual allegations contained in their Petition about this Charitable DAF Entity. *See generally id.* But they do allege that they have no ownership interest in CDH. *Id.* § 3.7; Ex. 1-C.

controlling the Charitable DAF Fund with his own entities, essentially transferring all ownership and control to himself[.]" *Id.* § 5.42.

- "Patrick formed Defendant DFWCF [], a Delaware non-profit corporation. Patrick named himself [DFWCF's] sole member[.]" *Id.* § 5.43; *see also id.* § 3.4 and Ex. 1-A.

- "On April 2, 2025, Patrick caused Charitable DAF HoldCo to redeem its interests in CDMCFAD for a total payment of $1.6 million. . . . As a result . . . Defendant DFWCF, was the sole limited partner and beneficial owner of Charitable DAF Fund, through its now-100% ownership of CDMCFAD, and CDMCFAD's 100% ownership of the fund." *Id.* § 5.49 (emphasis added).

Thus, nothing in the 71 paragraphs of factual allegations in the Petition changes the fact that the Dondero Organizations have only ever owned one thing—Participating Shares (with extremely limited rights) in the Debtor, which is not a party to this suit and is currently in wind-up proceedings in the Cayman Islands.

**E.    This case is Dondero's latest attempt to take control over the Charitable DAF so that he can misuse its assets for his own personal benefit.**

Dondero admits he is personally financing this litigation and that he sits on the board of his Organizations. Ex. 6 to Orig. Pet. ¶¶ 35-36, Appx. 219-210. He controls this litigation.

## LEGAL STANDARDS

When subject matter jurisdiction is in question, the trial court must determine at its earliest opportunity whether it has jurisdiction before allowing the litigation to proceed. *Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "To establish subject matter jurisdiction, a plaintiff must allege facts that affirmatively demonstrate the court's jurisdiction to hear the claim." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

When a plea to the jurisdiction is based on the pleadings, the trial court must determine if the plaintiffs have alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). "If the pleadings do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiffs should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226-27. However, if as here "the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id*. at 227.[9]

---

[9] The Court may consider evidence that the Dondero Organizations attached to their Original Petition. *Bland Indep. School Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

<u>A</u>RGUMENT AND <u>A</u>UTHORITIES

**A.    This Court does not have statutory subject matter jurisdiction.**

The Dondero Organizations allege this Court has jurisdiction under Government Code § 25A.004(b)(2), (b)(4), and (b)(5). Orig. Pet. ¶ 4.1. But they cannot establish subject matter jurisdiction under any of these subdivisions based on their own pleading. They admit they are not owners of any Charitable DAF Entity, precluding jurisdiction under § 25A.004(b)(4). And as non-owners, they do not have a valid cause of action, and thus cannot invoke jurisdiction, under § 25A.004(b)(2). And the Dondero Organizations failed to sufficiently plead derivative standing to invoke jurisdiction under § 25A.004(b)(5).

**1.    The Dondero Organizations cannot establish subject matter jurisdiction under § 25A.004(b)(4) because they are not "owners."**

Under § 25A.004(b)(4), the Business Court has jurisdiction over "an action *by an organization, or an owner of an organization*, if the action: (A) is brought *against* an owner, controlling person, or managerial official of *the organization*; and (B) alleges an act or omission by the person in the person's capacity as an owner, controlling person, or managerial

official of the organization." TEX. GOV'T CODE § 25A.004(b)(4) (emphasis added).

An "owner" is defined as "an owner of an organization" and includes: "(A) a shareholder or stockholder of a corporation or other organization; (B) a general or limited partner of a partnership or an assignee of a partnership interest in a partnership; (C) a member of, or an assignee of a membership interest in, a limited liability company; and (D) a member of a nonprofit organization." TEX. GOV'T CODE § 25A.001(11).

The Dondero Organizations do not fit this definition. The Dondero Organizations name DFW Charitable Foundation, CDMCFAD, LLC, Charitable DAF GP, LLC, and CDH GP, Ltd. as Defendants. But the Dondero Organizations' pleadings show they are not "owners" of any of these entities. According to the Original Petition, DFW Charitable Foundation's "sole member" is Mark Patrick. Orig. Pet. ¶ 3.4. CDMCFAD, LLC is "100% own[ed]" by DFW Charitable Foundation. *Id.* ¶ 5.49. Charitable DAF GP, LLC, before its dissolution, was owned by Mark Patrick as its sole managing member. *Id.* ¶ 5.11. And CDH GP, Ltd.'s "100% owner and sole director" is Mark Patrick. *Id.* ¶ 3.7. Thus, §

25A.004(b)(4) does not apply because the Dondero Organizations are not owners, controlling persons,[10] or managerial officials of any Charitable DAF Entity.

Because the Dondero Organizations pleaded they are not "owners" of each of the four Charitable DAF Entities—as that term is defined in the statute—they pleaded themselves out of this Court's jurisdiction under § 25A.004(b)(4).

### 2. This Court lacks jurisdiction under § 25A.004(b)(2) because the Dondero Organizations don't have standing to sue over the Charitable DAF's governance, governing documents, or internal affairs.

Under § 25A.004(b)(2), the Business Court has jurisdiction over an "action regarding the governance, governing documents, or internal affairs of an organization." TEX GOV'T CODE § 25A.004(b)(2). This ground fails because the Dondero Organizations do not have § 25A.004(b)(2) standing to maintain a cause of action regarding the Charitable DAF's governance, governing documents, or internal affairs.

---

[10] The Dondero Organizations affirmatively plead that "management control of the Charitable DAF Fund and Charitable DAF HoldCo was vested not with [the Dondero Organizations] but rather in 'Management Shares,'" which "provided the only voting rights for any and all shareholders in Charitable DAF HoldCo." Orig. Pet. ¶ 5.8. So even to the extent the Dondero Organizations may attempt to argue some version of "they have indirect control over the Charitable DAF Entities through the non-party Charitable DAF HoldCo" could confer jurisdiction under these sections, the Dondero Organizations have pleaded out of such jurisdiction.

As discussed above, the Dondero Organizations are not owners of any of the Charitable DAF Entities. Instead, the Dondero Organizations were the limited partner of a non-party limited partner (the Debtor—Charitable DAF HoldCo) of the Charitable DAF Fund, originally set up by Dondero in 2011, that received discretionary distributions to be used for charitable donations. Orig. Pet. ¶¶ 5.1-5.6. Charitable donations, of course, receive favorable tax treatment ultimately benefiting Dondero. *E.g.* 26 U.S.C.A. § 170(a)(1).

Yet the Dondero Organizations now claim this Court has jurisdiction by complaining about the governance, governing documents, or internal affairs of distinct legal entities—the Charitable DAF Entities. *Genssler v. Harris Cnty.*, 584 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Generally, a business entity exists as a separate legal entity . . ."). But a person does not have a cause of action to complain about the internal affairs of distinct entities in which it has no interest. That's the gist of the Dondero Organizations' argument—that they can somehow complain in this Court about the governance, governing documents, or internal affairs of a stranger. No such cause of action exists now, nor was one created by Government Code § 25A.004. The Dondero

Organizations essentially ask this Court to read such a cause of action into the Government Code. The Court cannot.

Standing to sue may be predicated on either statutory or common law. *Bickham v. Dallas County*, 612 S.W.3d 663, 669 (Tex. App.—Dallas 2020, pet. denied). "The legislature may grant private standing to bring [an] action[], but it must do so clearly." *Id*. Courts "apply a strict rule of construction to statutory enforcement schemes and imply causes of action only when the drafter's intent is clearly expressed from the language written." *Id*. (citation modified).

Texas courts are hesitant to read a cause of action into a statute if one is not explicitly created. *See Ritchie v. Rupe*, 443 S.W.3d 856, 875 (Tex. 2014) (refusing to read a cause of action for certain remedies into a statute where such a remedy was not explicitly specified). In line with this hesitation, courts regularly reason that jurisdictional statutes do not create causes of action. *See e.g., Williams v. Stevens*, No. 05-22-00440-CV, 2023 WL 5621835 at *5 (Tex. App.—Dallas Aug. 31, 2023, no pet.) (noting that a "jurisdictional statute establishing that district courts shall have original jurisdiction of civil actions … does not create a cause of action"); *In re Estate of Devitt*, 758 S.W.2d 601, 607 (Tex. App.—Amarillo 1988,

writ denied) (reasoning that a statute providing the appropriate court with jurisdiction to hear a will contest does not create a cause of action for a will contest).

Here the jurisdictional statute provides the Business Court with "civil jurisdiction concurrent with district courts" over a limited list of actions. TEX. GOV'T CODE § 25A.004(b). In other words, it provides that the Business Court is an appropriate forum to litigate certain *existing* causes of action. The jurisdictional statute does not provide a source of duty or otherwise create causes of action. Instead, it simply delineates what falls within the Business Court's limited jurisdiction.

"Without a breach of a legal right belonging to the plaintiff, no cause of action can accrue to his benefit." *JSFN, LLC. V. SJ Properties, LLC*, No. 10-16-00362-cv, 2018 WL 1867105 at *2 (Tex. App.—Waco Apr. 18, 2018, no pet.) (citing *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976)). Plenty of existing causes of action can be maintained in the Business Court under § 25A.004(b)(2). An action by Dondero's Organizations complaining that wholly separate and distinct entities are not being run the way Dondero wishes is not one of them.

Under the Dondero Organizations' interpretation of § 25A.004(b)(2), any stranger to an entity who does not agree with a decision of that entity can challenge that entity's governance, governing documents, or internal affairs. The consequence of such an interpretation would be chaos. Exxon could file suit in this Court against Chevron because its CEO declined to do business with Exxon, under the auspices that Exxon disagreed with the corporate governance decisions and governing documents of Chevron. Such an absurd result was not the legislature's intent when it drafted the Business Court's limited jurisdiction. *See Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) ("We also interpret statutes to avoid an absurd result"). Because the Dondero Organizations do not have standing to bring a claim that invokes § 25A.004(b)(2) (and because the provision itself does not create a private right of action that would trigger this Court's jurisdiction), § 25A.004(b)(2) does not confer subject matter jurisdiction over this lawsuit. *See Bickham*, 612 S.W.3d at 670.

### 3.    The Dondero Organizations do not have standing under § 25A.004(b)(5).

The Dondero Organizations allege that the Court has jurisdiction under § 25A.004(b)(5)—"an action alleging that an owner, controlling person, or managerial official breached a duty owed to an organization or an owner of an organization by reason of the person's status as an owner, controlling person, or managerial official, including the breach of a duty of loyalty or good faith." *Id.* § 25A.004(b)(5). But the Dondero Organizations: (1) do not state anywhere in their Petition that they are bringing this action derivatively on behalf of any entity in which they had an interest (which may in turn give rise to a fiduciary duty); (2) do not cite to any provision of either the Texas Business Organizations Code, or another state's laws, that would authorize the filing of this suit on behalf of any entity in which they had any interest, and (3) do not demonstrate that they have met any prerequisites for derivative standing under any state's laws. Accordingly, the Dondero Organizations failed to sufficiently plead that the Court has jurisdiction under § 25A.004(b)(5).

But even if they sufficiently pleaded a derivative action on behalf of an entity in which they had an interest, they do not have standing to

bring those claims by virtue of the Cayman wind-up proceeding, addressed in Section B below.

**B.   The Dondero Organizations do not have standing because their claims, if they had any merit, would belong solely to the Debtor.**

The Dondero Organizations also lack traditional standing to bring their claims, depriving the Court of subject matter jurisdiction.

"A plaintiff must have both standing and capacity to bring a lawsuit." *Austin Nursing Center v. Lovato,* 171 S.W.3d 845, 848 (Tex. 2005). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Id.*

As they state in their Petition, the Dondero Organizations already filed an involuntary Petition for Winding Up the Debtor—Charitable DAF HoldCo—in the Grand Court of the Cayman Islands.[11] Orig. Pet. ¶ 5.53. And as they admit, the Dondero Organizations "alleged essentially the same facts recounted in this Petition before the Grand

---

[11] As the attachments to the Dondero Organizations' Petition demonstrate, Mark Patrick made no objection to the voluntary liquidation being brought under the supervision of the Grand Court. Orig. Pet. App. 154.

Court." *Id*. ¶ 5.54.[12] The proceedings in the Cayman Islands culminated in the appointment of independent liquidators. *Id*. ¶ 5.51. These liquidators are already empowered to wind-up the Debtor and distribute its assets, if any. The liquidators, appointed by the Grand Court of the Cayman Islands, have *exclusive* standing and power to pursue any claims against the Charitable DAF on behalf of the Debtor arising out of the actions the Dondero Organizations complain of here, if they choose to do so.

This situation is similar to when a domestic entity enters bankruptcy. A bankrupt debtor's assets, including its claims against third-parties, are vested in the bankruptcy estate. *See Moser, Trustee of Estate of Mason v. Dillon Investments, LLC*, 649 S.W.3d 259, 263 (Tex. App.—Dallas 2022, no pet.) (citing 11 U.S.C. § 541(a) and *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008)). The property of

---

[12] This appears to be the Dondero Organizations' pattern—recycle its allegations against Mark Patrick in as many forums as possible and hope they are successful in one of them. As another example, the Dallas Foundation filed an objection to a settlement in the Highland bankruptcy, objecting to the transfer of a promissory note to an entity controlled by the Charitable DAF on similar grounds. *See* Objection of the Dallas Foundation and Crown Global Life Insurance, Ltd, ECF No. 4231, *In re Highland Capital Mgmt., L.P.*, (No. 19-34054-SGJ11). This was withdrawn at the hearing on June 25, 2025, and the settlement was approved by the Bankruptcy Court, the week before this suit was filed in the Business Court. *See* Order Approving Settlement between Highland Entities and the HMIT Entities, ECF No. 4297, *In re Highland Capital Mgmt., L.P.*, (No. 19-34054-SGJ11).

a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The phrase 'all legal or equitable interests of the debtor in property' has been construed broadly, and includes 'rights of action' such as claims based on state or federal law." *Highland Capital Mgmt. LP v. Chesapeake Energy Corp.,* 522 F.3d 575, 584 (5th Cir. 2008). Where a legal claim is vested in a bankruptcy estate, the trustee of that estate "has exclusive standing to bring a claim on behalf of the bankruptcy estate." *Moser*, 649 S.W.3d at 265 (citation modified).

With respect to claims asserted against a corporation's directors and officers, the bankruptcy estate "succeeds to any right of action the debtor corporation may have to recover damages for misconduct, mismanagement, or neglect of duty by a corporate officer or director." *In re Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir. 1994). Therefore "the trustee may prosecute a cause of action based on the fraud of the officers, directors, or shareholders for fiduciary misconduct, unlawful diversion of assets, or upon a statutory liability created by the law of the state of incorporation." *Id.* If under the law of

the state of formation[13] of an entity in bankruptcy, "the debtor could have raised these claims at the commencement of its case—that is, in these particular circumstances, if the claims are derivative to the corporation—*the claims will belong to the estate.*" *In re Dexterity Surgical, Inc.*, 365 B.R. 690, 695 (Bankr. S.D. Tex. 2007) (emphasis added) (citing *In re Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir.1994); *In re MortgageAmerica Corp.,* 714 F.2d 1266, 1276 (5th Cir.1983)). "If a cause of action belongs to the estate, then the Trustee has exclusive standing to assert the claim." *In re NC12, Inc.*, 478 B.R. 820, 831 (Bankr. S.D. Tex. 2012) (citing *Schertz–Cibolo–Universal City, Indep. Sch. Dist. (In re Educators Grp. Health Trust)*, 25 F.3d 1281, 1284 (5th Cir.1994)). The court in *NC12* consequently held "[i]f the Plaintiffs and Intervenors lack standing to bring claims, the Court must dismiss the claims for lack of subject matter jurisdiction." *Id.* (citing *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas*

---

[13] Here, the place of formation of the Debtor is the Cayman Islands. Orig. Pet. ¶ 5.4. Under Cayman law, an organization owns a claim where it sustains an actionable loss, not the organization's owner. *Foss v. Harbottle*, (1843) 67 Eng. Rep. 189, 202 (Eng.). In fact, if an owner wants to pursue a derivative claim before the Grand Court, the owner must obtain leave from the Grant Court. Grand Court Rules, O. 15 r. 12A (Cayman Islands 2022). Therefore, under the law of the place of formation, the claims brought by the Dondero Organizations belong to the Debtor. *See Dexterity Surgical*, 365 B.R. at 695.

*Petroleum),* 522 F.3d 575, 583 (5th Cir.2008) ("If the claims belong to the estate, then it was not error for the bankruptcy court to deny remand (because it has jurisdiction over all property of the estate) and dismiss the claims (because the trustee has exclusive standing to assert claims belonging to the estate)."); *Cobb v. Cent. States,* 461 F.3d 632, 635 (5th Cir.2006) ("[T]he issue of standing is one of subject matter jurisdiction."). In other words, the derivative claims of a debtor's owners belong to the bankruptcy estate, and no one else has standing to assert those claims.

The same is true under the law of the Cayman Islands. In a wind-up conducted under Cayman law, when a court supervised liquidation begins, the debtor is divested of the beneficial ownership of its assets and a statutory trust applies to those assets. *Ayerst (Inspector of Taxes) v. C&K (Construction) Ltd.* [1975] AC 167, 179. The Grand Court appoints joint official liquidators, who are officers of the Grand Court. Companies Act, 2025, s.108. These liquidators have the power to investigate the debtor's affairs, collect and realize the debtor's assets (if any), and distribute those realizations to those that are entitled to them. Companies Act, 2025, s.110. The liquidators can also (1) bring legal

proceedings in the debtor's name; and (2) take possession of the debtor's property, including taking all proceedings required for this purpose. Companies Act, 2025, s.110, p.1.1 and p.2.1.

In fact, United States courts regularly characterize Cayman liquidation proceedings as "foreign main proceedings" deserving of recognition under chapter 15 of the United States Bankruptcy Code. *See, e.g., In re Ascot Fund Limited*, 603 B.R. 271, 278 (Bankr. S.D.N.Y. 2019) ("[C]ourts in this district have consistently recognized Cayman Islands liquidation proceedings as 'foreign proceedings' for purposes of chapter 15 of the Bankruptcy Code."). This recognition is sweeping. "[U]pon recognition of the foreign proceeding as a 'foreign main proceeding…' the foreign representative may operate the debtor's business and exercise the rights and powers of a trustee under Bankruptcy Code sections 363 and 552." *In re SPhinX, Ltd.*, 351 B.R. 103, 115 (Bankr. S.D.N.Y. 2007) (citing 11 U.S.C. § 1520(a)(1)-(3)). In other words, a Cayman liquidator in a foreign main proceeding under Chapter 15 has the sole right to prosecute a debtor's claims. And Dondero is well aware of this fact—in 2017, when he was President of Highland, a United States bankruptcy court ruled that Cayman liquidation proceedings were foreign main proceedings

under Chapter 15, over Highland's objection. *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 690 (Bankr. S.D.N.Y. 2017); Orig. Pet. Apx. 210 ⁋ 3.

The Dondero Organizations' claims center on the Charitable DAF's alleged manipulation of the Debtor by redeeming the Dondero Organizations' Participating Shares in the Debtor for $1.6 million. Orig. Pet. ¶ 5.49. Setting aside (a) that the organizational documents expressly permit this and (b) the Dondero Organizations did not sue in the Business Court derivatively on behalf of the Debtor, because the Debtor is in wind-up proceedings in the Caymans, all of its claims (including the ones here) belong to the insolvency estate. The fact that the liquidation proceedings are pending in the Cayman Islands does not change this fact. *See In re Bullmore*, 300 B.R. 719, 724 (Bankr. D. Neb. 2003) (noting a winding-up proceeding in the Cayman Islands is "analogous" to the filing of a United States bankruptcy case and that the appointment of liquidators "terminated the authority of the directors of the company and put the operation of the company into the hands of the [liquidators] pending final order."); *see also* Companies Act, 2025, s.110. The liquidators, as the Cayman Islands' equivalent to a bankruptcy trustee, have exclusive authority and standing to pursue the claims alleged by the Dondero

Organizations on behalf of the Debtor. The Dondero Organizations therefore lack standing, and the Court does not have subject matter jurisdiction over this lawsuit.

### CONCLUSION

The Charitable DAF stands ready to defend every action it took in the best interests of the Charitable DAF and to uphold its charitable purpose, in the face of a multi-pronged effort by Dondero—often through his proxies—to take control of the Charitable DAF for Dondero's own purposes.

But *who*, if anyone, brings those claims, and *where* they must be brought, are foundational. The Dondero Organizations cannot proceed in this Court because they fail to establish a statutory basis for its jurisdiction. The Dondero Organizations are not owners of the Charitable DAF and lack standing to bring claims against the DAF in the Business Court. If anyone, the Caymanian liquidators on behalf of the Debtor would have exclusive standing to bring the claims asserted by the Dondero Organizations. The Charitable DAF therefore requests that the Court dismiss this case for lack of subject matter jurisdiction.

Respectfully submitted,

/s/ *Brian P. Shaw*

**Brian P. Shaw**
  Texas Bar No. 24053473
  Email:  bshaw@ccsb.com
**Monica E. Gaudioso**
  Texas Bar No. 24084570
  Email: mgaudioso@ccsb.com
**Andrea C. Reed**
  Texas Bar No. 24121791
  Email:  areed@ccsb.com
**Emily H. Owen**
  Texas Bar No. 24116865
  Email:  eowen@ccsb.com
**CARRINGTON, COLEMAN,**
  **SLOMAN & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202
(214) 855-3000 – Telephone
(214) 580-2641 – Facsimile

**ATTORNEYS FOR
DEFENDANTS**

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to BCLR 5 that, exclusive of the contents identified in BCLR 5(a) and inclusive of all footnotes and endnotes, this document contains 7436 words as counted by the word count function of Microsoft Word. I further certify this document complies with the Court's judge-specific guidelines regarding word limits and formatting.

/s/ *Brian P. Shaw*
Brian P. Shaw

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2025, a copy of the foregoing document was electronically served on all counsel of record in accordance with Tex. R. Civ. P. 21a.

/s/ *Brian P. Shaw*
Brian P. Shaw

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Brian Shaw on behalf of Brian Shaw
Bar No. 24053473
bshaw@ccsb.com
Envelope ID: 103122585
Filing Code Description: Motions - All Other
Filing Description: DEFENDANTS MOTION TO DISMISS AND PLEA TO THE JURISDICTION
Status as of 7/15/2025 8:57 AM CST

Associated Case Party: The Highland Dallas Foundation, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jason E.Boatright | | JEBoatright@duanemorris.com | 7/14/2025 11:05:56 PM | SENT |
| Dylan JAnderson | | DJAnderson@duanemorris.com | 7/14/2025 11:05:56 PM | SENT |
| Joseph MCox | | JMCox@duanemorris.com | 7/14/2025 11:05:56 PM | SENT |
| Benjamin Warden | | BWarden@duanemorris.com | 7/14/2025 11:05:56 PM | SENT |
| Katherine Ramos | | KRamos@duanemorris.com | 7/14/2025 11:05:56 PM | SENT |
| Craig M.Warner | | CMWarner@duanemorris.com | 7/14/2025 11:05:56 PM | SENT |
| James Billingsley | | JBillingsley@duanemorris.com | 7/14/2025 11:05:56 PM | SENT |
| Darren McCarty | 24007631 | darren@mccartylawpllc.com | 7/14/2025 11:05:56 PM | SENT |

Associated Case Party: DFW Charitable Foundation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Monica G.Gaudioso | | mgaudioso@ccsb.com | 7/14/2025 11:05:56 PM | SENT |
| Emily Owen | | eowen@ccsb.com | 7/14/2025 11:05:56 PM | SENT |
| Brian P.Shaw | | bshaw@ccsb.com | 7/14/2025 11:05:56 PM | SENT |
| Andrea Reed | | areed@ccsb.com | 7/14/2025 11:05:56 PM | SENT |
| Rhonda LThomas | | rthomas@ccsb.com | 7/14/2025 11:05:56 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Judy Garrison | | jgarrison@ccsb.com | 7/14/2025 11:05:56 PM | SENT |
| Sherry Stewart | | sstewart@ccsb.com | 7/14/2025 11:05:56 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Brian Shaw on behalf of Brian Shaw
Bar No. 24053473
bshaw@ccsb.com
Envelope ID: 103122585
Filing Code Description: Motions - All Other
Filing Description: DEFENDANTS MOTION TO DISMISS AND PLEA TO THE JURISDICTION
Status as of 7/15/2025 8:57 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Sherry Stewart | | sstewart@ccsb.com | 7/14/2025 11:05:56 PM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 7/14/2025 11:05:56 PM | SENT |
| Angie Barrera | | abarrera@ccsb.com | 7/14/2025 11:05:56 PM | SENT |