**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION), [1] | Case No. 25-11376 (___) |
| Debtor in a foreign proceeding. | |

**DECLARATION OF CAROLINE MORAN
AS CAYMAN ISLANDS COUNSEL TO THE DEBTOR IN
SUPPORT OF THE MOTION FOR (I) RECOGNITION OF FOREIGN
MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE,
AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE
TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE**

I, Caroline Moran, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

## I.    INTRODUCTION

1.    I am an attorney-at-law duly permitted to practice in the Cayman Islands and the Global Head of the Dispute Resolution, Insolvency and Restructuring team at the law firm Maples and Calder (Cayman) LLP ("Maples"). My professional address is Ugland House, South Church Street, Grand Cayman KY1-1104, Cayman Islands. I am duly admitted to practice in the Cayman Islands.

2.    Maples is acting as Cayman Islands counsel to Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited, who on May 6, 2025 were appointed by the Grand Court of the Cayman Islands (the "Cayman Court") as joint official liquidators (in such capacity, the "JOLs") of Charitable DAF Holdco, Ltd, an exempted company

---

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 170388. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

incorporated under the laws of the Cayman Islands ("HoldCo" or the "Debtor").  Holdco is the

subject of a liquidation proceeding before the Cayman Court entitled *In the matter of section 131*

*of the Companies Act (2025 Revision) and in the matter of Charitable DAF Holdco Ltd* FSD 116

of 2025 (JAJ) (the "Cayman Liquidation Proceedings").  The JOLs have been appointed as foreign

representatives in the Cayman Liquidation Proceedings for the purpose of seeking Chapter 15

relief. I am the partner at Maples primarily responsible for handling the Cayman Liquidation

Proceedings.

3.      I am over the age of 18 and, if called upon, could testify to all matters set forth in

this declaration (this "Declaration"). The facts and matters contained in this Declaration are true

and correct to the best of my information, knowledge and belief.

4.      In preparing this Declaration, I reviewed the final form drafts of: (a) the *Verified*

*Petition of Foreign Representatives for (i) Recognition of the Foreign Main Proceeding, (ii)*

*Recognition of the Foreign Representatives, and (iii) Certain Related Relief* (the "Verified

Petition") [2]; (b) the Declaration of Margot MacInnis in Support of the Motion for (I) Recognition

of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief

Under Chapter 15 of the Bankruptcy Code (the "MacInnis Declaration"); (c) the documents

prepared and/or filed in connection with the  Cayman Liquidation Proceedings (as defined herein);

and (d) relevant provisions of the Cayman Islands Companies Act (2025 Revision) (the

"Companies Act"), a copy of which is attached hereto as **Exhibit 1**, the Companies Winding Up

Rules (2023 Consolidation) (the "CWR"), a copy of which is annexed hereto as **Exhibit 2**, the

Insolvency Practitioners' Regulations (2023 Consolidation) and Insolvency Practitioners'

(Amendment) Regulations, 2024 (collectively, the "IPR"), a copy of which is attached hereto as

---

[2] Capitalized terms used but not defined in this Declaration shall have the meanings ascribed to them in the Verified Petition.

**Exhibit 3**, the Grand Court Rules of the Cayman Islands (2023 Revision), a copy of which is attached hereto as **Exhibit 4**, the Grand Court Law of the Cayman Islands (2015 Revision), a copy of which is attached hereto as **Exhibit 5**, and other provisions of Cayman Islands law as they relate to chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") and other aspects of U.S. bankruptcy law referred to in this Declaration. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

5.      HoldCo is a Cayman Islands exempted company, incorporated on October 27, 2011, and was, between November 2011 and December 18, 2024, the sole limited partner of the Charitable DAF Fund, LP (the "Fund"),[3] a Cayman Islands exempted limited partnership formed on October 28, 2011, to invest and manage assets for the benefit or ultimate benefit of certain registered charitable organizations in the U.S.

6.      I submit this Declaration in support of (a) the Verified Petition; and (b) the *Motion Pursuant to Fed. R. of Bankr. P. 2002 and 9007 Requesting Entry of an Order (I) Scheduling the Recognition Hearing, and (II) Approving the Form and Manner of Service of Notice* (the "Scheduling Motion"), filed contemporaneously herewith.

7.      This Declaration comprises matters that are statements of my view of Cayman law or statements of fact. Where the matters stated in this Declaration are statements regarding Cayman law, such statements represent my view of Cayman law as an attorney admitted and authorized to practice in the Cayman Islands. Where the matters stated in this Declaration are statements of fact that are within my personal knowledge, I believe them to be true. Where the matters stated in this Declaration are statements of fact that are not within my personal knowledge, they are derived, as

---

[3] The term DAF stands for *Donor Advised Fund*, a vehicle defined by reference to s.4966(d)(2) of the US Internal Revenue Code of 1986, which grants certain tax benefits and the reasonable expectation of advisory privileges to the donor of assets to a DAF as regards the distribution or investment of amounts, provided their donation is irrevocable and beyond the donor's control.

appropriate, from documents maintained by the Cayman Islands Registrar of Companies, from the records maintained by Maples as a result of advising the JOLs in connection with the Cayman Liquidation Proceedings, and/or from information supplied to me by or on behalf of the JOLs and are true to the best of my knowledge, information, and belief. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## II.    PERSONAL BACKGROUND AND QUALIFICATIONS

8.      I graduated from Trinity College, Dublin in 2000 with an LLB in Law and French and received a diploma in Accounting and Finance from Dublin Business School in 2003. I was admitted as solicitor in the Republic of Ireland in 2004. I joined Maples Dublin in 2007, at which time I was also admitted as a solicitor of the Supreme Court of England and Wales and the Eastern Caribbean Supreme Court (British Virgin Islands). I moved to the Maples Cayman Islands office in 2009 and was admitted as an attorney-at-law in the Cayman Islands in 2010. I was elected partner of Maples in 2016.

9.      My practice, in my 21 years since qualification, has focused on complex cross-border restructurings, insolvency, and workouts of distressed companies and contentious litigation. My clients over this period have included leading international and regional accountancy practices, financial institutions, insolvency office holders, official and unofficial creditors' committees, private equity sponsors, hedge funds, directors, trustees, shareholders and corporate debtors, and my casework has included matters across the world including (without limitation) the United States and Asia.

10.      I am a member of Insol International, the International Insolvency Institute and IWIRC.  I was one of the two lawyers responsible for spearheading and drafting the recent legislative reforms in the Cayman Islands implementing the Restructuring Officer Regime which

was passed into law in August 2022.  I was also a member of the IWIRC delegation to Working Group V on the UNCITRAL Model Law at the United Nations.

11.     Although I am not admitted in the United States, I am familiar with the provisions of Chapter 15 of the Bankruptcy Code as a consequence of my Cayman practice specifically arising from my involvement with other Cayman liquidations and schemes of arrangement that have required Chapter 15 Bankruptcy Code recognition proceedings.

12.     I, together with other partners and associates at Maples, have been advising the JOLs on all legal aspects of the Cayman Liquidation Proceedings and the extraterritorial effects and recognition of the same since May 2025.

### III.    STATEMENTS OF CAYMAN LAW AND PRACTICE

#### A.    Cayman Islands Legal System

12.     The Cayman Islands is a British Overseas Territory and a distinct legal jurisdiction. The courts of the Cayman Islands administer justice in accordance with local statutes, subordinate legislation, statutes passed by the parliament of the United Kingdom that have been expressly extended to the Cayman Islands, orders of His Majesty's Privy Council applicable in the Cayman Islands, and the common law. The Financial Services Division of the Cayman Court is the court of first instance for insolvency and restructuring matters, with appeals lying directly to the Cayman Islands Court of Appeal (the "Court of Appeal") and finally to His Majesty's Judicial Committee of the Privy Council (the "Privy Council"), which sits in London and is comprised of members of the English Supreme Court (the highest court in England) and senior judges from other Commonwealth countries.

13.     The doctrine of judicial precedent applies in the Cayman Islands and the structure of the court system is hierarchical. Therefore, decisions of the Privy Council are binding on the Court of Appeal and the Cayman Court, and the decisions of the Court of Appeal are similarly

binding on the Cayman Court. The Cayman Court will follow its own previous decisions unless satisfied that they are clearly wrong.

14.    The reported case law in the Cayman Islands is contained in the Cayman Islands Law Reports. There are also unreported judgments published on the judicial website (www.judicial.ky). In the absence of binding Cayman Islands authority, the Cayman Islands courts will look to, and apply, English and other common law authorities, which are persuasive, but not binding. Generally, in the absence of Cayman Islands precedent, the Cayman Islands courts will follow English authorities on the relevant point to the extent that they are not inconsistent with either Cayman Islands statutory provisions or Cayman Islands authorities, and to the extent that they do not relate to English statutory provisions that have no equivalent in the Cayman Islands. Decisions of courts in other common law jurisdictions (such as Ireland, Australia and New Zealand) are also of persuasive, but not binding, authority.

### B.    Cayman Islands Companies

15.    Cayman Islands companies are incorporated pursuant to the Companies Act. All companies must maintain registered offices in the Cayman Islands to which all communications and notices may be addressed or served, and where matters such as the administration of annual filings and the payment of annual fees with the Cayman Islands Registrar of Companies are usually dealt with. Cayman Islands companies are also required to maintain statutory registers of members (*i.e.* shareholders), mortgages and charges, and directors.

16.    Various types of companies may be incorporated under the Companies Act, but the vast majority of companies are incorporated as exempted companies under Part VII of the Companies Act. The Debtor is an exempted company.

17.     The principal distinction between "exempted" and "ordinary" companies is that, pursuant to section 174 of the Companies Act, an exempted company is prohibited from trading in the Cayman Islands except in furtherance of its business outside the Cayman Islands. Section 174 clarifies that it is not to be construed so as to prevent the exempted company from effecting and concluding contracts in the Cayman Islands and exercising in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands. An exempted company can therefore, for example, maintain premises and employ staff and appoint directors and other agents who are residents in the Cayman Islands, in furtherance of the company's business outside the Cayman Islands.

18.     In any event, as I explain below, these restrictions cease to have any practical relevance in an official liquidation of an exempted company, such as the Cayman Liquidation Proceedings of the Debtor, where the official liquidators are given the powers necessary to conduct the Debtor's liquidation, whether within or without the Cayman Islands.

### C.      Insolvency Proceeding in Respect of Cayman Islands Companies

19.     Part V of the Companies Act governs the winding up of companies in the Cayman Islands. Part V of the Companies Act applies to companies incorporated and registered under the Companies Act (including exempted companies such as the Debtor) or its predecessors, and to certain foreign companies.

20.     Part V is supplemented by the following rules and regulations made pursuant to section 155: the Companies Winding Up Rules (2023 Consolidation), the Insolvency Practitioners' Regulations (2023 Consolidation), and the Foreign Bankruptcy Proceedings (International Cooperation) Rules 2018.

21.     A company may be wound up in one of three ways[4]: (i) compulsorily by order of the Cayman Court, (ii) voluntarily, or (iii) under the supervision of the Cayman Court. Neither compulsory nor voluntary liquidations are of relevance in this case.

22.     The court-supervised liquidation of a Cayman Islands company is carried out by the Cayman Court pursuant to certain statutory mechanisms set out in the Companies Act. Specifically, where a resolution has been passed by the shareholders of a Cayman Islands company to wind up that company voluntarily, the liquidator or any contributory or creditor may apply to the Cayman Court for an order for the continuation of the winding up under the supervision of the Cayman Court on the grounds that (a) the company is or is likely to become insolvent; or (b) the supervision of the Cayman Court will facilitate a more effective, economic or expeditious liquidation of the company in the interests of the contributories and creditors.[5] When making a supervision order, the Cayman Court shall appoint one or more qualified insolvency practitioners and may also appoint one or more foreign practitioners to serve as liquidators of the company,[6] and the supervision order takes effect for all purposes as if it was an order that the company be wound up by the Cayman Court.[7]

23.     A general principle underlying the Cayman Islands' insolvency regime is that the claims of investors and creditors within the same class are treated on a *pari passu* basis.[8]

24.     Section 97(1) of the Companies Act provides that upon the entry of a winding up order, no suit or other proceedings may be commenced or continued against the company except

---

[4] Companies Act § 90.

[5] Companies Act § 131.

[6] Companies Act § 132(1).

[7] Companies Act § 133.

[8] Companies Act § 140.

with leave of the Cayman Court and subject to such terms as the Cayman Court may impose. This automatic stay, similar to the automatic stay provided for in the Bankruptcy Code, serves to promote the JOLs' ability to deal with the claims of creditors collectively and comprehensively.

## IV.   THE CAYMAN LIQUIDATION PROCEEDINGS

### A.   Commencement

25.   On April 2, 2025, without informing the Supporting Organizations, Mr. Mark Patrick as the Management Shareholder of Holdco resolved to place HoldCo into voluntary liquidation and appointed Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd as joint voluntary liquidators. Unaware of this development, the Supporting Organizations, on April 23, 2025, presented a petition seeking the winding up of HoldCo on a just and equitable basis under section 92(e) of the Companies Act (the "J&E Petition").

26.   On April 24, 2025, the Supporting Organizations served the J&E Petition on the registered office of Holdco.  On April 25, 2025, the attorneys for Holdco informed the Supporting Organizations for the first time that Holdco had been placed into voluntary liquidation on April 2, 2025.

27.   On May 2, 2025 the Supporting Organizations  therefore filed a petition seeking an order for the voluntary liquidation of HoldCo to continue under the supervision of the Cayman Court pursuant to section 131 of the Companies Act on the basis that Court supervision would result in a more effective, economic and expeditious liquidation because there was a need for an investigation into the affairs of Holdco and the conduct of the directors (the "Supervision Petition"). Following a hearing and review of the Supervision Petition, supporting affidavits and affirmations with exhibits, and the documents filed in Cause No. FSD 2025-0099 (JAJ)—including the J&E Petition and the affidavits of the JOLs confirming their consent to act—on May 6, 2026, the Cayman Court issued an order (the "Supervision Order") that the voluntary liquidation of

Holdco be continued under the supervision of the Cayman Court pursuant to section 131 of the Companies Act and Order 15, rule 8 of the CWR and appointing the JOLs to act as joint official liquidators of HoldCo.

28.     As detailed below, as joint official liquidators appointed by the Cayman Court, the JOLs may exercise such powers as are conferred by the Companies Act and the Supervision Order appointing them (*see* Companies Act § 110), and they are specifically authorized pursuant to paragraph 6(c) of the Supervision Order to file the Verified Petition in order to obtain recognition in the United States, and to take any actions as may be necessary or desirable in order to do so.

29.      In my experience, Cayman Islands liquidation proceedings are fair and equitable. All creditors and interest holders have an opportunity to be heard by the Cayman Court and no creditor will be prejudiced because it may be foreign-based.

**B.     The Cayman Litigation for breaches of fiduciary duty, unlawful means conspiracy, unjust enrichment, restitution and other equitable relief and damages**

30.     On July 4, 2025, the JOLs applied to the Cayman Court in the Cayman Liquidation Proceedings on an *ex parte* basis for sanction to commence litigation proceedings by way of filing a "Writ and Statement of Claim" against the following "Named Defendants": (1) Mark Patrick; (2) Paul Murphy; (3) CDMCFAD, LLC ("CDM"); (4) DFW Charitable Foundation ("DFW") (5) CDH GP, Ltd. for and on behalf of the Fund and in its capacity as general partner; and (6) CLO HoldCo, Ltd (the "Cayman Litigation").

31.     The Writ and Statement of Claim sets forth the legal and factual basis for various claims that the Debtor will assert in the Cayman Litigation.  In summary, the Cayman Litigation arises out of a series of transactions whereby it appears that Mr. Mark Patrick (a director and the sole Management Shareholder of the Debtor) and Mr. Paul Murphy (a director of the Debtor), caused the Debtor to transfer away its valuable limited partnership interest in the Fund to entities

controlled by Mr. Patrick. The end result of these transactions was that the Debtor exchanged an asset worth approximately $270 million for a membership interest in CDM, a Delaware limited liability company. Mr. Patrick then caused the CDM to redeem the Debtor's membership interest for the sum of c. $1.6 million leaving DFW, an entity controlled by Mr. Patrick, as the sole remaining member of the CDM. The Debtor also claims that the Mr. Patrick has paid himself excessive remuneration from the assets of the Debtor. These transactions have severely prejudiced the Debtor and its ultimate beneficial owners which are four large charitable organizations registered in the U.S.[9]

32.      At the hearing of the sanction application on July 14, 2025, to obtain an order granting the JOLs sanction to commence the Cayman Litigation, the JOLs were required to satisfy the Cayman Court in the Cayman Liquidation Proceedings that (a) the Cayman Litigation had a reasonable prospect of success and (b) that the interests of the Debtor's stakeholders were best served by the JOLs commencing the Cayman Litigation.[10] The Cayman Court granted sanction for the JOLs to commence the Cayman Litigation.

33.      On July 15, 2025, the Debtor proceeded to file the Writ and Statement of Claim with the Cayman Court to commence the Cayman Litigation (which has the cause number FSD 201 of 2025 (RPJ)) (the "Cayman Litigation Proceedings"). At the same time the JOLs filed an application in the Cayman Litigation Proceedings for (a) a proprietary injunction to prevent the Named Defendants from dealing with the assets of the Debtor that are held now or controlled by the Named Defendants together with disclosure orders (the "Injunction Application") and (b) leave to serve the US Defendants (defined below) with the Writ and Statement of Claim and Injunction

---

[9] The Dallas Foundation; the Greater Kansas City Foundation; the Santa Barbara Foundation and the Community Foundation of North Texas.

[10] *Re ICP Strategic Credit Income Fund* [2014] 1 CILR 314.

Application (the "Leave to Serve Application" and, together with the Injunction Application, the "Applications").

34.     Additionally, on July 15, 2025, the Debtor (1) emailed copies of the Writ and Statement of Claim and the Applications to the Cayman Islands attorneys for the Named Defendants and asked them to accept service and (2) served copies of the Writ and Statement of Claim at the Cayman Islands registered addresses of CDH GP, Ltd. and CLO HoldCo, Ltd.

35.     The Applications have been listed for hearing on July 31, 2025.  The Named Defendants are entitled to participate and be heard on that date.  In the event the Named Defendants consider that they have had insufficient time to respond to the Injunction Application within this timeframe, the Cayman Court will hear the Injunction Application on an *ex parte on notice* basis and, if the Injunction Application is granted, will schedule an *inter partes* hearing for a later date.

**C.      Leave to Serve Application**

36.     Mr. Patrick, DFW and CDM are all incorporated or reside outside the Cayman Islands in the United States (the "US Defendants").  As a result, pursuant to Order 11 of the Grand Court Rules of the Cayman Islands ("GCR"), the Debtor must seek leave to serve the Writ and Statement of Claim and Injunction Application out of the jurisdiction of the Cayman Islands.

37.     The US Defendants have, however, already instructed Cayman Islands attorneys and have appeared in or observed aspects of the Cayman Liquidation Proceedings. And, in moving to dismiss proceedings commenced on July 1, 2025, by the Supporting Organizations in the Business Court of Texas, the US Defendants, admitted that the JOLs have standing to bring claims on behalf of the Debtor.  In "*Defendants' Motion to Dismiss and Plea to the Jurisdiction*" filed in the Business Court of Texas, First Division, cause no. 25-BC-0B-0027 on July 14, 2025, the US Defendants stated:

> *"The liquidators, appointed by the Grand Court of the Cayman Islands, have exclusive standing and power to pursue any claims against [Mr. Patrick, DFW Charitable Foundation, CDMCFAD, LLC, Charitable DAF GP, LLC, and CDH GP, Ltd.] on behalf of the Debtor arising out of the actions [the Supporting Organizations] complain of here, if they choose to do so."*

Accordingly, the US Defendants can elect to accept service of the Writ and Statement of Claim and Injunction Application through their Cayman Islands attorneys, which would obviate the need for a Leave to Serve Application.

38.     In the event it is necessary for the Debtor to move the Leave to Serve Application, in order to be granted leave, the Debtor must satisfy the following tests:

    a.  First, that there is a serious issue to be tried on the merits;

    b.  Second, that there is a good arguable case that the Company's claims fall within one of the jurisdictional gateways under GCR O.11 pursuant to which the Cayman Court can accept jurisdiction over foreign defendants;

    c.  Third, that the Cayman Islands is in any event clearly or distinctly the appropriate forum for the trial of the claim, and all the circumstances the Court ought to exercise its discretion to permit service of the proceedings out of the jurisdiction.

39.     In respect of the merits, the JOLs have already succeeded in persuading the Cayman Court (albeit in the Cayman Liquidation Proceedings which are presided over by a different judge to the Cayman Litigation Proceedings) that the Cayman Litigation has reasonable prospects of success at hearing of the sanction application on July 14, 2025.

40.     In respect of the jurisdictional gateways under GCR O.11, the relevant gateways that will be applicable are:

    a.  As against Mr Patrick, GCR O.11, r.1(1)(ff), covers claims "*brought against a person who is or was a director, officer or member of a company registered within the jurisdiction or who is or was a partner of a partnership, whether general or limited, which is governed by the laws of the Islands and the subject matter of the claim relates in any way to such company or partnership or to the status, rights or duties of such director, officer, member or partner in relation thereto*."

    b.  As against CDM and DFW:

        (a)    GCR O.11,r.1(1)(c) covers claims "*brought against a person who has been or will be duly served within or out of the jurisdiction and a person out of the jurisdiction is a necessary or proper party thereto*";

        (b)    GCR O.11, r.1(1)(f) covers claims "*founded on a tort, fraud or breach of duty whether statutory at law or in equity and the damage was sustained, or resulted from an act committed, within the jurisdiction*";

        (c)    GCR O. 11,r.1(1)(f) covers claims "*brought for any relief or remedy in respect of any trust, whether express, implied or constructive, that is governed by or ought to be executed according to the laws of the Islands.*"

41.    In respect of the Cayman Islands being the appropriate forum, the Cayman Court must conduct an assessment of the "connecting factors" between the case and the jurisdictions in which it could be litigated.[11]

### D.    Injunction Application

42.    On an application for a proprietary injunction, the Debtor must show:

    a.  A serious issue to be tried as to whether it has a proprietary interest in the asset. This connotes a relatively low standard, under which the Court should ask whether the claim is one that would be capable of withstanding a summary judgment application.

    b.  That the balance of convenience is in favor of granting the injunction.  As to this, Grant and Mumford (eds), Civil Fraud: Law, Practice, & Procedure ("Civil Fraud") at 28-206 comment that "*[i]n reality, unlike other types of interim injunction where the balance of convenience may create real room for argument, it is likely that a claimant with a properly arguable claim to a proprietary interest in particular property will be able to persuade the Court that damages will not be an adequate remedy should the property be dealt with pending trial, and the balance of convenience will generally favour him*".  As Flaux J put it in Madoff Securities v Raven [2011] EHWC 3102 (Comm) at [140], once a sufficiently arguable proprietary case has been established, arguments by respondents that ""*it would be frightfully inconvenient to tell you what I've done with your money or to be prevented from continuing to use it*"

---

[11] *Aspect Properties* [2022] 1 CILR 685.

*when, on this hypothesis [the respondent] should not have had the money in the first place, do not cut much ice*"; and

c.   That it is otherwise just and convenient to grant the injunction.

d.   As regards the balance of convenience, whilst the Cayman Court will not enquire too closely into the merits, where the scales are evenly balanced in relation to the balance of convenience, one can take into account the relative strengths of the parties' cases: Polly Peck International plc v Nadir [1992] 4 All ER 769 at 784G–784H.

43.   The Debtor also seeks disclosure orders in support of the Injunction Application requiring the Named Defendants to provide historical, present and future information about the Debtor's assets that they now hold and/or control.

44.   The Cayman Court's jurisdiction to make a disclosure order is derived from s.11 of the Grand Court Law (2015 Revision), which provides that the Cayman Court has the same power as is held by the Courts of England and Wales under s.37(1) of the Senior Courts Act 1981:

> "*the like jurisdiction within the Islands which is vested in or capable of being exercised in England by — (a) Her Majesty's High Court of Justice; and (b) the Divisional Courts of that Court, as constituted by the Senior Courts Act, 1981[U.K. Act], and any Act of the Parliament of the United Kingdom amending or replacing that Act.*"

45.   The Cayman Court therefore has jurisdiction to order a party to provide disclosure of information where it is just and convenient to do so. It is common (indeed, usual) for disclosure orders to be made to accompany freezing and proprietary injunctions, to enable the applicant to police compliance with the injunction.

**E.     No Cross Undertaking as to Damages**

46.   The Debtor has not offered to provide a cross undertaking as to damages in the Injunction Application.  This is because in this case, the JOLs are not only acting in the Debtor's best interests but also in a position analogous to the public interest.  This is because of the charitable or non-profit status of at least the underlying Charities, which are the intended recipients

of donations made from the Debtor.  No cross-undertaking in damages should be required in such circumstances.

47.     In the alternative, the Debtor's position is that any cross-undertaking should be limited to the assets available in the liquidation.

**F.      The JOLs**

48.     The JOLs are fiduciaries and officers of the Cayman Court. As joint official liquidators of HoldCo, their duties are to: (a) collect, realize and distribute the assets of HoldCo to its creditors and, if there is a surplus, to equity holders; and (b) report to HoldCo's creditors and other stakeholders upon the affairs of HoldCo and the manner in which it is being wound up.[12]

49.     Schedule 3, Part I to the Companies Act sets out the powers that the liquidators may exercise with the sanction of the Cayman Court. They are:

a.     Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

b.     Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

c.     Power to dispose of any property of the company to a person who is or was related to the company.

d.     Power to pay any class of creditors in full.

e.     Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

---

[12] Companies Act § 110.

f.      Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

g.      Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

h.      The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

i.      The power to raise or borrow money and grant securities therefor over the property of the company.

j.      The power to engage staff (whether or not as employees of the company) to assist them in the performance of his functions.

k.      The power to engage attorneys and other professionally qualified persons to assist them in the performance of their functions.

50.    Pursuant to Section 5 of the Supervision Order, the Cayman Court expressly granted sanction to the JOLs to exercise the following powers in Schedule 3, Part I of the Companies Act:

a.      the power to commence legal proceedings in the name and on behalf of HoldCo to obtain the provision of information and/or documents and/or the examination of individuals in the Cayman Islands or the United States; and

b.      the power to apply in the Cayman Islands or the United States for the preservation, freezing or attachment of assets to which HoldCo is or may arguably be entitled.

51.    Schedule 3, Part II of the Companies Act further provides that the JOLs are permitted to exercise the following powers without the Cayman Court's sanction:

a.      The power to take possession of, collect and enter the property of HoldCo and for that purpose to take all such proceedings as they consider necessary.

b.    The power to do all acts and execute, in the name and on behalf of HoldCo, all deeds, receipts and other documents and for that purpose to use, when necessary, HoldCo's seal.

c.    The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and ratably with the other separate creditors.

d.    The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of HoldCo, with the same effect with the respect of HoldCo's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of HoldCo in the course of its business.

e.    The power to promote a scheme of arrangement pursuant to section 86.

f.    The power to convene meetings of creditors and contributories.

g.    The power to do all other things incidental to the exercise of their powers.

52.    Pursuant to Section 6 of the Supervision Order, the Cayman Court authorized the JOLs to exercise the following powers in and to take the following steps without further sanction by the Court:

a.    the power to present a petition for the winding up of the Fund if so advised;

b.    the power to file a summons and to apply for an order appointing provisional liquidators of the Fund if so advised; and

c.    the power to seek registration or recognition of themselves and/or the Cayman Liquidation Proceedings in any State in the United States for any purpose connected with the exercise of the powers specified in paragraphs 5(a) or 5(b) of the Supervision Order.

53.    Accordingly, the JOLs have been expressly authorized by the Cayman Court to seek recognition of their appointment in the United States by means of the Verified Petition without further sanction from the Cayman Court.

54.     The JOLs are also empowered and required to investigate: (i) the causes for the failure of HoldCo's business; and (ii) generally, the promotion, business dealings and affairs of HoldCo.[13]

**G.     The Cayman Liquidation Proceedings as a "Foreign Proceeding"**

55.     I am advised by U.S. counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation

11 U.S.C. § 101(23).

56.     Although the application of Bankruptcy Code § 101(23) is ultimately a question of applicable United States law on which I am not qualified to opine, based on my reading of the language of the section, I believe that the Cayman Liquidation Proceedings would fall within that definition.

57.     The Cayman Liquidation Proceedings are collective judicial proceedings, in the Cayman Islands.  The JOLs' initial determination is that Holdco is solvent but both solvent and insolvent liquidations are considered to be collective proceedings in the Cayman Islands.[14]

58.     The Cayman Liquidation Proceedings are governed by Part V of the Companies Act which is the Cayman Islands statute applicable to corporate insolvencies and liquidations, in

---

[13] Companies Act § 102.

[14] In the matter of Euro Bank Corporation AG v Euro Bank and Crystal Limited [2001] CILR 517 at para. 81(a) per Smellie CJ:  "*the general and well-established principle [is] that once a company goes into liquidation all its property becomes impressed with a statutory trust, creating a fund against which its creditors and contributories (if a solvent liquidation) must claim. The rights of the claimants thus take the form of a collective enforcement and there are no identifiable rights* in personam …. *to be asserted: see* Ayerst (Inspector of Taxes) *v.* C. & K. (Constr.) Ltd. *(2). The rights of creditors become the rights to claim for dividends in the liquidation fund, in keeping with the scheme created by the statute*"

which the Debtor's assets and affairs are subject to the supervision of the Cayman Court, for the purpose of liquidation, pursuant to the Supervision Order made by the Cayman Court.  I am therefore of the belief that Part V of the Companies Act is a law relating to insolvency.

59.     The liquidation of the Debtor is being continued under the supervision of the Cayman Court.  Its assets and affairs are therefore subject to the control of the Cayman Court for the purpose of liquidation.[15]

### H.     The JOLs as "Foreign Representatives"

60.     I am also advised by U.S. Counsel that "foreign representative" is defined in the Bankruptcy Code to mean:

> [A] person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

Bankruptcy Code § 101(24).

61.     Again, the application of Bankruptcy Code §101(24) is ultimately a question of applicable United States law on which I am not qualified to opine, but in my view the JOLs constitute "foreign representatives" based on a plain reading of the language of the section. They have been appointed by the Cayman Court to administer the liquidation of the Debtor's assets and affairs, and they have been authorized by the order appointing them to (among other matters) seek recognition under Chapter 15 of the Bankruptcy Code.

---

[15] In the matter of UCF Fund Limited [2011] 1 CILR 305 at para 4 per Jones J "*Section 110(2) of the Companies Law provides that an official liquidator may exercise the powers contained in Part I of the Third Schedule only with the sanction of the court, whereas the general powers contained in Part II may be exercised with or without sanction. The purpose of this provision is to subject official liquidators to the general supervisory jurisdiction of the court. In respect of the Part I powers, the onus is on the official liquidator to make a sanction application in every case, whether or not the exercise of the power is controversial. In respect of the Part II powers, the onus is on the creditors or contributories to make a sanction application if they disapprove of the way in which the official liquidator has exercised or intends to exercise the powers.*"

## **Factors relevant to the Determination of COMI**

62.     I am advised by U.S. Counsel that certain other provisions of Cayman Islands law may be relevant to the determination of the center of main interests ("COMI") of the Debtor under section 1517 of the Bankruptcy Code. I set out below an overview of Cayman Islands law and practice which may be relevant to the determination of this question. Again, I note that my statement of facts below is based on the MacInnis Declaration.

63.     The Debtor was incorporated as an exempted company limited by shares in accordance with the laws of the Cayman Islands. The Debtor's registered address is at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands, and was previously Campbells Corporate Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman, KY1-9010, Cayman Islands.

64.     As noted above, the restriction on the carrying on of an exempted company's business inside the Cayman Islands, only in support of its business outside the Cayman Islands, does not have any practical effect in the context of the liquidation of that company by official liquidators appointed by the Cayman Court. Official liquidators are empowered and required to take control of all of the company's affairs in order to realize its assets and repay its creditors (and, if there is a surplus of assets, distribute them to its shareholders). As set out above, they are granted all powers necessary for them to do so (in some cases, subject to sanction of the Cayman Court). There are no restrictions on them exercising those powers in the Cayman Islands, and their exercise of those powers is at all times subject to the supervision of the Cayman Court. In all cases, at least one official liquidator of any Cayman Islands company must be resident in the Cayman Islands.[16]

---

[16] IPR Regulations 5(1)(b) and 8(1).

65.     The Debtor has had a presence in the Cayman Islands from its incorporation, for example the location of its registered office, as noted above. Following the commencement of the Cayman Liquidation Proceedings, the liquidation of the Debtor has been conducted from the Cayman Islands, and all of the affairs of the Debtor have been managed from the Cayman Islands by the JOLs, who are both residents of the Cayman Islands.

66.     The JOLs are further required to report to the Cayman Court and the Debtor's stakeholders as to the conduct of the liquidation.  On July 2, 2025, the JOLs issued HoldCo's First Report to Contributories.

67.     As noted above, the JOLs' conduct of the liquidation is subject to the supervision of the Cayman Court. The JOLs were granted sanction to file the Verified Petition by the Cayman Court under the terms of the Supervision Order but would require the express sanction of the Cayman Court to take any further steps to exercise any of the powers set out in paragraph 49 above. Other matters have been reported to the Cayman Court in the JOLs' first report (and will be reported in subsequent reports), in affidavits and in letters to the Cayman Court. The JOLs' remuneration is also subject to the Cayman Court's approval.

68.     As a consequence of the appointment of the JOLs as joint official liquidators, the management of the Debtor's business has therefore been conducted from the Cayman Islands in respect of the matters referred to above.

[*Remainder of page intentionally left blank.*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 21, 2025

/s/ Caroline Moran
Caroline Moran