**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| CHARITABLE DAF HOLDCO, LTD. (In Official Liquidation),[1] | Case No. 25-11376 (BLS) |
| Debtor in a foreign proceeding. | **Hearing Date: September 10, 2025, at 11:00 a.m. (ET)**<br>**Obj. Deadline: September 3, 2025, at 4:00 p.m. (ET)** |

**MOTION OF PETITIONERS FOR ENTRY OF ORDER GRANTING PROVISIONAL RELIEF COMPELLING TURNOVER OF THE DEBTOR'S BOOKS AND RECORDS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 542, 1519 AND 1521**

Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited (the "Petitioners"),[2] the duly appointed joint official liquidators (the "JOLs") of Charitable DAF HoldCo, Ltd (In Official Liquidation) ("HoldCo" or the "Debtor"), a Cayman Islands exempted company in official liquidation in the Cayman Islands (the "Cayman Proceeding"),[3] before the Grand Court of the Cayman Islands (the "Cayman Court"), by its undersigned United States counsel, Reed Smith LLP, and having commenced the above-captioned chapter 15 case in respect of the Debtor (the "Chapter 15 Case") by filing the respective chapter 15 petition [D.I. 1] (the "Petition Form") and a *Verified Petition for (i) Recognition of the Foreign Main Proceeding, (ii) Recognition of the Foreign Representatives, and (iii) Certain Related Relief* [D.I. 2] (the "Verified Petition" and together with the Petition Form, the "Petitions") seeking foreign main recognition of the Cayman Proceeding, hereby move (this "Motion"), pursuant to sections 105(a),

---

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Verified Petition. Additionally, the facts set forth in the Verified Petition are incorporated in this Motion by reference in their entirety.

[3] Entitled *In the matter of section 131 of the Companies Act (2025 Revision) and in the matter of Charitable DAF HoldCo Ltd*. FSD 116 of 2025 (JAJ).

542(e), 1519, and 1521 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), granting the JOLs immediate provisional relief as described in detail below.

In support of this Motion, Petitioners rely upon the (a) Verified Petition; (b) *Declaration of Margot MacInnis in Support of Chapter 15 Petition for (1) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 4]; (c) *Declaration of Caroline Moran as Cayman Islands Counsel to the Debtor in Support of the Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code to the Honorable United States Bankruptcy Judge* [D.I. 5]; and (d) *Declaration of Margot MacInnis in Support of Motion of Petitioners for Provisional Relief Compelling Turnover of the Debtor's Books and Records Pursuant to Bankruptcy Code Sections 105(a), 542, 1519, and 1521* (the "Supplemental MacInnis Decl.") filed contemporaneously herewith, all of which, together with the exhibits attached thereto, are incorporated herein by reference.  In further support of the Motion, Petitioners respectfully state as follows:

**PRELIMINARY STATEMENT**

1.     Since filing the Petitions commencing this Chapter 15 Case on July 21, 2025 (the "Petition Date"), the JOLs have progressed in discharging their duties under the Companies Act both in relation to HoldCo's assets and in investigating HoldCo's assets and affairs.

2.     Importantly, on July 31, 2025, the Cayman Court entered a *Consent Order* (the "Cayman Consent Order"), in which it ordered by consent, among other things, that the Named Defendants in the Cayman Litigation and the CDM Entities shall abide by certain undertakings

intended to prevent asset dissipation and provide transparency and disclosure to the JOLs pending the Cayman Court's determination of the Injunction Summons.

3.     On August 5, 2025, the JOLs filed the *Certification of Counsel Regarding Agreed Order Granting Provisional Relief Pursuant to Sections 105(A) and 1519 of the Bankruptcy Code* [D.I. 18] (the "Certification of Counsel"), seeking approval of a stipulation (the "Stipulation") among the JOLs, the Applicable Named Defendants and the CDM Entities that, among other things: (a) recognizes and enforces the Cayman Consent Order[4] and (b) adjourns the hearing to recognize the Cayman Proceeding under chapter 15 of the Bankruptcy Code (the "Recognition Hearing") from its originally scheduled date of August 14, 2025 (the "Original Recognition Hearing Date"), *sine die*, pending the scheduling of the hearing on the Injunction Summons by the Cayman Court.  On August 6, 2025, this Court entered an order (the "U.S. Court Order") approving the Stipulation [D.I. 19].  The entry of the Cayman Consent Order and the U.S. Court Order recognizing and enforcing it significantly furthers the JOLs' goal of preventing the dissipation of assets subject to HoldCo's potential proprietary and other claims pending the resolution of the Cayman Litigation.

4.     In addition, the JOLs have continued to progress their investigation regarding HoldCo's assets and affairs, sending numerous information requests and receiving constructive responses in return from the vast majority of information custodians.  The JOLs also have begun to analyze the first batch of information transmitted by the Named Defendants in accordance with the Cayman Consent Order.  Unfortunately, however, certain of HoldCo's historic service providers—namely Carrington Coleman LLP ("Carrington Coleman"), who provided advice in

---

[4]  The terms "Applicable Named Defendants", "CDM Entities", and "Injunction Summons" are defined in the Certification of Counsel or Stipulation, as applicable.

respect to HoldCo's affairs, Valuescope, LLC ("Valuescope"), one of HoldCo's valuation consultants, and Hunton Andrews Kurth LLP ("Hunton"), one of HoldCo's historic tax counsel—have declined to turnover HoldCo's books and records, despite repeated requests to do so made by the JOLs and their counsel.  These service providers do not deny that they hold records that belong to HoldCo.  Rather, they take the position that they are under no obligation to respect the JOLs' authority in the United States absent compulsion to do so by a U.S. court.  Their position is transparently (and nonsensically) obstructionist.  Additionally, Douglas Mancino of Seyfarth Shaw LLP ("Mancino," and collectively with Carrington Coleman, Valuescope, and Hunton, the "Turnover Targets"), one of HoldCo's tax consultants, previously indicated a willingness to cooperate with the JOLs' turnover requests but has yet to comply.

5.      Having reached the agreements embodied in the Cayman Consent Order with the Named Defendants with respect to asset dissipation, the JOLs see no reason to permit uncooperative (or unresponsive) service providers to delay their ability to discharge their duty to investigate HoldCo's assets and affairs pending scheduling of the Adjourned Recognition Hearing. Every day that passes without recovering HoldCo's books and records extends the timeline of the Cayman Proceeding and causes HoldCo's estate to bear additional, unnecessary expenses.

6.      Accordingly, by this Motion, the Petitioners are seeking limited—but necessary—provisional relief to obtain turnover of HoldCo's books and records from Carrington Coleman, Valuescope, Hunton and Mancino.  This relief is essential to uncovering the facts and circumstances surrounding transactions that ultimately divested HoldCo—and, ultimately, the charitable organizations for whose benefit HoldCo was formed—of its primary and most valuable asset.

**JURISDICTION AND VENUE**

7.      The Petitioners have properly commenced this Chapter 15 Case under sections 1504 and 1509 of the Bankruptcy Code by the filing of a petition for recognition of the Cayman Proceeding under section 1515 of the Bankruptcy Code.

8.      The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

9.      For the reasons set forth in the Petitions, venue is proper in this district pursuant to 28 U.S.C. § 1410(3).

10.      Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Petitioners consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11.      The statutory bases for the relief requested herein are sections 105(a), 542, 1519, and 1521 of the Bankruptcy Code.

**BACKGROUND**

12.      On May 6, 2025, the Cayman Court entered the Supervision Order, which appointed the Petitioners as the JOLs of HoldCo.

13.      Consistent with the purpose of official liquidation under Part V of the Companies Act, the Petitioners are empowered to investigate: (a) the causes for the failure of HoldCo, as necessary; and (b) generally, the promotion, business, dealings and financial affairs of HoldCo. *See* Companies Act, section 110(2); *see also* Supplemental MacInnis Decl., at ¶12.

14.     To identify, secure, and recover HoldCo's books and records, the JOLs have: (a) issued formal correspondence to over 50 parties, including directors, shareholders, banks, service providers, various third parties, and the prior appointed joint voluntary liquidators, notifying them of the JOLs' appointment and requesting books and records, and (b) held discussions with various parties to discuss the history and financial affairs of HoldCo. *See* Supplemental MacInnis Decl., at ¶13.

15.     Furthermore, since the date of their appointment, the JOLs have been conducting an extensive and detailed ongoing investigation into HoldCo's affairs.  This investigation has involved a review of HoldCo's books and records (to the extent that they have been able to obtain them and to the extent that they are complete) and numerous inquiries and requests for information directed to persons previously involved with HoldCo.  *See* Supplemental MacInnis Decl., at ¶14.

16.     While the vast majority of parties that the JOLs have contacted have cooperated with the JOLs, certain US-based service providers have asserted that they do not recognize the JOLs' authority under the Supervision Order and have refused to provide copies of the requested information absent an order from this Court.  *See* Supplemental MacInnis Decl., at ¶15.  In particular, Carrington Coleman, who provided advice in respect to HoldCo's affairs, Valuescope, HoldCo's historic financial advisor and valuation services provider, and Hunton, who provided HoldCo tax law advice, have declined to voluntarily turn over to the JOLs HoldCo's books and records in their possession despite numerous requests by HoldCo and its counsel requesting the same.  *See* Supplemental MacInnis Decl., at ¶15 and exhibits 1-14, 21-23.

17.     Furthermore, HoldCo's tax advisor, Mancino, had initially cooperated with the JOLs and was seemingly prepared for document production, but has since failed to turn over the

requested books and records.  *See* Supplemental MacInnis Decl., at ¶¶15, 25-27 and exhibits 15-19.[5]

18.    As a service provider who provided advice in respect of HoldCo's affairs, the JOLs believe, based on correspondence received from Carrington Coleman, that Carrington Coleman maintains at least certain books and records belonging to HoldCo that are relevant to the JOLs, in their investigation of the facts and circumstances surrounding the Relevant Transactions, pursuant to which all of HoldCo's assets were transferred to DFW.  *See* Supplemental MacInnis Decl., at ¶28.  Likewise, the JOLs believe that HoldCo's books and records held by Valuescope go directly to valuation issues that are critical to these transactions and the JOLs' investigation of the same.  *See id.*  Finally, the JOLs believe that HoldCo's books and records held by Hunton and Mancino relate to tax issues that could be central to the investigation of the Relevant Transactions.  *See id.*

19.    In particular, Carrington Coleman, Valuescope, Hunton and Mancino may have possession, custody or control of books and records belonging to, or otherwise arising in connection with their engagement by, HoldCo, including files regarding the facts, circumstances and alleged justifications for: (1) the Directors to execute the Relevant Transactions, which ultimately divested HoldCo of its interest in the Fund; and (2) the Remuneration Transactions, which dramatically increased the Directors' compensation.  *See* Supplemental MacInnis Decl., at ¶29.

20.    Accordingly, it is imperative that the JOLs be afforded the provisional assistance of this Court to direct the turnover of such documents at once.

---

[5] The Supplemental MacInnis Decl. contains a detailed summary of the correspondence between the JOLs and their counsel, on the one hand, with each of Carrington Coleman, Valuescope, Hunton and Mancino, on the other hand, and attaches copies of all relevant correspondence.

**RELIEF REQUESTED**

21.     The Petitioners seek entry of an order, substantially in the form of the Proposed Order, granting immediate provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of title 11 of the Bankruptcy Code to require Carrington Coleman, Valuescope, Hunton and Mancino within seven (7) days of entry of the Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by, HoldCo (the "Provisional Relief").

22.     Specifically, the turnover of HoldCo's books and records sought by the Petitioners will assist them in investigating the facts, circumstances and alleged justifications for: (1) the Directors to execute the Relevant Transactions, which ultimately divested HoldCo of its interest in the Fund; and (2) the Remuneration Transactions, which dramatically increased the Directors' compensation.

**BASIS FOR RELIEF**

23.     The requested Provisional Relief falls squarely within the ambit of the relief available under section 1519 of the Bankruptcy Code, pursuant to which the Court can grant provisional relief to the Petitioners pending a ruling on recognition of the Verified Petition.  Absent the requested Provisional Relief, there is a significant risk that HoldCo will incur unnecessary costs due to delay, which may substantially impair the JOLs' prospects of recovery on behalf of stakeholders in the Cayman Proceeding.

**I.     Turnover Pursuant to Bankruptcy Code Sections 105(a), 542(e), 1519(a)(3), 1521(a)(4), and 1521(a)(7) Should Be Allowed**

24.      It is crucial that the Turnover Targets be compelled to turn over all books and records held on behalf of the Debtor pursuant to sections 105(a), 1519(a)(3), 542(e), 1521(a)(4), and 1521(a)(7) of the Bankruptcy Code.  Section 542(e) of the Bankruptcy Code provides that a

court may order the turnover of any books, documents, records, and papers that relate to a debtor's property or financial affairs.  11 U.S.C. § 542(e).  Foreign representatives in chapter 15 cases seeking court-ordered discovery at times seek relief pursuant to section 542(e), which is either directly applicable to chapter 15 cases or, in the alternative, delineate relief which can be granted by the court pursuant to section 1521(a)(4).  *See In re Platinum Partners Value Arbitrage Fund L.P.,* 583 B.R. 803, 810 (Bankr. S.D.N.Y. 2018); *see also In re AJW Offshore Ltd.*, 488 B.R. 551, 564 (Bankr. E.D.N.Y. 2013) (finding that a foreign representative may seek disclosure pursuant to section 542(e)); *In re ABC Learning Ctrs. Ltd*., 445 B.R. 318, 341 (Bankr. D. Del. 2010) (allowing the right to seek turnover under section 542).

25.      Section 1521(a)(4) authorizes discovery into "the debtor's assets, affairs, rights, obligations or liabilities" without any limitation based on how the foreign representative intends to use the fruits of the requested discovery.  *See* 11 U.S.C. § 1521(a)(4).  Additionally, Section 1519(a)(3) incorporates this provision into provisional relief that the Court may provide. *See* 11 U.S.C. § 1519(a)(3).  Cases applying these sections hold that relief under section 1521(a)(4) is available to petitioners investigating potential causes of action irrespective of how any future litigation proceeds might be used.  *See, e.g., Estate of Fontana v. ACFB Administração Judicial Ltda (In re Transbrasil S.A. Linhas Aéreas)*, 860 F. App'x. 163, 165 (11th Cir. 2021) (affirming bankruptcy court's decision to authorize discovery alleged to be relevant "to support the Trustee's claims against the Affected Parties in the Brazilian Bankruptcy Case" and "to investigate potential claims"), *cert. denied sub nom. Est. of Fontana v. ACFB Administração Judicial LTDA-ME*, 142 S. Ct. 1229 (2022); *In re Platinum Partners Value Arbitrage Fund L.P*., 583 B.R. at 822 (granting foreign representative's motion seeking "pre-litigation discovery"); *In re Glitnir banki hf*, No. 08-14757 (SMB), 2011 Bankr. LEXIS 3296, at *12 (Bankr. S.D.N.Y. Aug. 19, 2011)

(granting discovery to "enable the Foreign Representative to . . . assess the viability of additional claims"); *In re Comair Ltd. (In Bus. Rescue)*, No. 21-10298(JLG), 2021 Bankr. LEXIS 3137, at *39 (Bankr. S.D.N.Y. Nov. 14, 2021), *appeal dismissed sub nom. Boeing Co. v. Ferguson (In re Comair Ltd. (In Bus. Rescue)*) 2023 U.S. Dist. LEXIS 6146 (S.D.N.Y. Jan. 12, 2023) (granting foreign representative's motion seeking discovery "relating to causes of action that Comair may hold against Boeing and the extent of Comair's potential monetary recovery from Boeing").

26.     Additionally, courts have found that a foreign representative may be authorized to take discovery in accordance with section 542(e) pursuant to section 1521(a)(7), which is made applicable to requests for provisional relief by section 1519(a)(3). *See, e.g.*, *In re Irish Bank Resolution Corp. Ltd. (in Special Liquidation)*, 559 B.R. 627, 644 (Bankr. D. Del. 2016) ("By referring to § 363, a section which authorizes the trustee to use, sell, or lease . . . property of the estate, the drafters of § 542(a) made it clear that the turnover obligation applies to property of the estate [under § 541] (the equivalent term of art used in chapter 15 is property of the debtor within the territorial jurisdiction of the United States).") (internal quotation marks omitted); *In re ABC Learning Centers Ltd.*, 445 B.R. 318, 341 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) (recognizing foreign main proceeding, and without further discussion, ordering right to use of sections 542 and 543 turnover provisions); *CohnReznick LLP v. Foreign Representatives of Platinum Partners Value Arbitrage Fund L.P. (In re Platinum Partners Value Arbitrage Fund L.P.)*, No. 18-cv-5176 (DLC), 2018 U.S. Dist. LEXIS 109684, at *12 (S.D.N.Y. June 29, 2018); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. at 810. Section 1521(a)(7) broadly affords a foreign representative "any additional relief that may be available to a trustee . . ." 11 U.S.C. § 1521(a)(7). Similar to section 1521(a)(4), section 1519(a)(3) incorporates this provision into provisional relief that the Court may provide.

27.     Congress has recognized the need for foreign debtors to conduct discovery with respect to their assets, liabilities and affairs, including the investigation of potential causes of actions.  *See, e.g., In re Comair Ltd.*, 2021 Bankr. LEXIS 3137, at *16; *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012); *In re Hughes*, 281 B.R. 224, 229 (Bankr. S.D.N.Y. 2002).

28.     Specifically, the Petitioners seek relief that, if granted, will assist them in fully investigating potential causes of action against third parties.  Those causes of action may be significant "contingent property interests" of the Debtor.  *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. at 346 (citing *In re Kane*, 628 F.3d 631, 641 n.7 (3d Cir. 2000) (noting that property of the estate "encompass[es] contingent property interests such as causes of action")).  The Petitioners seek discovery that "qualif[ies] as the taking of evidence 'concerning the debtors' assets' under § 1521(a)(4)." *Id*. Thus, "[b]road discovery under section 1521" would "promot[e] a significant chapter 15 objective" by permitting the Petitioners to "comply with their duties." *In re Markus*, 607 B.R. 379, 390 (Bankr. S.D.N.Y. 2019), *aff'd in part, vacated in part on other grounds, and remanded sub nom. Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020) (quoting *In re Platinum Partners Value Arbitrage Fund L.P*., 583 B.R. at 821).

29.     Here, the Petitioners understand from their investigation conducted to date and the Turnover Targets' own admissions that each such target maintains books and records belonging to, or otherwise arising in connection with their engagement by, the Debtor.  Re-establishing control over the Debtor's books and records, including books and records currently in the possession of the Turnover Targets, is critical to assisting the Petitioners in their investigation of the Debtor's affairs, including the facts and circumstances surrounding the Relevant Transactions and Remuneration Transactions.  Specifically, the Petitioners request that the Court mandate that

Carrington Coleman, Valuescope, Hunton and Mancino turn over all books and records in their possession, custody or control, belonging to, or otherwise arising in connection with their engagement by, the Debtor within seven (7) days of entry of the Proposed Order.  Importantly, as previously noted, three of the Turnover Targets, Carrington Coleman, Valuescope, and Hunton, have indicated that they will not cooperate with the JOLs absent an order from this Court.  There is no reason to delay compelling the Turnover Targets' "cooperation" until on or after the Adjourned Recognition Hearing Date.[6]

30.    Affording the JOLs the ability to compel the Turnover Targets to return files belonging to the Debtor expeditiously is imperative to enable the JOLs: (a) to progress their investigation of the Debtor's assets and affairs, and, in particular, their examination into the Relevant Transactions and the Remuneration Transactions, in a timely manner for the benefit of all stakeholders, (b) to avoid incurring burdensome costs by needlessly extending the duration of the JOLs' investigations, and (c) to align incentives with respect to all potential discovery targets to promote cooperation with the JOLs in their efforts to discharge their statutory duties in lieu of encouraging such parties to obstruct and delay.  *See* Supplemental MacInnis Decl., at ¶33.

## II.    Provisional Relief is Needed to Protect the Debtor, the Debtor's Assets, and Liquidation Efforts in the Cayman Proceeding

31.    The Provisional Relief is needed here to protect the Debtor, its assets and the interests of all stakeholders.  *See* 11 U.S.C. § 1519(a). Although a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time," there is necessarily a gap

---

[6] Entry of the Provisional Relief would result in the JOLs obtaining return of HoldCo's books and records from the Turnover Targets on timing that is broadly consistent with the JOLs' expectations based on the scheduling of the Original Recognition Hearing Date.  Moreover, entry of the Provisional Relief is particularly necessary because, based on scheduling constraints in the Cayman Proceeding, the JOLs now expect that the Injunction Summons will be heard some time in November or December, which is many weeks later than the JOLs originally anticipated, thereby significantly lengthening the "gap" period between the Petition Date in this Chapter 15 Case and the date when the Recognition Hearing will be scheduled.  *See* Supplemental MacInnis Decl., at ¶34.

between the time the petition for recognition is filed and the time the court makes a decision on whether a proceeding should be recognized.  11 U.S.C. § 1517(c). Prior to recognition, a chapter 15 debtor is not automatically entitled to discovery, or any other provisions of the Bankruptcy Code, which, in this case, necessitates an order granting provisional relief.  Provisional relief should be granted "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).  Similar to section 1521(a)(4) of the Bankruptcy Code, relief that seeks "discovery concerning . . . potential claims . . . falls squarely within the scope" of section 1519(a) because it is useful to protect the assets of the debtor or the interests of the creditors.  *See In re Comair Ltd.*, 2021 Bankr. LEXIS 3137, at \*39 (granting the foreign representative's request to proceed with discovery under section 1521(a)(4) of the Code after having considered the interests protected by the statute and having acknowledged that discovery is required to the foreign representative to complete its investigation and satisfy its duties under foreign laws).  Absent the Provisional Relief, there is a significant risk that HoldCo will incur unnecessary costs due to delay, which may substantially impair the JOLs' prospects of recovery on behalf of stakeholders in the Cayman Proceeding.

## III.   **Standard for Relief Under Section 1519**

32.   Section 1519 of the Bankruptcy Code provides for granting provisional relief to Petitioners pending a ruling on recognition of a petition.  Section 1519 provides, in pertinent part:

> (a) From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including—
>
> (1)   staying execution against the debtor's assets;
>
> (2)   entrusting the administration or realization of all or part of the debtor's assets located in the United States

> to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and
>
> (3)    any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519.

33.    Section 1521(a)(4) provides for "the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities." 11 U.S.C. § 1521(a)(4).  Section 1521(a)(7) broadly affords a foreign representative "any additional relief that may be available to a trustee . . ." 11 U.S.C. § 1521(a)(7).

34.    The Court's authority to issue provisional relief under section 1519(a) is not limited to the remedies specified in subsections (a)(1) through (a)(3).  *See, e.g.*, *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010) ("[Sections 1519(a)(1)-(3) represent a] non-exhaustive list of relief available to a foreign proceeding's representative in a Chapter 15 case"); *In re Vitro*, 455 B.R. 571, 579 (Bankr. N.D. Tex. 2011) ("[T]he relief enumerated in section 1519 is not all-inclusive [and] [t]he plain language of section 1519 of the Bankruptcy Code does not contain a limitation on the Court's authority to issue a stay or injunction, and that is where the Court's analysis must end.").  The Court may also look to section 105(a) of the Bankruptcy Code as a separate basis for fashioning provisional relief as is necessary to protect a chapter 15 debtor and its creditors.  Section 105(a) of the Bankruptcy Code, which allows this Court to, among other things, "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]", can be invoked by foreign representatives in chapter 15 cases by section 103(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 103(a) (applying chapter 1 to proceedings under chapter 15).  The Court

therefore has discretion under both sections 1519(a) and 105(a) to grant the requested Provisional Relief.

35.     Section 1519(e) provides that the "standards, procedures, and limitations applicable to an injunction shall apply to relief under" section 1519.  11 U.S.C. § 1519(e); *see also In re Innua Canada Ltd.*, No. 09-16362 (DHS), 2009 Bankr. LEXIS 994, at *1 (Bankr. D.N.J. Mar. 25, 2009).

36.     In the Third Circuit, the general standards for a provisional injunctive relief require a showing of:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted. . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017).

In other words:

> "[A] movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not[]) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief []. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."

*Id*. at 179.

37.     The Petitioners contend that the four factors for issuing the requested relief under section 1519 of the Bankruptcy Code are easily met.

## IV.    The Petitioners Satisfy the Elements for Provisional Relief

### A.    *There Is a Substantial Likelihood of Recognition*

38.    In connection with a request for provisional relief in a chapter 15 case, the petitioner must show that he or she is likely to obtain recognition of the relevant foreign proceeding. *See, .e.g.*, *In re Qimonda*, No. 09-14766 (RGM), 2009 Bankr. LEXIS 2330, at *7-8 (Bankr. E.D. Va. July 16, 2009) ("The issue upon which [the petitioner] must prevail for an injunction to issue is whether an order of recognition will be entered . . ."); *In re Takata Corp.*, No. 17-11713 (BLS) (Bankr. D. Del. Aug. 11, 2017) [D.I. 25] (granting provisional relief under section 1519 where the foreign representative had demonstrated a "substantial likelihood" that the elements of recognition under section 1517 would be satisfied).

39.    There is no reason why this Court should not recognize the Cayman Proceeding on the Adjourned Recognition Hearing Date.  As set forth in the Verified Petition, the Cayman Proceeding is clearly a "foreign proceeding" under chapter 15, and the Debtor's center of main interests is in the Cayman Islands.  *See* Verified Petition, ¶¶ 132-144.  The Petitioners satisfy the requirements of a "foreign representative" under Bankruptcy Code section 101(24).  *Id.*  ¶¶ 148-149.  There can be no serious question that the Petitioners are entitled to and will succeed in obtaining relief under sections 1517 and 1520 of the Bankruptcy Code on the Adjourned Recognition Hearing Date and would have obtained such relief by the Original Recognition Hearing Date absent the Stipulation.  Accordingly, the Petitioners will successfully demonstrate that the Cayman Proceeding constitutes a "foreign main proceeding" entitled to chapter 15 recognition.[7]  *See In re STX Pan Ocean Co.*, No. 13-12046 (SCC), 2013 Bankr. LEXIS 5775, at

---

[7] On August 19, 2025, DFW issued a summons seeking the removal of the Petitioners as Joint Official Liquidators of HoldCo and made various allegations regarding the Petitioners' purported lack of independence and other matters related to their handling of the liquidation. The Petitioners are reviewing the summons and will respond in due

*3 (Bankr. S.D.N.Y. July 1, 2013) (granting provisional relief because the petitioner demonstrated a likelihood of success that the company is subject to a pending foreign main proceeding); *In re Gerova Fin. Grp., Ltd.,* No. 12-13641 (ALG) (Bankr. S.D.N.Y. Aug. 24, 2012), ECF No. 21 (same).

40.    Because there is a strong likelihood that the Court will recognize the Cayman Proceeding as the foreign main proceeding with respect to the Debtor, Petitioners have demonstrated a reasonable probability of success on the merits.

**B.    *Likelihood of Irreparable Injury if Provisional Relief is Not Granted***

41.    Petitioners need the Provisional Relief to avert irreparable harm.  Not being able to seek turnover of the Debtor's own books and records to uncover the facts and circumstances surrounding the Relevant Transactions—which divested the charitable organizations for whose benefit the Debtor was formed of their most valuable and primary asset—and the Remuneration Transactions until after the Adjourned Recognition Hearing Date will cause irreparable injury by delaying the Petitioners from progressing their investigation in accordance with their duties as officers of the Cayman Court.  Indeed, "[t]his delay burdens the Debtor's estate with unnecessary costs to the detriment of all of its stakeholders."  Supplemental MacInnis Decl., at ¶37.  The

course in the Cayman Proceeding.  From their initial review, the Petitioners believe that the summons is misconceived, misleading and inaccurate.  It will be for the Cayman Court to assess its merits.  The issuance of the summons has no present impact on the Supervision Order appointing the Petitioners as JOLs of HoldCo, which remains in full force and effect in the Cayman Proceeding.  Likewise, the summons has no present bearing on the Petitioners' status as the duly authorized JOLs of HoldCo (who have been empowered by the Cayman Court to act as the Foreign Representatives of the Cayman Proceeding in this Chapter 15 Case), for the purpose of assessing whether the JOLs satisfy the requirements of Bankruptcy Code section 101(24).  We note that in other chapter 15 cases, courts have required parties to respond to discovery requests made by foreign representatives even after the foreign bankruptcy court supervising the foreign proceeding had ordered such foreign representatives to be removed.  *See, e.g.*, *In re Sam Industrias S.A.*, Case No. 18-23941-RAM [D.I 244], Tr. 11:20 – 12:20 (Bankr. S.D.Fla. April 6, 2021) (notwithstanding that the foreign representative had been ordered to be removed from office by the judge overseeing the foreign proceeding, declining to modify discovery deadlines in the chapter 15 case for that reason, where the effectiveness of the removal order had been stayed pending appeal) (the "Sam Industrias Transcript").  A copy of the Sam Industrias Transcript is attached hereto as **Exhibit B**.

Petitioners respectfully submit that these facts satisfy the second prong of the injunctive relief standard.

###### C.    *The Hardships Balance in Favor of the Petitioners*

42.    Granting the Provisional Relief will not result in significant hardships to the Turnover Targets, while their consistent and unjustifiable delay in turning over the Debtor's own books and records will substantially hinder the Debtor's stakeholders by delaying the JOLs' investigation and burdening the estate with unnecessary costs.  Section 1522 of the Bankruptcy Code permits courts to grant relief under section 1519 if the "interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  The Bankruptcy Code does not define "sufficiently protected" and courts "have great leeway to determine what that is."  *In re Hanjin Shipping Co.*, No. 16-27041 (JKS), 2016 Bankr. LEXIS 3986, at *18 (Bankr. D.N.J. Sept. 20, 2016).  In general, courts will determine sufficient protection by balancing the respective parties' competing interests.  *See CT Inv. Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe, S.A., de C.V.)*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign representative and those affected by the relief.").  Section 1522's legislative history suggests this section was intended to ensure "the foreign proceeding [is not] *seriously and unjustifiably* injuring United States creditors." H.R. Rep. No. 109-31, at 11 (2005) (emphasis added).  If a foreign representative seeks to obtain discovery, factors in favor of granting relief are: (a) the non-availability of the information in the public domain; (b) the discovery is required for completing an investigation into the assets of the debtor, including causes of action; and (c) by obtaining discovery, the foreign representative can fulfill its duties under relevant foreign laws.  *See In re Comair Ltd.*, 2021 Bankr. LEXIS 3137, at *16.

43.     The relief requested herein will benefit the Debtor and its stakeholders by ensuring an equitable and orderly implementation of the Cayman Proceeding.  Significantly, discovery will benefit the Debtor and its stakeholders by protecting the Debtor's estate and the interests of its stakeholders.  The "Provisional Relief provides the JOLs the ability to expeditiously carry out their investigatory duties, reducing estate costs and preventing unnecessary delays."  Supplemental MacInnis Decl., at ¶38.

44.     Importantly, the Provisional Relief will not meaningfully harm any of the Turnover Targets, and any potential harm is far outweighed by the benefit to HoldCo's estate.  Carrington Coleman, Valuescope, Hunton and Mancino would not be seriously and unjustifiably harmed by the requested Provisional Relief, as those parties would eventually be subject to turnover requests in the context of this Chapter 15 Case regardless of this Motion.  Moreover, the Turnover Targets have been on notice for months that the JOLs are seeking return of HoldCo's books and records and their responses to the JOLs' correspondence suggest that they have already searched for, and identified, responsive documents.  Carrington Coleman, for example, has conceded that complying with the Petitioner's request for books and records would be neither voluminous nor burdensome, repeatedly stating that "it is unlikely [it] would have many, if any, documents to provide." *See* Supplemental MacInnis Decl., at ¶39.  On the other hand, delaying the JOLs' ability to progress their investigation with respect to the Turnover Targets until after the Adjourned Recognition Hearing Date needlessly increases the costs associated with the JOLs' administration of the Debtor's estate and unnecessarily burdens the Debtor and its stakeholders.

45.     Ultimately, proceeding with discovery now (as opposed to after the Court recognizes the foreign proceeding) will cause minimal, if any, burden to Carrington Coleman, Valuescope, Hunton and Mancino, while the benefit to the Debtor—the acceleration of its

- 19 -

investigation and greater efficiency in the administration of the Cayman Proceeding and progressing the collection of the Debtor's books and records—would be significant.

### D.      *Provisional Relief Will Serve the Public Interest*

46.      The public interest—specifically, the goals of comity and cooperation, which are embodied in chapter 15 of the Bankruptcy Code, and which serve as the underlying spirit of the UNCITRAL Model Law on Cross-Border Insolvency (1997) upon which chapter 15 was based— would be best served by granting the Petitioners the Provisional Relief sought herein.   The Supervision Order provides for the JOLs' ability to investigate HoldCo's affairs, which should be respected and enforced in the United States.   *See* Supplemental MacInnis Decl., at ¶40.

47.      Also, the requested Provisional Relief is consistent with the policy underlying bankruptcy law and is in the public interest because it will facilitate the Debtor's efforts to pursue and complete a successful liquidation for the benefit of the Debtor's stakeholders by providing for efficient discovery tools.   *See, e.g.*, *In re Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) ("there is also a strong public interest in the swift and efficient resolution of bankruptcy proceedings").

48.      Finally, the relief requested under section 1519 conforms with the public interest because it facilitates the Debtor's cross-border liquidation for the benefit of all of its creditors. *See, e.g.*, *In re Energy Coal S.P.A.*, 582 B.R. 619, 627 (Bankr. D. Del. 2018) ("Particularly in the bankruptcy context, American courts have long recognized the need to extend comity to foreign bankruptcy proceedings, because the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding") (cleaned up); *see also Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an

equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion."). In particular, the Provisional Relief aligns incentives with respect to all of the JOLs' potential discovery targets to promote cooperation with the JOLs in discharging their duties under the Companies Act rather than obstruction.

**E.** ***The Request for Provisional Relief Should Be Granted***

49.     As set forth above, the Petitioners have satisfied the standards for provisional relief under section 1519 of the Bankruptcy Code. Granting the Provisional Relief for a short time pending the hearing on recognition will allow for expeditious discovery and, by doing so, avoid burdensome expenses caused by an unnecessary delay. None of the Turnover Targets will suffer meaningful prejudice as a result of the Provisional Relief. Accordingly, the Motion should be granted.

**<u>RESERVATION OF RIGHTS</u>**

50.     For the avoidance of doubt, in seeking the Provisional Relief requested herein, the Petitioners expressly reserve all rights to request additional discovery or examination of the Turnover Targets and other parties in this Chapter 15 Case, as necessary or appropriate, whether on a provisional basis or otherwise.

**<u>NO PRIOR REQUEST</u>**

51.     No previous request for the relief sought herein has been made to this Court.

**<u>NOTICE</u>**

52.     Notice of this Motion will be provided to the following parties, through their counsel, if represented: (a) each of the Turnover Targets; (b) the Office of the United States Trustee for the District of Delaware; (c) all parties requesting notice under Rule 2002 of which the Petitioners are aware and (d) all parties as indicated on the Petitioners' service list. In light of the

relief requested, the Petitioners submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, the Petitioners respectfully request that this Court (i) grant this Motion in its entirety, (ii) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and (iii) grant such other and further relief as is appropriate.

Dated: August 27, 2025
        Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By:    */s/ Jason D. Angelo*
        Jason D. Angelo (No. 6009)
        1201 North Market Street, Suite 1500
        Wilmington, DE 19801
        Telephone: +1.302.778.7500
        Facsimile:  +1.302.778.7575
        E-mail:  jangelo@reedsmith.com

        -and-

        Casey Laffey, Esq. (admitted *pro hac vice*)
        Aaron Javian, Esq. (admitted *pro hac vice*)
        Ian M. Turetsky, Esq. (admitted *pro hac vice*)
        Richard C. Solow, Esq. (admitted *pro hac vice*)
        **REED SMITH LLP**
        599 Lexington Avenue
        New York, NY 100220
        Telephone: +1.212.521.5400
        Facsimile:  +1.212.521.5450
        E-mail:  claffey@reedsmith.com
                ajavian@reedsmith.com
                ituretsky@reedsmith.com
                rsolow@reedsmith.com

        *Counsel to Margot MacInnis and Sandipan*
        *Bhowmik, as Joint Official Liquidators of*
        *Chapter 15 Debtor*