**EXHIBIT B**

<u>Sam Industrias Transcript</u>

(Attached)

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:                                    CASE NO. 18-23941-RAM
                                          Chapter 15
SAM INDUSTRIAS S.A.,

         Debtor.
_____/

ECF# 195

April 6, 2021

         The above-entitled cause came on for hearing before the  Honorable ROBERT A. MARK, one of the Judges in the   UNITED  STATES  BANKRUPTCY  COURT, in  and  for  the SOUTHERN  DISTRICT  OF FLORIDA, remotely  via  Zoom  Video Conference, at 301 North Miami Avenue,  Miami,  Miami-Dade County,  Florida,  on  April 6, 2021,  commencing   at  or about 2:00 p.m., and  the  following proceedings were had:

         Transcribed from a Digital Audio Recording by:
         Margaret Franzen, Court Reporter

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

APPEARANCES VIA ZOOM VIDEO CONFERENCE:

SEQUOR LAW, by
GREGORY S. GROSSMAN, ESQUIRE
NYANA MILLER, ESQUIRE
On behalf of the Foreign Representative

FARROW LAW, P.A., by
JAY L. FARROW, ESQUIRE
On behalf of David Pobiak, Nanoshield Technologies LLC,
Paerosol Global Partners LLC and PureCycle LLC

ALSO PRESENT VIA ZOOM VIDEO CONFERENCE:

JACKIE ANTILLON,
ECRO - Electronic Court Reporting Operator

- - - - - - -

THE COURT: Okay. Good afternoon. We're ready to proceed.

Let's get appearances first from the foreign representative's counsel.

MS. MILLER: Good afternoon, Your Honor.

Nyana Miller and Greg Grossman for the foreign representative.

THE COURT: Okay, and Mr. Koodie.

MR. FARROW: Actually for whatever reason my associate's name is coming up on my computer, Your Honor. This is Jay Farrow on behalf of the Pobiak parties.

I can say that Ms. Koodie was supposed to be here, unfortunately she was taken for emergency medical care right now due to some sharp pains in her abdomen, so she is -- she is not going to be with us today.

THE COURT: Okay. I hope it's nothing serious.

All right. So anything to report that's not in the papers, Mr. Farrow?

MR. FARROW: Yes, Your Honor.

We just became aware that there was an order issued by apparently the Brazilian appellate court on or about March 12th that indicates that -- that the current trustee is still no longer the trustee.

There was an order that was entered on

February 12th, I believe, that for the second time the trustee was removed. I believe that there was some type of an appeal.

There was an initial request, I believe for stay in the Brazilian court, and then that was granted, but then there's a subsequent order, which I don't have translated. I just -- I just -- just a couple minutes before the hearing was made aware of it.

So it appears that -- that -- that the current trustee has been replaced by someone named Solomon, I believe. So, you know, the grounds for which we were seeking an extension of time seem to remain in that the trustee may no longer be the trustee.

THE COURT: Okay. So the -- what was filed with a notice of filing on March 10th was the March 4th order, which stayed the February order, that's when it was entered, removing the foreign representative, and you're saying there was a subsequent order of the appellate court or the trial court?

MR. FARROW: I -- I -- I want to say it's the appellate court, Your Honor.

Maybe the trust -- the trustee's counsel would have more information about that particular order.

MS. MILLER: I have no idea what other order was or could have been issued on March 12th.

I consulted with my instructing counsel as of yesterday. They informed me that the stay is still the last and effective order governing this issue.

THE COURT: Okay. So just to set the stage, the -- after a long hearing, and we entered a fairly lengthy order, the Court entered an order on February 3rd, Docket Entry 193, that set some deadlines. I think it was February 16th for additional documents, February 25th for a privilege log, and an agreement I think by the 16th of February to set a deposition sometime before the -- before March 29th.

So then this motion was filed on the 15th of February based on the order removing the foreign rep, and then March 10th the foreign rep filed the order staying -- the order of the appellate court staying it.

So I guess my concern, Mr. Farrow, is why wasn't there some effort to work out new deadlines and new dates or a new date for deposition basically a month ago, almost a month ago, when your side was aware that the foreign rep was still in place?

MR. FARROW: Well, Your Honor, when Your Honor entered the -- the -- the January order, what had happened to that point was the trustee had been removed once and there was an appeal filed.

From my understanding, the -- the appellate

court issued a final decision sometime in January on that appeal in effect allowing the trustee to remain on the case.

In this -- subsequently, in February, the trustee is removed for a second time.  He makes a move to appeal the case, and whether or not he may or may not be in, we're not sure as we (inaudible).

The answer to your question in part is that the appellate court had not issued a final decision on keeping him in the case.

THE COURT:  Okay.  Ms. Miller or Mr. Grossman.

MS. MILLER:  Yes, Your Honor.

The appellate court has issued a final decision on keeping him in the case, and I'm sure Your Honor reviewed the notice of filing that we made, I believe it was at Docket Entry 200, with the second order where the appellate court refers back to the first order and says, I'm staying the second removal order, you know, see prior decision, which was a final decision of a three-judge panel of the appellate court deciding that this trustee needs to stay in the case, and ruling on the legal issue, which is whether the judge can make a removal of a trustee without providing any reasons therefore, which is exactly what this second judge purports to do.

So the second judge has repeated the actions of the first judge, which is simply to remove the trustee without providing any justification for that action, and the appellate court has now spoken for the second time in staying the second decision and saying this follows the same rule that we have already decided before.

THE COURT: Okay. But is it procedurally just an order staying, not a final order reversing?

MS. MILLER: Correct. The second order or the second removal attempt is currently at the procedural state of a stay by the appellate court simply because it takes more time to bring together the three-judge panel necessary to do a full ruling on the merits.

THE COURT: Okay, and the three-judge panel may not -- well, in all likelihood would not be the same panel from the first removal?

MS. MILLER: I'm not entirely sure whether the individual judges on the panel rotate.

I know that the reporter judge stays with the case. So the reporter judge is highly familiar, not only with these actions to remove the trustee, but also with the substance of the case.

THE COURT: All right. So you want to move forward. Just in connection with one of the deadlines that I read or referred to, did you receive a privilege

Page 8

log or that's something you're also still waiting on based on the motion to extend?

MS. MILLER: Correct, Your Honor.

We have not received a privilege log, we haven't received a single responsive document from the subpoena targets in this case.

And I would just point out that Mr. Farrow's argument today is that there has apparently been an order in place since March 12th, and he's made no attempts to send me a copy of that order, to confer with me about that order, to translate that order, to file it with the Court, and so I see no reason why the Court should entertain his verbal allegation that that order exists and says what he purports that it says.

THE COURT: Okay. Yeah, it is awfully ambiguous as to what you think happened on March 12th.

Is this something you were just advised of by Brazilian counsel or what?

MR. FARROW: No, actually my -- my associate attorney has been following the case. She -- she called me just two minutes before, and she just was reviewing the docket in prepare -- in preparation for this hearing, and she noticed that this thing was on the docket. So this is what -- what she saw, and this is what I have to report.

I have no reason to -- I mean, I know that she's -- she's done the research before.  I know that she does her own way of translating these -- these orders and -- and just getting it -- you know, what they say.

This is the information that I have, Your Honor, to report, and -- and I have no reason to doubt that this is -- this is what she's saying.  She said that his appeal was denied, and I just got a text with respect to that.  So ---

THE COURT:  By the three-judge panel of the appellate court?

MR. FARROW:  Your Honor, I -- I don't know and I wish I did.

THE COURT:  All right.  Ms. -- Ms. Miller, you believe you would have been advised if something had happened or you had recently spoken to Brazilian counsel to confirm that the appeal was pending or what's your latest?

MS. MILLER:  Yes, Your Honor.

I would object to any statement by a person who doesn't speak English, purported to have her own way of translating these documents.

The only way to translate a document is either to read the language in which the document is written or to send it to a translator who reads that

language.

It is very dangerous to try to read legal documents, particularly to understand a docket. So any number of things could have happened on the docket, related or unrelated to the actual removal of the trustee.

There are frequently notices that go out later, publications in the Gazette that go out after the fact. There's a long delay often times between the judge actually signing the order and the order becoming technically effective because it's now been published in the Gazette and stamped 13 times or whatever the procedures are.

And so to have an American lawyer, who doesn't even speak the language, try to tell us what something maybe says that I haven't seen a copy of is -- is, quite frankly, completely unreliable.

I did speak to a Brazilian lawyer yesterday who is counsel of record in this case, and he told me that the final actions that have effectiveness over the removal of the trustee is the appellate court, the reporter judge of the appellate court issuing the stay order.

THE COURT: All right. Well, Mr. Farrow, I know you're -- you're at a disadvantage if Ms. Koodie was the one with more direct knowledge, but if -- if she had become aware -- well, when did -- when did -- I hate to

draw this out further, but when did she become aware, Ms. Koodie, that is, of the --

MR. FARROW: (Inaudible.)

THE COURT: -- March 12th order because it's -- now it's three and a half weeks from March 12th?

MR. FARROW: I understand, Your Honor, and to be completely candid with the Court, my understanding is that it was pursuant to her review of the docket this morning.

So I just got the chance to speak to her, she's been going through a lot this morning, with respect. She had called out sick yesterday. She is currently seeking emergency medical care for what's going on with her, so I -- I am at a little bit of a disadvantage, but I do see the Court's point.

I'm not going to make it that there's a larger issue with respect to what we could have done with respect to this before and in preparation of today. So I can appreciate that, certainly.

THE COURT: Okay. Well, the record at this point is simply the stay of the removal order, and it's more than just staying the removal because of the fact that it essentially adopted very specific and strong findings from the order reversing the first removal.

Regardless of whether that foreshadows with

some degree of certainty that the appeal will be granted and the removal reversed ultimately, this is not a finding I can make.

However, I -- I've traditionally acted in these Chapter 15 cases based on whatever orders are in place.  This is slightly different, I understand, because the order -- the trial court order, at least, is -- is removing the foreign trustee.

Typically I'm looking at orders that are on appeal, but not stayed, and giving weight to them and recognition to them in some instances specifically under Chapter 15.

But at this point I do think we need to move forward and act based on the foreign representative having the authority based -- at this stage of the proceeding because it's -- certainly I can take judicial notice that it's about like predicting weather in the -- in the mountains to predict when an appellant decision is going to come down in -- in Brazil.  So we're not going to hold -- hold off on this discovery indefinitely.

So, Ms. Miller, what form of order would you request?  I know what you said in your response, you want the documents tomorrow and a deposition in a week, but we've come this far and there was a basis for the motion to extend, although as Mr. Farrow concedes, also a basis

to try to work things out once the March 10th notice of filing was made.

But what -- what realistically and reasonably would you request be in an order based on where we are right now?

MS. MILLER:  Well, Your Honor, I guess I would ask what efforts the subpoena recipients have made to gather the documents.

They should have, quite frankly, made some efforts.  They didn't file their motion to extend time until the day before the production was done.  They have known since March 10th that -- since I think before March 10th when I sent a meet and confer e-mail to Mr. Farrow asking him if he would be amenable to an agreed extension, to which his clients never responded, and so what efforts did they make to identify the potentially responsive documents?

We know from the interrogatory responses that the relationship between Mr. Pobiak and Mr. Birmann was not particularly long, so, you know, what effort needs to be made and what efforts have already been commenced in responding to the subpoena?

THE COURT:  Yeah.  Mr. Farrow, before you respond, it's not simply the time span between the February 3rd order, which actually that one I pulled up.

Let me see when the hearing date was, the long hearing we had going through all these issues, and some of the objections were sustained or sustained in part by clarification. The order started with background, so let me -- we had an initial hearing back in November.

I mean, my point is the discovery requests themselves go back several months, and the hearing that gave rise to the February 3rd order was January 26th.

So as of the 26th, there was a deadline in place of the 16th, and so I'll, with -- with -- with that in mind, ask you to essentially respond to Ms. Miller's question, which is with the length of time that this has all been pending and the rulings made on January 26th, prior to any issue about the foreign representative, what -- what's been done to assemble documents and prepare a privilege log, if you know?

MR. FARROW: I know that Ms. Koodie has gone through e-mails and efforts, substantial efforts were made during that time period. I don't know where she is exactly with the privilege log.

But as far as getting documents to -- to the trustee, you know, we're not -- we're not asking for any more than 10 days to be able to do that, plus by that time we should have our privilege logs finished, as well.

So, you know, we're -- I just -- I'm asking

for that in part because Ms. Koodie is not here, she wasn't here in my office yesterday.  But, you know, I have the ability to see what she's done and to start working through that myself, and to get whatever we -- whatever is responsive over to the -- to the trustee.

THE COURT:  Okay, and I'm willing to give them at this point, with all the time that's passed and the medical situation Ms. Koodie is dealing with, the ten days, Ms. Miller.

Then you'd want to -- if I set a deadline of the 16th for the documents and the log, can we use the 16th as a date to also reach agreement on a deposition?

MR. FARROW:  That's fine, Your Honor.

MS. MILLER:  Yes, Judge.

THE COURT:  Which we can say the deposition by April 30th unless otherwise agreed, if the scheduling, just with the number of parties involved, if it requires you to push it back a little, if you agree to it.

Okay.  Anything else that you would request in the order?

MS. MILLER:  No, Your Honor.

THE COURT:  Okay.  Then I'll grant the motion in part.  The order should provide that it's granted in terms of extending the deadlines as -- as set forth below.  I'm putting the words into what you'll put

in the order, set forth below, and then overrule to the extent -- to the extent that the Pobiak parties are requesting that discovery be stayed pending a final ruling on the appeal.

And then with that, I think it -- it just flows into the deadlines, April 16th for the -- well, it's really I guess basically two months. The February 16th deadlines in the February 3rd order will be April 16th, and the -- well, the depo is actually only pushed by a month, and April 16th also to agree on a deposition date no later than April 30th unless otherwise agreed to by the parties.

Okay. Anything else?

MR. FARROW: No, Your Honor.

MS. MILLER: No, Your Honor.

THE COURT: Okay. All right.

Then, Mr. Farrow, I hope Ms. Koodie is okay. If -- if there's another few days because of her health, then just talk to Ms. Miller. I don't think that's going to be an issue, but if everything has pretty much been assembled, hopefully these deadlines can be met.

MR. FARROW: I think that it can, Your Honor, and I appreciate you saying that, but we'll do -- you know, we know what the marching orders are and we will comply.

Page 17

THE COURT:  Okay.

MR. FARROW:  So thank you for saying that.

THE COURT:  All right.  If -- if the lawyers can drop off, I just want to talk to Jackie for a moment, my -- my calendar clerk.

All right.  Thank you.  Be safe everybody.

MR. FARROW:  Thank you.

MS. MILLER:  Thank you.

(Thereupon, the hearing was concluded.)

Page 18

CERTIFICATION

STATE OF FLORIDA        :

COUNTY OF MIAMI-DADE    :


I, Margaret Franzen, Court Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

WITNESS my hand this 14th day of September 2021.


_____

MARGARET FRANZEN

Court Reporter and Notary Public
in and for the State of Florida at Large
Commission #GG187411
April 14, 2022