**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| CHARITABLE DAF HOLDCO, LTD. (In Official Liquidation),[1] | Case No. 25-11376 (BLS) |
| Debtor in a foreign proceeding. | **Re:  D.I. 21** |

**DECLARATION OF MARGOT MACINNIS IN SUPPORT OF MOTION OF PETITIONERS FOR ENTRY OF ORDER GRANTING PROVISIONAL RELIEF COMPELLING TURNOVER OF THE DEBTOR'S BOOKS AND RECORDS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 542, 1519 AND 1521**

I, Margot MacInnis, pursuant to 28 U.S.C. § 1746, hereby declare (this "Supplemental Declaration") under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

**A.      The Joint Official Liquidators and Original MacInnis Declaration**

1.      My colleague, Sandipan Bhowmik, and I (the "Petitioners"),[2] both of Grant Thornton Specialist Services (Cayman) Limited ("Grant Thornton"), are the duly appointed Joint Official Liquidators (the "JOLs") of Charitable DAF HoldCo, Ltd. (in Official Liquidation) ("HoldCo" or the "Debtor"), a Cayman Islands exempted company in official liquidation in the Cayman Islands (the "Cayman Proceeding"),[3] before the Grand Court of the Cayman Islands (the "Cayman Court") by an order dated May 6, 2025 (Cause No. FSD 116 of 2025)(JAJ) (the "Supervision Order").

---

[1]  The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805.  The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

[2]  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

[3]  Entitled *In the matter of section 131 of the Companies Act (2025 Revision) and in the matter of Charitable DAF HoldCo Ltd.*, FSD 116 of 20256 (JAJ).

2.      On July 21, 2025, by its undersigned United States counsel, Reed Smith LLP, the JOLs commenced the above-captioned chapter 15 case in respect of the Debtor (the "Chapter 15 Case") by filing the respective chapter 15 petition [D.I. 1] (the "Petition Form") and a *Verified Petition for (I) Recognition of the Foreign Main Proceeding, (II) Recognition of the Foreign Representatives, and (III) Certain Related Relief* [D.I. 2] (the "Verified Petition," and together with the Petition Form, the "Petitions") seeking recognition of (a) the Cayman Proceeding as a "foreign main proceeding", and (b) the JOLs as "foreign representatives" of HoldCo.

3.      On July 21, 2025, the Debtor filed the *Declaration of Margot MacInnis in Support of Chapter 15 Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 4] (the "Original MacInnis Declaration").  This Supplemental Declaration incorporates the statements made in the Original MacInnis Declaration as if made herein.

4.      I respectfully submit this Supplemental Declaration in support of the *Motion of Petitioners for Provisional Relief Compelling Turnover of the Debtor's Books and Records Pursuant to Bankruptcy Code Sections 105(A), 542, 1519 and 1521* (the "Motion") seeking immediate provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of title 11 of the Bankruptcy Code to require Carrington Coleman, Valuescope, Hunton, and Mancino, within seven (7) days of entry of the Proposed Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by, HoldCo.

5.      I am duly authorized to make this Supplemental Declaration on behalf of the JOLs. I am fully familiar with the facts of this matter.  Unless otherwise indicated, all statements contained herein are true to the best of my knowledge and based upon my personal knowledge of

HoldCo's operations and financial condition, my review of relevant documents and my conversations with relevant personnel. I am over the age of 18 and, if called to testify, would testify competently about the facts set forth herein.

6. I make this Supplemental Declaration in my statutory capacity as an officer of the Cayman Court and request an extension of comity for the benefit of all of HoldCo's creditors and investors, whose interests I represent. For the reasons discussed below, I submit that provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of title 11 of the Bankruptcy Code to require the Turnover Targets, within seven (7) days of entry of the Proposed Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by, HoldCo, is appropriate and warranted under the circumstances.

**B.**     **Conduct of Cayman Proceeding and Cayman Litigation Since the Commencement of the Chapter 15 Case**

7. Since the Petition Date, the JOLs have progressed in discharging their duties under the Companies Act both in relation to HoldCo's assets and in investigating HoldCo's assets and affairs.

8. On July 31, 2025, the Cayman Court entered the Cayman Consent Order, in which it ordered by consent, among other things, that the Named Defendants in the Cayman Litigation and the CDM Entities shall abide by certain undertakings intended to prevent asset dissipation and provide transparency and disclosure to the JOLs pending the Cayman Court's determination of the Injunction Summons.

9. On August 5, 2025, the JOLs filed the *Certification of Counsel Regarding Agreed Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 18] (the "Certification of Counsel"), seeking approval of a stipulation (the "Stipulation")

among the JOLs, the Applicable Named Defendants, and the CDM Entities that, among other things: (a) recognizes and enforces the Cayman Consent Order, and (b) adjourns the hearing to recognize the Cayman Proceeding under chapter 15 of the Bankruptcy Code (the "Recognition Hearing") from its originally scheduled date of August 14, 2025 (the "Original Recognition Hearing Date"), *sine die*, pending the scheduling of the hearing on the Injunction Summons by the Cayman Court.

10.    On August 6, 2025, this Court entered the U.S. Court Order approving the Stipulation [D.I. 19].   The entry of the Cayman Consent Order and the U.S. Court Order recognizing and enforcing the Stipulation significantly furthers the JOLs' goal of preventing the dissipation of assets subject to HoldCo's potential proprietary and other claims pending the resolution of the Cayman Litigation.

11.    On August 19, 2025, DFW issued a summons seeking the removal of the Petitioners as Joint Official Liquidators of HoldCo and made various allegations regarding the Petitioners' purported lack of independence and other matters related to their handling of the liquidation. The JOLs are reviewing the summons and will respond in due course in the Cayman Proceeding.

**C.    JOLs' Investigations into HoldCo's Assets and Affairs**

12.    Consistent with the purpose of official liquidation under Part V of the Companies Act, the JOLs are empowered to investigate:  (a) the causes for the failure of HoldCo, as necessary; and (b) generally, the promotion, business, dealings and financial affairs of HoldCo.  *See* Companies Act, § 110(2).

13.    To identify, secure, and recover HoldCo's books and records, the JOLs have: (a) issued formal correspondence to over 50 parties, including directors, shareholders, banks, service providers, various third parties, and the prior appointed joint voluntary liquidators,

notifying them of the JOLs' appointment and requesting books and records; and (b) held discussions with various parties to discuss the history and financial affairs of HoldCo.

14.     Furthermore, since the date of their appointment, the JOLs have been conducting an extensive and detailed ongoing investigation into HoldCo's affairs.  This investigation has involved a review of HoldCo's books and records (to the extent that they have been able to obtain them and to the extent that they are complete) and numerous inquiries and requests for information directed to persons previously involved with HoldCo.

15.     While the vast majority of parties that the JOLs have contacted have cooperated with the JOLs, certain US-based service providers have asserted that they do not recognize the JOLs' authority under the Supervision Order and have refused to provide copies of the requested information absent an order from this Court.  In particular, Carrington Coleman,[4] who provided advice in respect to HoldCo's affairs, Valuescope,[5] HoldCo's historic financial advisor and valuation services provider, and Hunton,[6] who provided HoldCo tax law advice, have declined to voluntarily turn over to the JOLs HoldCo's books and records in their possession despite numerous requests by HoldCo and its counsel requesting the same.  Additionally, Mancino,[7] one of HoldCo's tax consultants, previously indicated a willingness to cooperate with the JOLs' turnover requests but has yet to comply.

---

[4]  Ex. 1, May 7 Carrington Coleman Letter; Ex. 2, May 22 Carrington Coleman Letter; Ex. 3, May 28 Carrington Coleman Email; Ex. 4, June 2 Carrington Coleman Letter; Ex. 5, June 25 Carrington Coleman Letter; Ex. 6, July 9 Carrington Coleman Letter; Ex. 7, July 30 Carrington Coleman Letter; Ex. 8, August 6 Carrington Coleman Letter.

[5]  Ex. 9, May 7 Valuescope Letter; Ex. 10, May 15 Valuescope Letter; Ex. 11, May 30 Valuescope Letter; Ex. 12, June 2 Valuescope Letter; Ex. 13, June 25 Valuescope Letter; Ex. 14, July 30 Valuescope Letter.

[6]  Ex. 20, May 8 Hunton Letter; Ex. 21, August 6 Hunton Letter; Ex. 22, August 8 Hunton Email; Ex. 23, August 20 Hunton Letter.

[7]  Ex. 15, May 6 Seyfarth Shaw Letter; Ex. 16, May 6 Seyfarth Shaw Email; Ex. 17, May 12 Grant Thornton Email; Ex. 18, May 13 Seyfarth Shaw/Grant Thornton Email Chain; Ex. 19, August 13 Seyfarth Shaw Letter.

**(i)    Carrington Coleman**

16.    On May 7, 2025, the JOLs made their first request to Carrington Coleman to produce a copy of their complete file relating to the engagement by HoldCo, including, without limitation, copies of engagement letters with HoldCo, invoices, statements of account, details of any retainer, trust accounts or other funds held on behalf of HoldCo, the AML or KYC files Carrington Coleman possesses with respect to HoldCo and its directors, and any books and records held on behalf of HoldCo.[8]

17.    Carrington Coleman responded that "it is unlikely [it] would have many, if any, documents to provide"[9] in response to the JOLs' requests for HoldCo's books and records,[10] despite its prior work for HoldCo.[11]  Upon further investigation, Carrington Coleman admitted it is in possession of documents related to a memo prepared by Carrington Coleman regarding U.S. tax issues as they relate to HoldCo and its related affiliates.[12]

18.    Despite numerous requests from HoldCo and its counsel,[13] Carrington Coleman has declined to voluntarily turn over books and records in its possession belonging to, or otherwise arising in connection with their engagement by, HoldCo.  Carrington Coleman's position is that it is only required to respond and only will respond to the JOLs' requests if and when the JOLs' authority is recognized by the U.S. Bankruptcy Court in Delaware in the Chapter 15 Case.

---

[8]  Ex. 1, May 7 Carrington Coleman Letter.

[9]  Ex. 2, May 22 Carrington Coleman Letter; Ex. 3, May 28 Carrington Coleman Email; Ex. 6, July 9 Carrington Coleman Letter.

[10]  Ex. 1, May 7 Carrington Coleman Letter; Ex. 4, June 2 Carrington Coleman Letter; Ex. 5, June 25 Carrington Coleman Letter; Ex. 7, July 30 Carrington Coleman Letter.

[11]  Ex. 3, May 28 Carrington Coleman Email.

[12]  Ex. 3, May 28 Carrington Coleman Email.

[13]  Ex. 1, May 7 Carrington Coleman Letter; Ex. 4, June 2 Carrington Coleman Letter; Ex. 5, June 25 Carrington Coleman Letter; Ex. 7, July 30 Carrington Coleman Letter.

**(ii)      Valuescope**

19.      On May 7, 2025, and May 15, 2025, the JOLs made their initial requests to Valuescope to produce all of HoldCo's files in their possession, including, without limitation, all engagement letters with HoldCo, any books and records held by Valuescope on behalf of HoldCo, all instructions, work papers and documents reviewed by, provided to or prepared by Valuescope in connection with the valuation analyses it conducted for HoldCo as of December 31, 2020 and onwards concerning 100 Participating Shares in HoldCo and/or HoldCo's 100% membership interest in CDM.[14]

20.      Valuescope acknowledges that it possesses records relating to its prior valuation work for HoldCo.[15]

21.      However, despite numerous requests by HoldCo and its counsel,[16] Valuescope has declined to voluntarily turn over books and records in its possession belonging to, or otherwise arising in connection with its engagement by, HoldCo.  Valuescope's refusal rests on its assertion that, absent recognition of the Cayman Court's appointment of the JOLs by a U.S. bankruptcy court or other U.S. legal authority, Valuescope has no obligation to turn over the requested records.[17]

**(iii)     Hunton**

22.      On May 8, 2025, the JOLs made their first request to Hunton to produce a copy of their complete file relating to the engagement by HoldCo, including, without limitation, copies of engagement letters with HoldCo, invoices, statements of account, details of any retainer, trust

---

[14] Ex. 9, May 7 Valuescope Letter; Ex. 10, May 15 Valuescope Letter.

[15] Ex. 11, May 30 Valuescope Letter.

[16] Ex. 9, May 7 Valuescope Letter; Ex. 10, May 15 Valuescope Letter; Ex. 12, June 2 Valuescope Letter; Ex. 13, June 25 Valuescope Letter; Ex. 14, July 30 Valuescope Letter.

[17] Ex. 11, May 30 Valuescope Letter.

accounts or other funds held on behalf of HoldCo, the AML or KYC files Hunton possesses with respect to HoldCo and its directors, and any books and records held on behalf of HoldCo.[18]

23.     Hunton acknowledges that HoldCo is a former client and that it possesses documents on its representation of HoldCo.[19]  Additionally, Hunton responded that it "has not held, and does not hold, trust funds of HoldCo, there are no outstanding debts HoldCo owes Hunton, and thus [it has] no document with a statement of a HoldCo account that is due, and Hunton holds no retainer funds of HoldCo."[20]

24.     Despite numerous requests from HoldCo and its counsel,[21] Hunton has declined to voluntarily turn over books and records in its possession belonging to, or otherwise arising in connection with their engagement by, HoldCo.  Hunton's position is that it is only required to respond and only will respond to the JOLs' requests if and when the JOLs' authority is validated in the Chapter 15 Case as the parties with the rights to assert HoldCo's privileges and rights to receive HoldCo's legal file held by Hunton.[22]

### (iv)     Douglas Mancino of Seyfarth Shaw LLP

25.     On May 6, 2025, the JOLs made their first request to Mancino to produce a copy of his complete file relating to the engagement by HoldCo, including, without limitation, copies of engagement letters with HoldCo, invoices, statements of account, details of any retainer, trust accounts or other funds held on behalf of HoldCo, the AML or KYC files Mancino possesses with respect to HoldCo and its directors, and any books and records held on behalf of HoldCo.[23]

---

[18] Ex. 20, May 8 Hunton Letter.

[19] Ex. 23, August 20 Hunton Letter.

[20] *Id.*

[21] Ex. 20, May 8 Hunton Letter; Ex. 21, August 6 Hunton Letter.

[22] Ex. 23, August 20 Hunton Letter.

[23] Ex. 15, May 6 Seyfarth Shaw Letter.

26.    Mancino acknowledges that he possesses the requested documents.[24]

27.    Initially, Mancino had indicated a willingness to cooperate with the JOLs, including during a May 12, 2025 meeting with the JOLs, as well as in subsequent correspondence, and was seemingly prepared for document production.[25] Yet, without explanation, to date Mancino has failed to produce HoldCo's books and records.

28.    I believe, based on correspondence received from Carrington Coleman, that Carrington Coleman maintains at least certain books and records belonging to HoldCo that are relevant to the JOLs in our investigation of the facts and circumstances surrounding the Relevant Transactions, pursuant to which HoldCo's primary and most valuable asset was transferred to DFW.  Likewise, I believe that HoldCo's books and records held by Valuescope go directly to valuation issues that are critical to these transactions and the JOLs' investigation of the same. Finally, I believe that as HoldCo's tax advisor, the books and records held by Mancino and Hunton may be central to the investigation of the Relevant Transactions.

29.    In particular, Carrington Coleman, Valuescope, Hunton, and Mancino may have possession, custody, or control of books and records belonging to, or otherwise arising in connection with their engagement by, HoldCo, including files regarding the facts, circumstances and alleged justifications for: (1) the Directors to execute the Relevant Transactions, which ultimately divested HoldCo of its interest in the Fund; and (2) the Remuneration Transactions, which dramatically increased the Directors' compensation.

---

[24] Ex. 17, May 12 Grant Thornton Email; Ex. 18, May 13 Seyfarth Shaw/Grant Thornton Email Chain.

[25] Ex. 15, May 6 Seyfarth Shaw Letter; Ex. 16, May 6 Seyfarth Shaw Email; Ex. 17, May 12 Grant Thornton Email; Ex. 18, May 13 Seyfarth Shaw/Grant Thornton Email Chain; Ex. 19, August 13 Seyfarth Shaw Letter.

**D.** **Need for Discovery from the Turnover Targets**

30.     On the Petition Date and in my capacity as one of the JOLs of the Debtor, I, alongside Mr. Bhowmik, filed the Petitions, thereby commencing the Debtor's Chapter 15 Case.

31.     I was authorized pursuant to the Supervision Order to act as one of the JOLs of the Cayman Proceeding and to seek recognition and approval of the Cayman Proceeding as necessary, including the power to seek recognition of the JOLs and the Cayman Proceeding for the purpose connected with the exercise of the JOLs' power to commence legal proceedings in the name and on behalf of HoldCo to obtain the provision of information and/or documents in the United States.

32.     I am aware that this Court can afford the JOLs broad discovery rights pursuant to sections 105(a), 542(e), 1521(a)(4), and 1521(a)(7) of the Bankruptcy Code.

33.     I am of the belief that the JOLs must be afforded discovery rights in the United States with respect to the Turnover Targets to facilitate their investigations.  Affording the JOLs the ability to compel the Turnover Targets to return files belonging to the Debtor expeditiously is imperative to enable the JOLs to: (a) progress their investigation of the Debtor's assets and affairs, and, in particular, their examination into the Relevant Transactions and the Remuneration Transactions, in a timely manner for the benefit of all stakeholders, (b) avoid incurring burdensome costs by needlessly extending the duration of the JOLs' investigations, and (c) align incentives with respect to all potential discovery targets to promote cooperation with the JOLs in their efforts to discharge their statutory duties in lieu of encouraging such parties to obstruct and delay.

34.     I submit that granting the Provisional Relief would result in the JOLs obtaining return of HoldCo's books and records from the Turnover Targets on timing that is broadly consistent with the JOLs' expectations based on the scheduling of the Original Recognition Hearing Date.  Moreover, I submit that granting the Provisional Relief is particularly necessary

because, based on scheduling constraints in the Cayman Proceeding, the JOLs now expect that the Injunction Summons will be heard some time in November or December 2025, which is many weeks later than the JOLs originally anticipated, thereby significantly lengthening the "gap" period between the Petition Date in this Chapter 15 Case and the date when the Recognition Hearing will be scheduled.

35.     I understand that in the Third Circuit, the general standards for the Provisional Relief requested in the Motion require a showing of: (1) a substantial likelihood of obtaining recognition of the Cayman Proceeding; (2) the likelihood of irreparable injury if the Provisional Relief is not granted; (3) the hardships in granting the Provisional Relief balance in favor of the JOLs; and (4) the Provisional Relief will serve the public interest.

36.     I submit that there is no reason why this Court should not recognize the Cayman Proceeding on the Adjourned Recognition Hearing Date.  As set forth in the Verified Petition, the Cayman Proceeding is clearly a "foreign proceeding" under chapter 15, and the Debtor's center of main interests is in the Cayman Islands.  *See* Verified Petition, ¶¶ 132-144.  The Petitioners satisfy the requirements of a "foreign representative" under Bankruptcy Code section 101(24). Id. ¶¶ 148-149.  There can be no serious question that the Petitioners are entitled to and will succeed in obtaining relief under sections 1517 and 1520 of the Bankruptcy Code on the Adjourned Recognition Hearing Date and would have obtained such relief by the Original Recognition Hearing Date absent the Stipulation.  Accordingly, the Petitioners will successfully demonstrate that the Cayman Proceeding constitutes a "foreign main proceeding" entitled to chapter 15 recognition.

37.     I also submit that the Petitioners need the Provisional Relief to avert irreparable harm.  Not being able to seek turnover of the Debtor's own books and records to uncover the facts

and circumstances surrounding the Relevant Transactions—which divested the charitable organizations for whose benefit the Debtor was formed of their most valuable and primary asset—and the Remuneration Transactions until after the Adjourned Recognition Hearing Date will cause irreparable injury by delaying the Petitioners from progressing their investigation in accordance with their duties as officers of the Cayman Court for potentially several months. This delay burdens the Debtor's estate with unnecessary costs to the detriment of all of its stakeholders.

38.    I also submit that granting the Provisional Relief will not result in significant hardships to the Turnover Targets, while their delay in turning over the Debtor's own books and records will substantially hinder the Debtor's stakeholders by delaying the JOLs' investigation and burdening the estate with unnecessary costs. The relief requested by the Motion will benefit the Debtor and its stakeholders by ensuring an equitable and orderly implementation of the Cayman Proceeding. The requested Provisional Relief provides the JOLs with the ability to expeditiously carry out their investigatory duties, reducing estate costs and preventing unnecessary delays.

39.    The Provisional Relief will not meaningfully harm the Turnover Targets, and any potential harm is far outweighed by the benefit to HoldCo's estate. The Turnover Targets would eventually be subject to turnover requests in the context of this Chapter 15 Case regardless of the Motion. Moreover, there is no credible basis to claim that granting Provisional Relief would cause any hardship, let alone significant hardship. Carrington Coleman, for example, has repeatedly stated that "it is unlikely [it] would have many, if any, documents to provide." [26]

40.    I also submit that granting the Provisional Relief will serve the public interest because the Supervision Order provides for the JOLs' ability to investigate HoldCo's affairs,

---

[26] Ex. 2, May 22 Carrington Coleman Letter; Ex. 3, May 28 Carrington Coleman Email; Ex. 6, July 9 Carrington Coleman Letter.

which should be respected and enforced in the United States. The Provisional Relief is also in the public interest because it will facilitate the Debtor's efforts to pursue and complete a successful liquidation for the benefit of the Debtor's stakeholders by providing efficient discovery tools. Additionally, the Provisional Relief conforms with the public interest because it facilitates the Debtor's cross-border liquidation for the benefit of all of its creditors. In particular, the Provisional Relief aligns incentives with respect to all of the JOLs' potential discovery targets to promote cooperation with the JOLs in discharging their duties under the Companies Act rather than obstruction.

41.     For all of these reasons, I respectfully request that this Court (i) grant the Motion in its entirety, (ii) enter the Proposed Order, substantially in the form attached to the Motion as Exhibit A, granting immediate provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of the Bankruptcy Code to require the Turnover Targets within seven (7) days of entry of the Proposed Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by HoldCo, and (iii) grant such other relief as the Court deems appropriate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 27, 2025
       Cayman Islands

*/s/ Margot MacInnis*
MARGOT MACINNIS

*Joint Official Liquidator of*
*Charitable DAF HoldCo, Ltd*
*(in Official Liquidation)*