**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION),[1] | Case No. 25-11376 (BLS) |
| Debtor in a foreign proceeding. | **Re: D.I. 21** |

**HUNTON ANDREWS KURTH LLP'S RESPONSE AND LIMITED OBJECTION TO MOTION OF PETITIONERS FOR ENTRY OF ORDER GRANTING PROVISIONAL RELIEF COMPELLING TURNOVER OF THE DEBTOR'S BOOKS AND RECORDS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 542, 1519 AND 1521**

Hunton Andrews Kurth LLP ("Hunton") by and through its undersigned counsel, hereby submits this response and limited objection to *Motion of Petitioners for Entry of Order Granting Provisional Relief Compelling Turnover of the Debtor's Books and Records Pursuant to Bankruptcy Code Sections 105(A), 542, 1519 and 1521* [D.I. 21] (the "Motion") and respectfully states as follows:

**PRELIMINARY STATEMENT**

Hunton served as tax counsel to Charitable DAF Holdco, Ltd. ("Holdco" or the "Debtor"). Its work ended in 2024. To date, there is no showing Hunton represented Debtor in connection with the alleged 2024 and 2025 reorganization transactions that triggered this Chapter 15 proceeding. Yet, Hunton recognizes a client is entitled to its file. The issue for Hunton in this instant matter is mostly one of authority, specifically: Who has the management authority over Debtor in the United States entitling it to demand Debtor's legal files from former counsel?

---

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 170388. The Debtors' registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

{1519.001-W0083273.5}

Petitioners[2] filed this Chapter 15 proceeding to answer that question—to obtain United States judicial recognition, in part, that they are the legitimate representatives of Debtor. When Petitioners demanded Hunton's file,[3] Hunton responded that, in this situation of a pending Chapter 15 judicial recognition and apparent dispute over Petitioners' legitimacy, the reasonable and prudent approach was to await recognition of Petitioners' Chapter 15 proceeding.[4] If Hunton were to accede to Petitioners' demands, it would preempt this Court's role as the judge of the pending comity question: Whether Petitioners should be recognized under U.S. law (and for its lawyers) as Debtor's validly appointed foreign representatives. If the outcome, however, were that this Court adjudges Petitioners are *not* such, Hunton would find itself in the awkward position of breaching client confidentiality obligations and privileges by transferring Debtor's files to third parties not authorized or entitled to receive them.

Petitioners cited no law that Hunton saw on propriety of legal file turnover before a Chapter 15 petition is determined. And Hunton found none. Hunton submits that, generally, it is difficult to put the genie back in the bottle for the return of a debtor/client's confidential legal files and attorney-client privileged communications should the Court ultimately deny a petitioner's Chapter 15 petition. Accordingly, Hunton, out of an abundance of caution, took the ethically sound approach to await judicial clarity from this Court on whether Petitioners control Debtor's ownership of Debtor's files with its former lawyers.

---

[2] Capitalized terms used but not defined herein shall have meaning as set forth in the Motion.

[3] *See* D.I. 22, Ex. 21.

[4] *Id*. at Ex. 23. That other courts will not recognize foreign-appointed liquidators' standing in U.S. courts without Chapter 15 validation, *see*, *e.g*., *Reserve Intern'l Liquidity Fund, Ltd. v. Caxton Intern'l Ltd*., 2010 WL 1779282, at **5-6 (S.D.N.Y. Apr. 29, 2010); *Orchard Enterps. NY, Inc. v. Megabop Records, Ltd.*, 2011 WL 832881, at *2 (S.D.N.Y. Mar. 4, 2011), counseled in favor of awaiting this Court's determination of Petitioners' Chapter 15 petition. Indeed, Congress enacted Chapter 15 to provide interested parties—which would include law firms holding debtor files—"legal certainty" in the "fair and efficient administration of cross-border insolvencies" and to protect the debtor. 11 U.S.C. § 1501(a)(2-3).

Ultimately, Hunton takes no position and is agnostic on the propriety of granting Petitioners' provisional relief for turnover to Petitioners of law firms' files on their Debtor representation, before the Court determines Petitioners' Chapter 15 petition. However, in light of the concerns and limited objections raised herein, Hunton asserts that if the Court grants the Motion, the parties should be directed to meet and confer to discuss and agree on a protocol for the release and turnover of the Debtor's files to Petitioners that Debtor is entitled to receive before adjudication of Petitioners' legitimacy.

## **HUNTON'S LIMITED OBJECTION**

**A.      Breadth Of Hunton's Documents Sought For Turnover Is Too Broad As Encompassing Hunton's Internal Files And Privileged Communications**

1.      If a turnover is ordered, Petitioners have requested relief that is too broad in seeking every book and record *arising in connection with the engagement*. Petitioners have requested Hunton turn over:

> all books and records in their possession belonging to, *or otherwise arising in connection with their engagement by*, [Debtor].

[D.I. 21, ¶21; D.I. 21-1, p.4, ¶3 (emphasis added)]

2.      Hunton has no dispute with turning over to Debtor's legitimate representative(s)—upon resolution of such—the portion of its files that "belongs to" Debtor. What "belongs to" the client is delineated by applicable state law. No applicable state law entitles a client to every document "arising in connection with the engagement." That is too broad. Any turnover order should be circumspect as to the files a client is and is not entitled to receive from its law firm upon request.

3.    Under, for example, professional conduct rules in Virginia, where Hunton has its home office and where it is organized as a limited liability partnership, Virginia's rule 1.16(e) specifies what of a lawyer's file in its representation of a client belongs to a client. It provides:

> All original, client-furnished documents and any originals of legal instruments or official documents which are in the lawyer's possession (wills, corporate minutes, etc.) are the property of the client and, therefore, upon termination of the representation, those items shall be returned within a reasonable time to the client or the client's new counsel upon request. . . . Also upon termination, the client, upon request, must also be provided within a reasonable time copies of the following documents from the lawyer's file . . .: lawyer/client and lawyer/third-party communications, the lawyer's copies of client-furnished documents . . . transcripts, pleadings, discovery responses; working and final drafts of legal instruments, official documents, investigative reports, legal memoranda, and other attorney work product documents prepared or collected for the client in the course of the representation; research materials; and bills previously submitted to the client. . . . *The lawyer, however, is not required under this Rule to provide the client copies of billing records and documents intended only for internal use, such as memoranda prepared by the lawyer discussing conflicts of interest, staffing considerations, or difficulties arising from the lawyer-client relationship.*"

Va. R. Prof. Conduct 1.16(e) (emphasis added).

4.    Consistent with Virginia's rule, the law in Texas, where much of Hunton's legal work for Debtor was performed by Texas lawyers from Hunton's Dallas, Texas office and a principal client contact was a person who lived and worked in Dallas, provides that lawyer files generated and received in representing the client typically are the client's property, belonging to client, *In re George*, 28 S.W.3d 511, 516 (Tex. 2000), but (and with other exceptions), clients are not entitled to receive upon request files generated pertaining to representations of other clients, nor to the law firm and its lawyers seeking legal counsel about the lawyer-client relationship itself.[5]

---

[5] Texas law follows, as Virginia's rule provides, a growing trend of state court jurisprudence that rejects blanket application of a fiduciary exception to a firm's lawyer's privileged communications with the firm's in-house and outside counsel, both during and after an engagement, about matters arising from the engagement itself. *See Stock v. Schnader Harrison Segal & Lewis LLP*, 142 A.D.3d 210, 219-20 (N.Y. Ct. App. 2016); *Edwards Wildman Palmer LLP v. Superior Court*, 180 Cal. Rptr. 3d 620, 631 (Cal. Ct. App. 2014); *RFF Family Partnership, LP v. Burns & Levinson, LLP*, 991 N.E.2d 1066, 1078-80 (Mass. 2013); *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 326 P.3d 1181, 1195 (Or. 2014) (en banc); *Garvy v. Seyfarth Shaw LLP*, 966 N.E.2d 523, 536 (Ill. App. 2012); *St. Simons*

*See Axcess Intern'l, Inc. v. Baker Botts, L.L.P.*, 2012 WL 12884744, **5-6 (N.D. Tex. Jan. 27, 2012) (following *Tattletale Alarm Systems, Inc. v. Falfee, Halter & Griswold, LLP*, 2011 WL 382627 (S.D. Ohio Feb. 3, 2011)). *See also Huie v. DeShazo*, 922 S.W.2d 920, 924-25 (Tex. 1996) (rejecting application of a fiduciary exception to Texas' attorney-client evidentiary privilege in Tex. R. Evid. 503).

5.      Accordingly, if the Court concludes to grant Petitioners provisional turnover relief as to Hunton files, the Court's order should exclude from what Hunton should provide those files or portions of such that pertained to the firm's representations of other non-Debtor clients and the firm's internal handling of, or any difficulties for the firm that may have arisen from, the engagement itself.

**B.      Seven Days In Which To Turn Over A File Is Not A Reasonable Amount Of Time**

6.      Hunton also objects to a seven-day period in which to turn over files following any turnover order.

7.      First, Petitioners have not shown such an urgent need for Hunton's files to merit a short seven-day period. They have not shown that Hunton had any involvement in the 2024-2025 transactions at heart of their Chapter 15 proceeding. Hunton's name is not mentioned in the petition itself. And no evidence is presented suggesting Hunton was involved. Hunton's representation of Debtor dates back to 2011, and the majority of Hunton's files for its Debtor representation likely will be irrelevant to any liquidator's task of winding down Debtor's affairs.

8.      Second, Hunton submits that seven days does not provide enough time for Hunton to appropriately review its file for, among other things, non-Debtor representation files, for file transfer and then meet and confer with the Debtor's professionals to reach agreement on those files

---

*Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 746 S.E.2d 98, 108 (Ga. 2013). *See also Tattletale*, 2011 WL 382627 at *10.

that are appropriate for turnover. Hunton asserts that the parties should meet and confer following entry of an order adjudicating the Motion and reach agreement on a reasonable timeframe for turnover.

## RESERVATION OF RIGHTS

9.      Hunton reserves the right to amend and/or supplement this response and to make all arguments at the hearing on the Motion as may be applicable, including, but not limited to, making any arguments that may arise from information learned subsequent to the filing of this response and joining any arguments made by other parties in interest at the hearing on the Motion.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Hunton respectfully requests that the Court deny the relief requested, in part, as set forth herein, and grant such other relief as is just and proper.

Dated:  September 4, 2025
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Colin R. Robinson*
Colin R. Robinson (No. 5524)
Joshua B. Brooks (No. 6765)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: robinson@lrclaw.com
       brooks@lrclaw.com

*Counsel to Hunton Andrews Kurth LLP*