# Exhibit 3



Mark E. Patrick
First Affidavit
Management Shareholder
Exhibit MPMS-1

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO.: FSD 116 of 2025 (JAJ)**

**IN THE MATTER OF SECTION 110(3) OF THE COMPANIES ACT (2025 REVISION)**

**AND IN THE MATTER OF CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

---

**FIRST AFFIDAVIT OF MARK ERIC PATRICK**
**AS SOLE HOLDER OF THE MANAGEMENT SHARE**

---

I, **MARK ERIC PATRICK**, of 6716 Glenhurst Drive, Dallas, TX, 75254, do say as follows:

## I. INTRODUCTION

1. I am the sole holder of the management share of Charitable DAF Holdco, Ltd ("**Holdco**" or the "**Company**" and the "**Management Shareholder**" respectively).

2. Pursuant to regulation 11 of the Company's Articles of Association (the "**Articles**") only the Management Shareholder has the right to receive notice of and vote at any general meeting of the Company. Management of the Company was at all times conducted by its directors pursuant to regulation 71 of the Articles. The directors of the Company were appointed by ordinary resolution of the Management Shareholder under regulation 64 of the Articles.

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

**Page 2 of 20**

3.  Accordingly, the Management Shareholder's management entitlements and responsibilities were executed by and through the Company's directors. I, along with Mr Paul Murphy have at all relevant times served as the Company's directors and have managed its affairs including the affairs which Johnstone Law has characterised as being "fraudulent."

4.  I provide this affidavit as Management Shareholder, in an attempt to assist the Court by providing information acquired at firsthand in my capacity as one of the two directors of the Company.  However, naturally the matters to which I have deposed, in practice, were executed at board level by Mr Murphy and me. I understand that Mr Murphy will be providing a separate affidavit as independent-oversight director appointed by me as the Management Shareholder.

5.  Without waiving privilege, I am aware that conventional Court-supervised liquidations in the Cayman Islands are typically conducted for the benefit of stakeholders with an economic interest in the outcome of the winding-up. I know that this typically means that the weight attached to management or management-related stakeholders' view is subordinated to those with economic interests often because the company has "failed" whether through an insolvency event or through alleged mismanagement. The liquidation of the Company does not fall into either category of conventional "failure." Nor do I believe that there is a proper basis for asserting that official liquidation is necessary because there is a need for an investigation of the conduct of the Company's management. Unusually, the Company has ended up in the situation that it now finds itself due to the conduct of the principal behind its participating shareholders, here an individual called James Dondero ("**Mr Dondero**").

6.  Over at least the last 15 years, Mr Dondero has been continuously involved in several significant disputes which evolved into over fifty lawsuits and appeals **[MPMS-1/286]**. These cases principally derive from (a) the highly publicised Chapter 11 bankruptcy of Highland Capital Management LP ("**HCM**" and the "**Highland Bankruptcy**" respectively) and (b) the long-standing claim pursued by UBS which

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

has resulted in a billion-dollar judgment being entered against various entities associated with Mr Dondero (the "**UBS Litigation**" and "**UBS Judgment**" respectively).

7.  As I describe below, Mr Dondero is now facing personal liability for the UBS Judgment.

8.  I have sworn a separate affidavit on behalf of DFW Charitable Foundation (the "**DFW Affidavit**").

9.  I am aware that Johnstone Law acting for (a) Highland Dallas Foundation, Inc, Highland Kansas City Foundation, Inc, Highland Santa Barbara Foundation, Inc, and the HCMLP Charitable Fund (the "**Highland Foundations**"), all of which are directed by Mr Dondero and (b) more recently purporting to act for the JOLs, has sought to allege  that there is something nefarious about the fact that I have, since my appointment in 2021 been the sole human agent responsible for the management of various entities within the DAF Structure (as defined below) and consequently responsible for supervising the resolution of numerous issues, engaged multiple law firms.

10. As I have made clear in the DFW Affidavit at paragraph [*insert*], in the decade prior to my appointment, the exact same position was occupied by Mr Grant Scott. Mr Scott has been described in the UBS Litigation as an "*empty suit*" put in by Mr Dondero to "*solidify his control*" over Charitable DAF Fund LP (the "**DAF**") (see paragraphs 12 and 57 of the Special Turnover Petition filed against Mr Dondero and Mr Scott Ellington by UBS in February 2023 (the "**UBS Turnover Petition**") **[MPMS-1/8, 25]**). Since my replacement of Mr Scott in 2021, I have managed the DAF and its various entities professionally and independently.  I reject any suggestion that it is appropriate or more convenient for these entities to be represented by the same law firm.

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

11.   The fact Johnstone Law has apparently felt it appropriate to engineer a sense of unease about my position as Control Person (as I have defined in paragraph 101 of the DFW Affidavit) in circumstances where the architecture of the DAF Structure was established around a single human agent since inception in 2011, provides a strong indication about the intractable and contrived perspective they, and to some extent the JOLs have adopted in this liquidation. I have little doubt that this perspective is being driven by Mr Dondero through Johnstone Law.

12.   I have taken my role as Control Person very seriously. That role has involved managing different entities over many years through extremely challenging situations all of which derive from or have a connection with Mr Dondero's long legacy of litigation and his attempts to interfere with and exert influence over the DAF and its associated entities (the "**DAF Structure**").

13.   In the DFW Affidavit I have discussed the critical need for relinquishment of "*dominion and control*" from a U.S. taxation perspective going right back to when the DAF was established in 2011. To reiterate, Mr Dondero established a U.S. "charitable remainder trust" whereby he transferred assets into an irrevocable trust which was to pay income for a specific term before the remainder assets were passed to or for the benefit of qualified U.S. charitable organisations (the "**Dondero CRT**").

14.   The Dondero CRT transferred its assets to CLO Holdco Limited, which became a wholly owned subsidiary of the DAF whose primary purpose was to thereafter to make discretionary distributions to not for profit/charitable organisations. This was achieved through the Company and the Highland Foundations i.e. through the DAF Structure.

15.   In order to ensure the DAF Structure operated in compliance with IRS laws and rules, it was critical that Mr Dondero did not exert influence or control over the DAF or its assets.

16.   This was achieved through arm's length management of the DAF and its assets so as to ensure that "dominion and control" remained separate from Mr Dondero, thereby

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

**Page 5 of 20**

avoiding the prospect of the DAF Structure being classified as a "consolidated entity" or "*alter ego*" of Mr Dondero. Given how Mr Dondero's creditors characterised Mr Scott as an "*empty suit*" it was incumbent on me to implement robust processes for managing the DAF Structure. This inevitably meant managing Mr Dondero as well the external impact and pressures from the litigation that surrounded him.

17. As far as is relevant to the determination of the current application, I believe that the engagement of separate law firms to act for DFW, the Management Shareholder and the DAF was, and remains entirely necessary and appropriate. I believe to suggest otherwise only serves to highlight the misapprehension that Johnstone Law and the JOLs appear to be operating under as regards the DAF Structure.

18. With that said, I do not wish this Honourable Court to have to consider multiple lengthy affidavits covering the overlapping issues. Those issues include whether the JOLs will be able to independently and even-handedly asses the DAF Restructuring from a neutral and objective stance, even though they propose to engage a law firm that has clearly previously had dealings with and taken instructions from or on behalf of Mr Dondero and which has seemingly already taken the view that the DAF Restructuring (as defined in the DFW Affidavit) was a product of misconduct on my part and on the part of Mr Murphy (in our capacity as directors of the Company appointed by the Management Shareholder).

19. For this reason, I wish to make this affidavit as confirmatory and adoptive of the content of the DFW Affidavit insofar as it provides the relevant factual background to my involvement as Control Person in the DAF Structure as well as the challenging matters I, along with Mr Murphy, have had to address over the last 4 years leading to DAF Restructuring and the appointment of DFW as the incumbent charitable foundation. I do not repeat those matters in this affidavit.

20. This affidavit is therefore submitted in objection to the JOLs application by Summons filed on 22 May 2025 and the amended summons seeking sanction for the appointment

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

of Johnstone Law and Reed Smith LLP to act as (respectively) their Cayman Islands' legal counsel and United States' legal counsel.

21. The contents of this affidavit are, save where the contrary is indicated, within my own knowledge and are true. Where matters are not within my own directed knowledge, I refer to the source of my knowledge and confirm that those sources are true to the best of my knowledge information and belief. In making this affidavit I do not waive legal professional privilege in respect of any documents, information or advice referred to herein and no such waiver is intended or is to be implied.

22. There is now produced and shown to me a paginated bundle of documents marked "**MPMS-1**." References to pages in MPMS-1 are in the form "[**MPMS-1/page number**]."

## II. CONFIRMATION AND ADOPTION OF THE DFW AFFIDAVIT

23. I have set out in Section D of the DFW Affidavit the function of the Company and nature of the DAF Structure. I exhibit hereto (a) a structure chart which depicts the DAF Structure prior to the DAF Restructuring and (b) a structure chart depicting the DAF Structure after the DAF Restructuring [**MPMS-1/296-297**].

24. I reiterate here that the Highland Foundations must not be mistaken for being in the position of ultimate beneficial owners of an economic interest in a corporate investor in an investment fund. The Highland Foundations did not subscribe for shares in the Company and did not contribute any capital to it. Highland Dallas Foundation, Inc, Highland Kansas City Foundation, Inc, Highland Santa Barbara Foundation, Inc, received their shares by way of gift from the CRT (see paragraph 74 DFW Affidavit). HCMLP Charitable Fund made a nominal payment of US$0.50 (five cents) for its holding.

25. Critically, neither did the Company acquire a limited partnership interest in the DAF through the contribution of capital.

26.   As I have described in paragraph 74 of the DFW Affidavit, the DAF became capitalised through the transfer of assets from the Dondero CRT to CLO Holdco, Limited.

27.   My understanding is that it was a mandatory transfer because Mr Dondero derived significant personal tax benefits from establishing the Dondero CRT and in order to retain those benefits the assets of the Dondero CRT (as its name implies) had to be donated completely and irrevocably for charitable purposes by a certain time. Once these assets were received into CLO Holdco and ultimately into the DAF they were then to be held for the purpose of being applied for discretionary charitable purposes. That remains the case today through the appointment of DFW as the vehicle through which charitable distributions are made.

28.   It is ridiculous and incorrect to suggest DAF's or the Company's assets have been misappropriated because the relevant assets remain where they have always been and remain subject to the power to be distributed for charitable purposes.

29.   The only thing that has changed is that the Highland Foundations have effectively been removed from the DAF Structure. I believe that Mr Murphy and I were entitled and, indeed, properly advised bound to do this in order to protect the DAF's assets and the DAF's charitable purpose.

30.   I have also set out in the DFW Affidavit some of the factual background concerning the well-publicised "Highland Bankruptcy." I have also alluded to his billion-dollar dispute with UBS which started in around 2007. UBS has pursued multiple claims against Mr Dondero's entities as well as claims based on fraudulent transfer and *alter ego* causes of action due to the way he arranged his financial affairs in advance of the impending liability to UBS crystalising.

31.   Indeed DAF, as an asset-rich structure has been alleged by UBS to be Mr Dondero's *alter ego*.

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

**Page 8 of 20**

32. I wish to make clear that all of this information is critical to the JOLs' true and accurate understanding of the Company, the DAF Structure and the DAF Restructuring as well as Mr Dondero's strategic posturing. The major issue here is that the JOLs appear to have approached their role through an entirely contrived prism created by Johnstone Law's former clients and ultimately Mr Dondero who as the Court is aware is funding the costs and expenses of the Company's liquidation.

33. I believe that had the JOLs been independently advised by any available, unconnected competent and conflict-free law firm in the Cayman Islands, the JOLs acting in accordance with their duties as officers of this Court would have taken the time to carefully consider and assimilate the relevant materials which were provided to them on or about 9 May 2025 and would have adopted a potentially different and certainly a more balanced approach.

34. I also wish to make clear that I have no disinclination to cooperate with the JOLs -indeed it is my duty to do so. As such and to the contrary, I am ready and willing to do so. However, I cannot accept the apparent criticism made by the JOLs about not attending a meeting with them in circumstances where they failed to answer simple and legitimate questions raised in correspondence about the involvement of Johnstone Law.

35. I instructed Kobre & Kim to approach alternative law firms to ascertain whether they were conflicted. They approached Harneys, Mourant, Bedell Cristin and Claritas Legal and apart from one telephone call from Mourant which did not lead to any discussion, all correspondence was conducted in writing. I exhibit the relevant email threads which demonstrate that each of these firms is conflict-free and able to act for the JOLs **[MPMS-1/271-285]** if instructed. This is only intended to represent a cross-section of available firms and by no means exhaustive but I believe this information shows that there is a far simpler and more proportionate way to address the current impasse regarding the continuing involvement of Johnstone Law.

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

36.   In circumstances where there appears to be an obvious conflict, or at least where the is a real possibility of there being a conflict, between the interests of Johnstone Law's former clients who are seemingly intent on engineering and advancing a false case of fraud based on a clear misapprehension of the nature and purpose of the DAF Structure, and the role and position of DFW and indeed my own position as Management Shareholder, there is no benefit to the conduct of the liquidation at all in the JOLs seeking to instruct Johnstone Law. I believe the exact opposite is true because from the very outset, the JOLs appear to have adopted a position that is directly adverse to DFW and the Management Shareholder in circumstances where they have not carried out anything like an independent investigation and that the adoption of that adverse position has been, or at the very least has the appearance of having been driven by Johnstone Law – which firm has seen fit to make allegations of fraud.

37.   I believe that will only exacerbate matters and make for the administration of the liquidation to begin acrimoniously, which is unnecessary and will likely prove to be counter-productive, whatever view the JOLs form as to how the liquidation is best pursued.

38.   As I have already said, I have no difficulty in answering any questions the JOLs may have, but that process will be facilitated and is likely to be less adversarial if JOLs were to be represented by an independent and unconnected law firm. I cannot see any defensible reason for the JOLs to insist on engaging Johnstone Law when there are other unconnected law firms available to act and in the face of evidence that there exists a real conflict of interest, or at least the real possibility of there being a conflict of interest. With other law firms available to act, I find it impossible to understand why the JOLs have forcefully brought about a substantive hearing which focuses solely on the appointment of Johnstone Law and at huge cost to all concerned. Cost is of course no object to their funder, Mr Dondero, but I believe that reinforces the conflict issue which the JOLs seem to have overlooked and appear to continue to overlook.

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

39. Finally, I should add that my putative objection to Maples being appointed predominantly arose from transactional work that firm had previously carried out for the Company, specifically advising on the issue of shares to DFW. I exhibit hereto at **[MPMS-1/234]** a copy of the engagement terms we received from Maples regarding this appointment. Given that the JOLs seem to take issue (at least on the advice of Johnstone Law) with the issue of shares to DFW as part of the DAF Restructuring, I instinctively took the view that Maples might not be able to advise the JOLs on this moving forward, given they previously advised the Company in this respect (the "**DFW Share Issue**").

40. The other issue which caused me to write to Maples was the fact that in January 2024, they were approached with a view to being engaged to act in litigation against Mr Dondero, an instruction which they declined on the apparent basis of there being a conflict of interest (the "**Dondero Conflict Issue**"). I exhibit the relevant correspondence with Maples at the time **[MPMS-1/93-108]**.

41. Given that it seemed to me that Maples might have a conflict of interest, by reason of them being unable (so it seemed) to take an adverse position to Mr Dondero, for the reasons I set out in the DFW Affidavit and further describe below, this may be something which I believe the JOLs will have to get to grips with very soon, this was another reason why I considered Maples might not suitable – to avoid unnecessary further delay.

42. However, without prejudice to (a) my primary position that the JOLs should simply engage anyone of Harneys, Mourant, Claritas or Bedell as completely unconnected firms (or another available alternative), and (b) my right to raise the potential of there being a conflict of interest or the real possibility of their being such a conflict in the future, given the advice Maples gave regarding the DFW Share Issue. If Maples' conflict team has specifically considered the DFW Share Issue and the Dondero Conflict Issue and is satisfied that there is no actual or real possibility of their being a prospective conflict, I would not oppose their appointment as the sole Cayman Islands lawyers for the JOLs. I

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

**Page 11 of 20**

believe this may represent a complete solution to the current dispute and avoid the wholly avoidable costs of arguing about whether Johnstone Law should be appointed.

43. As for Reed Smith LLP I am aware that they represented an individual named Ted Dameris, a co-defendant with Mr Dondero in a matter arising from the Highlands Bankruptcy. Mr Dameris is a former board member of HCM. Again, without prejudice to my primary position that the JOLs should simply identify completely unconnected U.S. and my right to raise the potential of there being a conflict of interest or the real possibility of their being such a conflict in the future, if Reed Smith's conflict committee has carefully considered the matter and has resolved that there is no actual or proposed conflict, I would not oppose their appointment.

44. This would also be without prejudice to my position that so far, Reed Smith appears to have adopted the same fundamental misapprehensions as the JOLs relating to the DAF Structure as they seem to believe the Company has some form of proprietary interests in the assets it holds.

## III. THE DAF RESTRUCTURING

45. In this section I provide a summary of the DAF Restructuring and the reality of its implementation and true consequences rather than the inaccurate narrative being rehearsed by Johnstone Law's former clients.

46. For me, although from the outset I was faced with having to manage Mr Dondero's consistent and wrongful attempts to use DAF for his own benefit, the beginning of the end was when I became aware of a proposed attempt to have me transfer US $1.5 million of DAF's funds (funds that should and could only have been used to make

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

discretionary distributions to charities via the Company), to Mr Dondero's offshore entities, and which I believe was ultimately destined for Sentinel Reinsurance, Ltd ("**Sentinel**"), in November 2023.

47.  Sentinel was alleged by UBS to be a participant in a massive fraudulent scheme to strip certain of Mr Dondero's funds, including in particular HCM (the entity which filed for Chapter 11 in October 2019), CDO Opportunity Master Fund, L.P. and Highland Financial Partners, L.P., of their assets in order to prevent UBS from monetising a billion-dollar judgment it had obtained against them after a decade's worth of litigation.

48.  The USB Turnover Petition seeks to make them personally liable for the UBS Judgment including under the Racketeer Influenced and Corrupt Organizations Act, a statute which this Honourable Court may be aware allows for the pursuit of civil and other remedies for racketeering activity carried out as part of a criminal enterprise (see paragraph 208 onwards **[MPMS-1/72]**).

49.  The UBS Turnover Petition sets out some of the background to Sentinel's involvement at paragraphs 61 to 92. I also exhibit UBS' reply, dated 9 May 2025, to Messrs. Dondero and Ellington's answer to the Special Turnover Petition which sets out further detail concerning Sentinel **[MPMS-1/251]**.

50.  I believe that the attempt to have me transfer US $1.5 million of DAF's funds to Mr Dondero's offshore funds and intended for Sentinel was to settle outstanding professional fees arising from the dispute with UBS. This request was something I was made aware of by a contact I had at NexPoint Advisers LP, one of Mr Dondero's asset management companies **[MPMS-1/50]**, to the effect that Skyview (another entity associated with Mr Dondero through Mr Scott Ellington) was going to raise an invoice for US $1.5 million to DAF in circumstances where Skyview had not provided any services to DAF. The expectation was that I would cause DAF to make the payment without question and then the monies would be used to pay professional service providers in the Cayman Islands.

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

51. Suffice to say, I found it completely inappropriate and effectively an invitation to participate in Mr Dondero's financial misconduct. I was shocked and concerned about the prospect of receiving a false invoice and therefore immediately engaged attorneys, Parsons McEntire McCleary PLLC to advise on the propriety of the impending request and any compliance with that request. That written advice was given to me on 14 November 2023 for the benefit of DAF, and it has been disclosed to the JOLs as part of the data room access which was given to them on 9 May 2025 (see screenshot of all files to which the JOLs were given access **[MPMS-1/294]**).

52. I concluded that any request of this nature was wholly inappropriate, illegal, and would have caused me to breach my fiduciary obligations. I anticipated more inappropriate behaviour might ensue, and it did; throughout 2024 as I explain in paragraphs [*insert*] to [*insert*] of the DFW Affidavit regarding the demands made by Mr Dondero to use DAF's assets to invest in business opportunities that not appropriate and in which he had an interest.

53. As I have described in paragraph 185 of the DWF Affidavit, in November 2024, I was approached by Mr Dondero's attorneys. In return for stepping down as Control Person I was offered all sorts of elaborate compensation arrangements, including significant sums of cash and property. This proposal was clearly part of an attempt to regain control of DAF's assets and 'buy me off'.

54. Not only was this proposal improper but it was also ridiculously far-fetched because I knew Mr Dondero was under huge amounts of financial pressure arising from the litigation involving UBS.

55. So that the Court can understand what was happening in parallel throughout 2024, in February 2024, Mr Dondero and Mr Ellington filed a motion to dismiss the UBS Special Turnover Petition, which had been filed almost precisely a year before, (the **"Dondero MTD"**).

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

56.   The UBS Turnover Petition I understand was a special form of proceeding which alleges that over many years, whilst UBS' claim was pending against HCM, Mr Dondero and Mr Ellington conspired to frustrate UBS's ability to recover on its future judgment by exercising *"unfettered control"* over various entities including the main asset-holding entity within the DAF Structure, CLO Holdco Ltd (see paragraphs 3, 12 of the UBS Turnover Petition **[MPMS-1/8]**). The UBS Turnover Petition seeks to make Messrs. Dondero and Ellington personally liable for the UBS Judgment obtained against HCM and others after a decade of litigation.

57.   The Dondero MTD was scheduled for oral hearing on 8 July 2024, and I exhibit a copy of the transcript of the oral argument before Judge Crane **[MPMS-1/119]**. It was a significant hearing and the Judge reserved judgment.

The claims against CLO Holdco, Ltd. a Cayman Islands limited company and part of the DAF Structure, were ultimately dismissed on jurisdictional grounds on 15 July 2024 and this is a paradigm example of the DAF having to expend significant sums of money on legal representation precisely because of Mr Dondero's activities. The Court will know, ironically, that part of the Highland Foundation's allegations of misconduct against me concern the increase in spending on legal fees – this was one of the reasons why. It is ironic because we had to spend significant amounts of funds on lawyers to protect the DAF's assets from the impacts of Mr Dondero's conduct, which has for decades been the subject of allegations of fraud by UBS. For this and other reasons, the suggestion that I, with Mr Murphy have behaved inappropriately is particularly egregious.

58.   However, given the range of issues Judge Crane had to consider as part of the Dondero MTD regarding the claims against Messrs. Dondero and Ellington and given the remarks she made about Court-resourcing at page 95 of the Transcript **[MPMS-1/214]**, she did not rule until 26 March 2025. Ultimately she denied the Dondero MTD. Whilst her decision was pending, I believe it was during this period that Mr Dondero, through the Highland Foundations gradually but surely turned his attention to the DAF because of its asset-rich and liquid position, a position which Mr Murphy and I had spent the

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

**FSD2025-0116**                    **2025-06-04**

**Page 15 of 20**

preceding four years managing and defending, frankly, extremely well given the circumstances.

59. I should also point out that on 1 July 2024, Mr Dondero's appeal to the United States Court of Appeals, Fifth Circuit against an order finding him in contempt of court for breaching a TRO, which was imposed to prevent Mr Dondero from interfering with the HCM's operations after he had resigned from the board, was dismissed. I exhibit hereto the opinion of Justice Leslie Southwick dated 1 July 2024 dismissing Mr Dondero's appeal (the "**Dondero Contempt Opinion**") **[MPMS-1/109]**.

60. The behaviour which gave rise to the TRO and finding of contempt in that case is, in my experience characteristic of Mr Dondero's *modus operandi* in that once he has been excluded from formal control of any given business or assets, he habitually takes direct or indirect steps to inappropriately reinsert himself as part of ongoing attempts to influence and control (see for example the "Factual and Procedural Background" section on pages 2-3 of the Dondero Contempt Opinion: **[MPMS-1/10]**) over that business or its assets. He invariably does this to advance his own interests.

61. When he finds that his strategy fails, he does not hesitate to find ways to litigate and when that doesn't work he will repeatedly seek (unsuccessfully) to appeal or have the relevant Judge recused (see for example the opinion denying Mr Dondero's writ of *mandamus* dated 16 April 2025, the "**Dondero Mandamus Opinion**" **[MPMS-1/240]**).

62. Therefore, between July 2024 and April 2025, Mr Dondero had lost his appeal against the bankruptcy Court's finding of contempt and had lost his application to recuse the bankruptcy judge, and he had lost his motion to dismiss the UBS Turnover Petition.

63. Critically, during this same period tensions with Mr Dondero became strained because he was also attempting to influence Mr Murphy's and my investment decisions within

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

the DAF, as I have described more fully in paragraphs [*insert*] to [*insert*] of the DFW Affidavit. Not only were we rejecting his demands to deploy the DAF's assets into what were clearly inappropriate "investment" opportunities such as the TCAL investment, but by January 2025 we were in direct dispute with Mr Dondero over the failure of NexPoint Real Estate Partners LLC (an entity owned by him) to satisfy its liability under $13 million worth of demand notes due and payable to Atlas IDF LP, an entity within the DAF Structure.

64. The obligation was secured by Mr Dondero's family trust (the "**Atlas Dispute**"). Due to the ongoing failure to pay, this led us to file a complaint against NexPoint Real Estate and the Dondero family trust on 13 February 2025 for the payment of the amounts due.

65. Given Mr Dondero's propensity for retaliation against decisions taken that were opposed to his wishes/directions/interests, I do not find it at all coincidental that between July 2024 and 26 March 2025 his focus of attention, via the Highland Foundations, shifted to the DAF and to me and Mr Murphy.

66. As I have said in paragraph 138 of the DFW Affidavit, the so called "No Confidence Letter" came completely out of the blue in December 2024. By January 2025 the Atlas Dispute was quickly evolving and Ms Diaz was making unprecedented and repeated requests for the same information about the DAF assets even though (a) the substantive and historical information had already been provided (b) the Highland Foundations had no proprietary or economic interest in the DAF assets and neither did the Company and (c) the Highland Foundations clearly knew as much, as did Mr Dondero. For example, by email dated 17 November 2014 **[MPMS-1/1]**, I informed Mr Dondero of the amount of allocated investment income that had historically been reported to each of the Highland Foundations, each of which derived a tax-free income from DAF's assets because of their tax-exempt status. In his reply, it can be seen that Mr Dondero asks rhetorically, "*They don't think of that money as their own do they???*" to which I replied:

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

**Page 17 of 20**

*"No. Only real cash dividends. I explained to them on the front-end this would throw off substantial phantom income from the CLOs but they were entitled only cash distributions, if and when made."*

67.   This exchange shows that although gross income receipts were reported in significant amounts, the Dondero Foundations never actually had any entitlement to these amounts but rather only to entirely discretionary cash distributions for charitable uses.

68.   Therefore, the fact that we were in dispute with Mr Dondero (the Atlas Dispute) and that Ms Diaz was asking for information about DAF's assets particularly repeatedly on 23 January 2025 was suspicious and contrived.

69.   Just over 2 weeks later, on 12 February 2025 Mr Murphy received the email I refer to at paragraph 187 of the DFW Affidavit. Given Mr Dondero's track record for strategic interference, I strongly believe he will have instructed Johnstone Law to send that email. On 13 February 2025 we filed the Atlas Dispute complaint.

70.   On 25 April 2025 Mr Dondero's lawyers, acting in the Atlas Dispute, sent an email to our lawyers suggesting that the forthcoming status conference be postponed because there was a pending application for provisional liquidation in the Cayman Islands; to be heard on 29 April 2025 and they believed *DAF* would be brought under supervised liquidation.

71.   The context of these developments will need to be analysed in detail but for current purposes, DAF and all of its associated entities, including the Company have been tainted by the extraordinary legacy of litigation involving Mr Dondero and his affiliated companies as well as his propensity for retaliatory maneuvering. That legacy spans over a decade and became particularly complex upon the commencement of the HCM Chapter 11 Proceeding, as well as with the institution of the UBS claims. Chief Judge Jernigan in the HCM Chapter 11 Proceeding described Mr Dondero's "tax activities" as "byzantine" (see page 14 of the Dondero Mandamus Opinion **[MPMS-1/247]**).

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

**Page 18 of 20**

72.   As I have explained in the DFW Affidavit, the DAF was established as a tax efficient structure for Mr Dondero. Its legal efficacy from a taxation perspective relied critically upon his irrevocably relinquishing "dominion and control" of the assets transferred out of the charitable remainder trust into CLO Holdco, Ltd. (itself an asset-holding company within the DAF Structure) and the use of those assets for charitable purposes.

73.   Unfortunately, Mr Dondero is fundamentally incapable of abiding by these strict principles. Not only does this cause serious exposure from a taxation perspective but it also lends support to arguments under U.S. law that the DAF and its associated entities, including the Company are the *alter egos* of Mr Dondero thereby exposing them to the risk of their charitable status being lost and being held liable for his personal debts.

74.   Given the escalating position between July 2024 and April 2025 (see for example the matters I refer to in paragraph 119 onwards of the DFW Affidavit regarding the TCAL transaction, the Preferred Dividend Financing, the Small Bay II DST bridge loan and the Polo Glen DST as well as Mr Dondero's position in the Highland Bankruptcy and the UBS Litigation), Mr Murphy and I were faced with having to take decisive action to preserve the charitable purposes and status of the DAF. It really is absurd and wholly improper for Johnstone Law to have alleged that this action was fraudulent, but it has all the hallmarks of Mr Dondero's *modus operandi*.

75.   Mr Murphy and I as directors of the Company engaged Mr Mancino and multiple other lawyers to analyze the evolving position. This led to the DAF Restructuring. The notion that we took the steps we took in order to misappropriate either the Company's or DAF assets is a ridiculous and intolerable allegation.

76.   Accordingly, for the JOLs to have any chance of grasping the true nature of this liquidation and the DAF Restructuring they will need to access all of the advice Mr Murphy, and I obtained on behalf of the Company and analyze it in a careful and neutral manner. Whilst they do this, there is simply no risk to the DAF's asses to

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

**Page 19 of 20**

which, as I make clear, neither the Company nor the Highland Foundations have ever had any proprietary interest or entitlement. As matters stand the JOLs appear to have become completely wedded to the false narrative constructed by Johnstone Law which in turn derives from his engagement by the Highland Foundations and ultimately by Mr Dondero and the 'shadowy' "DAF Fund 2."

77.   The reality is that the purpose of the DAF remains entirely intact – which purpose is for it to make donations to any non-profit organisation or charity that qualifies for tax exemption under U.S. law, in other words the DAF continues to serve qualifying DFW as the "Indirect Beneficial Owners." Rather than fulfilling this purpose through the Company and the Highland Foundations, which have clearly become susceptible to Mr Dondero's influence, this is now done through DFW. The entire purpose of the DAF Restructuring was to protect the DAF from Mr Dondero's direct and indirect influences which, as the extensive litigious history concerning his business and personal affairs shows are damaging, frivolous and vexatious and contrary to law. Needless to say, I deny the DAF Restructuring was in any way fraudulent, and I intend to involve myself in appropriate action in due course and thereby ensure that Johnstone Law's baseless allegations are exposed for what they truly are.

## IV. CONCLUSION

78.   I rely on the DFW Affidavit for all other matters. As I have set out above in paragraphs 39 to 44, provided Maples have specifically considered and addressed the DFW Share Issue and the Dondero Conflict Issue and Reed Smith have considered the Dameris Issue are both firms satisfied that they are not conflicted, although I maintain that entirely unconnected lawyers are the cleanest and easiest way for the current impasse to be resolved, I have no objection to their being instructed as the JOLs Cayman Islands and US attorneys. This is without prejudice to conflict issues that may arise in future.

79.   I would respectfully suggest that this is a complete solution to the unprecedented issue created by the JOLs insistence that Johnstone Law be engaged. If that solution is not

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is

Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.

Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001

recognised by the JOLs, and they insist on having a contested hearing purely about Johnstone Law, then I would invite this Honourable Court to dismiss the JOLs.

80.    I respectfully as this Honourable Court to dismiss the JOLs Summons.

**SWORN** to at  Florida              Seminole        )

on this 4        day of    JUNE        2025            )



)              **MARK PATRICK**

**BEFORE ME:**

NOTARY PUBLIC

BRANDON COLEMAN
Notary Public - State of Florida
Commission # HH 246685
Expires on March 29, 2026

Notarized remotely online using communication technology via Proof.

03/29/2026

This **AFFIDAVIT** is filed by Kobre & Kim (Cayman) Attorneys-at-Law whose address for service is
Physical Address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman  KY1-9006.
Mailing Address: P.O. Box 410, 10 Market Street, George Town, Grand Cayman KY1-9006. Ref: 08663.001