**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARITABLE DAF HOLDCO, LTD. (In Official Liquidation),[1]<br><br>Debtor in a foreign proceeding. | Chapter 15<br><br>Case No. 25-11376 (BLS)<br><br>**Re: D.I. 21, 22, 23, 25, 27** |

# PETITIONERS' REPLY IN SUPPORT OF VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

# TABLE OF CONTENTS

**PAGE**


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 4

REPLY TO OBJECTION ..... 4

I. The Cayman Proceeding is a "Foreign Proceeding" Under Section 101(23) of the Bankruptcy Code ..... 4

A. The Cayman Proceeding is a "Collective Proceeding" ..... 5

B. Chapter 15 Recognition Is Available to Debtors Regardless of Their Solvency, and the Cayman Proceeding is Conducted Under a Law Relating to Insolvency ..... 10

(i) Solvent Debtors Qualify for Chapter 15 Recognition ..... 11

(ii) The Companies Act Is Widely Recognized by U.S. Courts as a Law Relating to Insolvency ..... 12

(iii) International Law and the Model Law Do Not Support the Patrick Entities Contention that the Cayman Proceeding Is Not a Foreign Proceeding ..... 13

(iv) The Model Law Does Not Preclude Recognition of Cases Involving a Solvent Debtor. ..... 13

(v) HoldCo is Hardly a "Solvent" Debtor ..... 14

(vi) Sturgeon and its progeny are distinguishable on their terms and wrongly decided to the extent they stand for the proposition that the Model Law bars recognition of proceedings involving solvent debtors ..... 16

C. The Cayman Proceeding is Being Conducted for the Purpose of Liquidation ..... 18

II. Recognition Is Not Manifestly Contrary to the Public Policy of the United States ..... 19

III. Recognition of the Interim Appellate Order and Entrustment of Assets are Both Necessary and Appropriate ..... 23

IV. The JOLs' Requested Discovery Relief Should be Granted under 11 U.S.C § 1521(a)(4) ..... 25

A. The Requested Discovery Relief is Necessary and Appropriate ..... 25

B. The Discovery Relief Sought Sufficiently Protects the Patrick Entities' Interests ........ 30

V. The Petitioners Should Be Afforded Relief Under Bankruptcy Rule 2004 ........ 32

CONCLUSION ........ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*,
480 B.R. 129 (S.D.N.Y. 2012)....5, 8, 9

*Ascentra Holdings, Inc (in official liquidation) v. SPGK Pte Ltd*,
[2023], SGCA 32 ¶ 89 (Sing. Ct. App. 2023)....17

*ASI, Inc. v. Foreign Liquidators (In re Manley Toys Ltd.)*,
597 B.R. 578 (D.N.J. Mar. 12, 2019)....6

*British Am. Ins. Co. v Fullerton (In re British Am. Ins. Co.)*,
488 B.R. 205 (Bankr. S.D. Fla. 2013) ....22

*Efron v. Candelario (Ire Efron)*,
529 B.R. 396 (B.A.P. 1st Cir. 2015)....22

*In re ABC Learning Centres Ltd*.,
445 B.R. 318 (Bankr. D. Del. 2010)....5

*In re ABC Learning Ctrs. Ltd*.,
728 F.3d. 301 (3d Cir. 2013)....5, 11, 20

*In re AJW Offshore Ltd.*,
No. 13-70078 (Bankr. E.D.N.Y. 2013)....19

*In re Ascot Fund Ltd.*,
603 B.R. 271 (Bankr. S.D.N.Y. 2019)....12

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009)....24, 25

*In re B.C.I. Fins. Pty Ltd. (in Liquidation)*,
668 B.R. 51 (Bankr. S.D.N.Y. 2025)....26

*In re Banco Master, S.A.*,
678 B.R. 690 (Bankr. S.D. Fla. 2026) ....29

*In re Betcorp Ltd.*,
400 B.R. 266 (Bankr. D. Nev. 2009) ....11, 12

*In re Board of Directors of Hopewell Int'l Ins. Ltd.*,
258 B.R. 580 (Bankr. S.D.N.Y. 2001)....29

*In re Comair Ltd.*,
No. 21-10298 (JLG), 2021 WL 5312988 (Bankr. S.D.N.Y. Nov. 14, 2021) ..........................34

*In re Credito Real, S.A.B. de C.V., SOFOM, E.N.R.*,
670 B.R. 150 (Bankr. D. Del. 2025), *aff'd sub nom. In re Credito Real S.A.B. de C.V., SOFOM, E.N.R.*, 677 B.R. 192 (D. Del. 2026) ..........................20

*In re Daewoo Logistics*,
461 B.R. 175 (Bankr. S.D.N.Y. 2011) ..........................29

*In re ENNIA Caribe Holding N.V.*,
594 B.R. 631 ..........................9

*In re Farfetch Ltd.*,
No. 24-11519 (CTG) (Bankr. D. Del. Aug. 5, 2024) ..........................12

*In re Frontera Res. Caucasus Corp.*,
No. 19-13418 (Bankr. S.D.N.Y. Jan. 21, 2020) ..........................25

*In re Glitnir banki hf*, No. 08-14757, 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ..........................34

*In re Global Cord Blood Corp.*,
No. 22-11347 (DSJ), 2022 WL 17478530 (Bankr. S.D.N.Y. Dec. 5, 2022) .................. *passim*

*In re Golden Sphinx Ltd.*,
No. 22-14320, 2023 WL 2823391 (Bankr. C.D. Cal. Mar. 31, 2023 ..........................29, 34

*In re LDK Solar Co.*,
No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014) ..........................12

*In re Manley Toys Ltd*,
580 B.R. 632 (Bankr. D.N.J. 2018) ..........................5, 12, 20, 21

*In re Metcalfe & Mansfield Alternative Invs.*,
421 B.R. 685 (Bankr. S.D.N.Y. 2010) ..........................24

*In re Millard*,
501 B.R. 644 (Bankr. S.D.N.Y. 2013) ..........................11, 12, 21

*In re Millennium Lab Holdings II, LLC*,
562 B.R. 614 (Bankr. D. Del. 2016) ..........................32, 33

*In re Modern Land (China) Co.*,
641 B.R. 768 (Bankr. S.D.N.Y. 2022) ..........................12

*In re Ocean Rig UDW Inc.*,
570 B.R. 687 (Bankr. S.D.N.Y. 2017) ..........................12, 22

*In re Petroforte Brasileiro de Petróleo Ltda.*,
542 B.R. 899 (Bankr. S.D. Fla. 2015) ....................33

*In re Platinum Partners Value Arbitrage Fund*,
583 B.R. 803 (Bankr. S.D.N.Y. 2018).................... *passim*

*In re Platinum Partners Value Arbitrage Intermediate Fund Ltd.*,
No. 17-12269 (Bankr. S.D.N.Y. 2017).................... *passim*

*In re Prince Glob. Holdings Ltd.*,
No. 26-10769, 2026 WL 1694259 (Bankr. S.D.N.Y. June 11, 2026) .................... *passim*

*In re Saad Invs. Fin. Co. (No.5) Ltd.*,
No. 09-13985 (KG) (Bankr. D. Del. Dec. 4, 2009) ....................12, 19

*In re Three Arrows Cap., Ltd.*,
647 B.R. 440 (Bankr. S.D.N.Y. 2022)....................29

*In re Transbrasil S.A. Linhas Aéreas*,
No. 19-23700, 2020 WL 10458631 (Bankr. S.D. Fla. Mar. 16, 2020)....................34

*In re Traxcell Techs., LLC*,
657 B.R. 453 (Bankr. W.D. Tex. 2024)....................22

*In re Wash. Mut., Inc.*,
408 B.R. 45 (Bankr. D. Del. 2009) ....................34

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)....................28

*Krys v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP (In re China Med. Techs., Inc.)*,
539 B.R. 643 (S.D.N.Y. 2015)....................33

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
825 F.2d 709 (2d Cir. 1987)....................24

*Winczura v. Scott (In re Canterbury Sec., Ltd.)*,
675 B.R. 109 (S.D.N.Y. 2025)....................24

**Statutes**

11 U.S.C. § 103(g) ....................22

11 U.S.C. §§ 1507, 1521(a)(7)....................24

11 U.S.C § 1521(a)(4)....................26

**Rules**

Fed. R. Bankr. P. 2004(a)–(b)(1) .....33

**Other Authorities**

Deutsch & Vazquez, *Building Blocks, Introduction to Recognition under Chapter 15*, 29-4 Am. Bankr. Inst. J. 46, 46 (2010) .....14

H.R. Rep. No. 31 (2005) .....23

Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited (the "Petitioners"), the duly appointed joint official liquidators (the "JOLs") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("HoldCo" or the "Debtor"), a Cayman Islands exempted company in official liquidation in the Cayman Islands (the "Cayman Proceeding"),[2] before the Grand Court of the Cayman Islands (the "Cayman Court"), by its undersigned United States counsel, Reed Smith LLP, hereby file this reply (this "Reply")[3] to the *CDM Parties' Objection to the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Objection").[4]

**PRELIMINARY STATEMENT**

1. Mark Patrick and the other Patrick Entities[5] contend that they were justified in consummating a restructuring transaction in secret that divested HoldCo of all of its assets—namely its ownership interest in a fund whose net assets had been valued at approximately $270 million—leaving HoldCo's original participating shareholders, four *bona fide* charitable organizations who count on the income stream from HoldCo for their charitable activities, in the

[2] Entitled *In the matter of section 131 of the Companies Act (2025 Revision) and in the matter of Charitable DAF HoldCo Ltd*. FSD 116 of 2025 (JAJ).

[3] In further support of this Reply, the Petitioners have filed concurrently the Declaration of Margot MacInnis in Support of Reply (the "Accompanying MacInnis Decl."), Declaration of Caroline Moran in Support of Reply (the "Accompanying Moran Decl."; together with the Accompanying MacInnis Decl., the "Reply Declarations").

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Verified Petition for (I) Recognition of the Foreign Main Proceeding, (II) Recognition of the Foreign Representatives, and (III) Certain Related Relief* [D.I. 3] (the "Verified Petition") or the Objection, as applicable.

[5] For purposes of this Reply, the term "Patrick Entities" includes all of the parties identified in footnote 2 of the Objection, as well as DFW Charitable Foundation ("DFW"). Mr. Patrick is DFW's registered director, president and sole member. *See* Verified Pet. ¶ 13. Mr. Patrick caused DFW to become the 51% economic interest holder in HoldCo following the DFW Share Issuance. *See id.* ¶ 40. DFW has appeared in both the Cayman Proceeding and in this case with the other Patrick Entities.

cold. The independent insolvency practitioners appointed by the Grand Court of the Cayman Islands to act as HoldCo's JOLs disagree.

2. The Patrick Entities spend 40 pages of their objection reciting 20 years of history regarding this dispute in an effort to justify their actions. Neither this history, as complex and convoluted as it may be, nor the propriety of the Patrick Entities' actions, is before this Court.

3. What is before this Court is whether the Cayman Proceeding should be recognized as a foreign proceeding and, if so, whether this Court should grant certain additional relief, including to recognize and enforce interim injunctive relief entered by the Cayman Court of Appeals and to assist the JOLs in discharging their duty to investigate HoldCo's assets and affairs through the use of U.S. discovery tools.

4. Chapter 15 and the Model Law on Cross-Border Insolvency (UNCITRAL 1997) (the "Model Law") are intended to enable courts to make this determination on narrow grounds that can be satisfied through objective means. The Patrick Entities challenge that the Cayman Proceeding is a foreign proceeding eligible for recognition. They ask this court to impose barriers on recognition, including requiring foreign debtors to be insolvent and to have an undetermined minimum number of creditors, that simply do not (and should not) exist under chapter 15. Upon scrutiny, none of the cases that they cite, be they decisions rendered by U.S. bankruptcy courts, or cherry-picked rulings by foreign courts, or cherry-picked quotations from the Enactment Guide to the Model Law, actually support the proposition that this Cayman Proceeding is not a "foreign proceeding" as defined under chapter 15 or the Model Law. The simple, objective fact is that it is.

5. Likewise, none of the cases the Patrick Entities cite support their contention that the JOLs should not be authorized to conduct U.S. discovery under the supervision of this Court. This is not surprising given that the authority that the JOLs seek is routinely granted in similar

liquidations. Being afforded the authority to use these tools is appropriate here precisely because of the complexity of the facts and circumstances about which the Patrick Entities write *ad nauseum* in their Objection. Many of these facts and circumstances relate to persons, records, property, and actions that are located in or took place in the United States. This relief is all the more necessary given that many U.S.-based service providers and other parties-in-interest have not been forthcoming in cooperating with the JOLs' requests for information as part of their ongoing investigation.

6. Without law or fact on their side, the Patrick Entities allege that James Dondero, the original donor of the assets held through HoldCo, is controlling the JOLs and the Cayman Proceeding. They made similar allegations in seeking the removal of the JOLs in the Cayman Proceeding, where they were debunked and withdrawn. Their arguments are no more persuasive (but equally offensive and baseless) now.

7. Given their Objection, it is hard to believe that certain of the Patrick Entities informed the Texas Business Court in the Texas Proceeding that "United States courts regularly characterize Cayman liquidation proceedings as 'foreign main proceedings' deserving of recognition under chapter 15 of the United States Bankruptcy Code" and that "[t]he proceedings in the Cayman Islands culminated in the appointment of *independent* liquidators." *Defendants' Motion to Dismiss and Plea to the Jurisdiction*, at 36, 39–40 (filed July 14, 2025). *See* Accompanying MacInnis Decl. ¶ 60.

8. On that score, at least, they were correct. The Cayman Proceeding satisfies every element of section 101(23), the JOLs are duly authorized foreign representatives and the Debtor's center of main interests is the Cayman Islands. Recognition must be granted. The Petitioners have met their burden for the relief requested in the proposed amended Proposed Order (the "Amended

Recognition Order"), substantially in the form attached hereto as **Exhibit A**, and the Patrick Entities have failed to provide this Court with any basis to deny such relief. A redline of the Amended Recognition Order marked against the version that was attached to the Verified Petition is attached hereto as **Exhibit B**.[6] Accordingly, the Court should enter the Amended Recognition Order.

## BACKGROUND

9. There have been numerous developments in the Cayman Proceeding since the Petitioners last appeared in this Court. The Reply Declarations describe in detail events that have transpired that are relevant to the Cayman Proceeding, the Cayman Litigation, the Injunction Application, the Objection, and this Reply. The Petitioners cite specific portions of the Reply Declarations to support matters of fact and Cayman Law throughout this Reply. Rather than to repeat the content of these Reply Declarations in the main text of the Reply, the Petitioners encourage the Court to review the Reply Declarations, which are incorporated by reference as if set forth herein, in their entirety for an overview of these events.

## REPLY TO OBJECTION

### I. The Cayman Proceeding is a "Foreign Proceeding" Under Section 101(23) of the Bankruptcy Code

10. The Bankruptcy Code defines "foreign proceeding" to mean "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or

[6] Contemporaneously herewith, the Petitioners have filed the *Notice of Filing of Amended Recognition Order*, which attaches the Amended Recognition Order and redline attached hereto as Exhibit A and Exhibit B, respectively.

liquidation." 11 U.S.C. § 101(23). Courts in the Third Circuit break down the definition into seven elements:

> (i) a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation.

*See In re ABC Learning Ctrs. Ltd.*, 728 F.3d. 301, 308 (3d Cir. 2013).

11. The Patrick Entities allege that the Cayman Proceeding should not be recognized as a "foreign proceeding" because it does not satisfy three of the elements of the foreign proceeding definition. Obj. ¶ 91. Namely, they assert that the Cayman Proceeding is not a "collective proceeding," that it is not "authorized or conducted under a law relating to insolvency or the adjustment of debt," and that it is not "for the purpose of . . . liquidation." *See id.* ¶¶ 91–92. The Patrick Entities' position is not supported by the plain language of the Bankruptcy Code, case law under chapter 15, or the non-U.S. cases and interpretative guides that the Patrick Entities rely on in the absence of precedent supporting their position in the United States.

**A. <u>The Cayman Proceeding is a "Collective Proceeding"</u>**

12. A "collective" proceeding is a proceeding that considers the rights and obligations of creditors generally, rather than a proceeding, such as a creditor-initiated receivership, instituted for the benefit of a single creditor. *See Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129, 136 (S.D.N.Y. 2012). Hallmarks of a collective proceeding include adequate notice to creditors, provisions for the distribution of assets in accordance with statutory priorities, and a mechanism for creditors to seek court review of developments. *See id.* at *137; *In re Manley Toys Ltd*, 580 B.R. 632, 640–41 (Bankr. D.N.J. 2018); *see also In re ABC Learning Centres Ltd.*, 445 B.R. 318, 329–30 (Bankr. D. Del. 2010) (applying these factors to determine a proceeding was collective). Courts have also looked to whether creditors are provided an

opportunity to participate in the foreign proceeding and whether an independent third party is controlling the estate for the benefit of creditors (*i.e.*, not for the debtor or its insiders). *See ASI, Inc. v. Foreign Liquidators (In re Manley Toys Ltd.)*, 597 B.R. 578, 583–84 (D.N.J. Mar. 12, 2019).

13. The Cayman Proceeding satisfies these factors. The central premise of the Cayman Proceeding is the fair liquidation of the Debtor for the benefit of all creditors and other stakeholders. *See Declaration of Caroline Moran As Cayman Islands Counsel to the Debtor in Support of the Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code to the Honorable United States Bankruptcy Judge* [D.I. 5] (the "First Moran Decl.") ¶ 23. The Cayman Court appointed the JOLs to perform duties that include "the collection, realization and distribution of the assets of HoldCo to its creditors and, if there is a surplus, to equity holders." Verified Pet. ¶ 1. Creditors and other stakeholders received adequate notice of the Cayman Proceeding. Specifically, the JOLs published notices of the winding up of the Debtor in the Cayman Islands Gazette and Cayman Compass Newspaper, circulated notices to known creditors and contributories, and convened the first meeting of contributories on July 9, 2025. *See* Verified Pet. ¶ 66; *see also* First MacInnis Decl. ¶ 65. The Companies Act provides the JOLs the ability to satisfy creditor classes in full and to compromise debts and liabilities. *See* Accompanying Moran Decl. ¶¶ 15–17. And, pursuant to the Companies Act, the Cayman Proceeding considers the interests of creditors and contributories in determining the extent to which parties have a right to be heard. *See* Companies Act, section 110(4); *see also* First Moran Decl. ¶¶ 23, 29, 35; Accompanying Moran Decl. ¶ 37.

14. The Patrick Entities, however, contend that the Cayman Proceeding is really a "governance dispute" that is not the sort of proceeding envisioned as being eligible for recognition

under chapter 15 or the Model Law. *See* Obj. ¶¶ 8, 93, 98, 107. The dispute is "only" a "governance dispute" insofar as it involves the question of whether effecting transactions divesting the Debtor of all of its assets, valued at $270 million, in exchange for $1.6 million and leaving the Debtor with a net surplus of approximately $39,000 as of the commencement of the Cayman Proceeding, was defensible or improper.

15. In support of the proposition that governance disputes do not satisfy the "collective proceeding" element of the definition of "foreign proceeding" under the Bankruptcy Code, the Patrick Entities rely on *Global Cord*, where the court found that a Cayman provisional liquidation was not collective because it was "taken for the intended benefit of a corporation as a whole without specific reference to the existence or rights of 'creditors.'" *In re Global Cord Blood Corp.*, No. 22-11347 (DSJ), 2022 WL 17478530, at *8 (Bankr. S.D.N.Y. Dec. 5, 2022). In *Global Cord*, the directors entered into a series of transactions that diluted the shareholders' equity stake and spent over two-thirds of Global Cord's cash without shareholder approval. *See id.* at *2. A shareholder sought a just and equitable winding up based on (i) a loss of trust and confidence; (ii) an urgent need to investigate Global Cord's affairs; (iii) dilution of the shareholders' interest in Global Cord; and (iv) the directors acting in breach of fiduciary duty. *See id.* at *1–2. The Cayman Court appointed joint provisional liquidators ("JPLs") for a specific purpose: to prevent the further dissipation of assets and investigate whether the directors committed wrongdoing. *See id.* at *4. The JPLs did not provide notice to creditors, administer a claims process, make distributions, or liquidate Global Cord. *See id.* at *7, *10. Indeed, the JPLs admitted in *Global Cord* that they were not attempting to wind up, liquidate, or reorganize the business. *See id.* at *10.

16. The Cayman Proceeding is distinguishable from *Global Cord* on several critical grounds. First, the Cayman Proceeding is an official liquidation, meaning that the JOLs were

appointed to wind up HoldCo, including to collect, realize and distribute its assets to its creditors and, if there is a surplus, to the persons entitled to it. *See* Accompanying Moran Decl. ¶¶ 30–31. *Global Cord*, on the other hand, was a provisional liquidation, an interim proceeding in which the powers of the liquidators were limited by the supervisory order solely to prevent potential mismanagement or misconduct by Global Cord's directors and the potential dissipation and/or misuse of Global Cord's assets pending the hearing of the winding up petition. *See* Accompanying Moran Decl. ¶ 28-29. The JPLs were not appointed to wind up Global Cord, did not have the power to do so, and hoped never to have to pursue an official liquidation. *See id.; Global Cord¸* 2022 WL 17478530, at *11.

17. Second, in *Global Cord*, creditors did not receive formal notice of the commencement of the provisional liquidation, and there was no effort to identify or classify creditors to determine how and whether to satisfy their claims. *See* 2022 WL 17478530, at *7. The Cayman Proceeding, on the other hand, is an official liquidation, so, under applicable Cayman law, known creditors and contributories have received formal notice of the commencement of the liquidation and a process exists for claims to be submitted and reviewed.[7] *See* Accompanying Moran Decl. ¶ 23-24; First MacInnis Decl. ¶ 65. The JOLs, as the Patrick Entities admit, have received two proofs of debt. *See* Accompanying MacInnis Decl. ¶¶ 19, 21; Obj. ¶ 3 n.8. Accordingly, by definition, the Cayman Proceeding considers the rights and objectives of creditors. *See Ashapura*, 480 B.R. at 136–37. That there may be only a few creditors does not mean that all creditors' rights and objectives are not being considered. As *Global Cord* acknowledges,

[7] In fact, the Court seized on the absence of a claims process as distinguishing it from every prior case identified that courts concluded involved "collective" action. *See* 2022 WL 17478530, at *7. ("There is no dispute that Global Cord Blood Corp.'s creditors have not received formal notice of the Cayman proceeding, nor been granted standing to participate in the Cayman Proceeding; nor has the Cayman Proceeding involved any effort to identify or classify creditors or determine how and whether to satisfy their claims. . . . This reality distinguishes every prior case that the Court or the parties have identified that courts concluded involved 'collective' action.").

courts have taken a broad view of what it means to "consider" the rights of creditors. *See* 2022 WL 17478530, at *8; *In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638–39 (finding proceeding to be collective, despite possibility creditors were not allowed to participate, because the proceeding considered the interests of multiple creditors and parties-in-interest); *Ashapura*, 480 B.R. at 141 ("[E]ven if there were no opportunity . . . for unsecured creditors to participate, . . . this may still be a collective proceeding, because it involves parties other than just one class of creditor or just one party-in-interest") (footnote omitted).

18. Third, in *Global Cord*, the JPLs were appointed in connection with a shareholder dispute regarding the alleged dissipation of hundreds of millions of dollars of corporate assets in relation to a business whose subsidiaries had material residual value as going concerns. *See Global Cord¸* 2022 Bankr. LEXIS 3426 at *5–6. Global Cord was therefore solvent and not otherwise in any form of financial distress. *See id.* at *4. On the other hand, it is undisputed that all of HoldCo's assets were divested in the Relevant Transactions. The JOLs determined that HoldCo maintained a net surplus on its balance sheet of just $39,946.00 on or around the commencement of the Cayman Proceeding. *See* Accompanying MacInnis Decl. ¶ 29. As discussed in greater detail below, the JOLs' "solvency" determination here, made in accordance with applicable Cayman law, does not mean that HoldCo was neither in severe financial distress nor insolvent as of such time under other tests.

19. Judge Glenn's recent decision recognizing the joint provisional liquidation of Prince Global as a foreign main proceeding is instructive. *See In re Prince Glob. Holdings Ltd.*, No. 26-10769, 2026 WL 1694259 (Bankr. S.D.N.Y. June 11, 2026). In *Prince Global*, the objecting party argued that no allegations of insolvency or inquiry into financial distress were made, nor had any party contended that the Debtors are insolvent. *See In re Prince Glob. Holdings*

*Ltd.*, No. 26-10769 (Bankr. S.D.N.Y. Apr. 16, 2026), D.I. 17 ¶ 9, a true and correct copy of which is attached hereto as **Exhibit C**. Additionally, relying on *Global Cord*, the objecting party in *Prince Global* argued that the JPLs were provisionally appointed to identify and preserve the debtor's assets to maintain the status quo and that, accordingly, the provisional relief granted there was wholly investigatory in nature and did not pertain to insolvency or reorganization. *Id.* ¶¶ 10–12. Accordingly, the objecting party argued that the BVI proceeding was not a collective proceeding conducted under a law relating to insolvency or adjustment of debt for the purpose of liquidation. *See id.* ¶ 32.

20. Judge Glenn easily overruled these objections, concluding that the BVI proceedings are collective in nature because they "(i) centralize control of the Debtors' affairs under court supervision, (ii) preserve the Debtors' assets, (iii) facilitate investigation of the Debtors' activities and transactions and (iv) enable coordinated administration and recovery. Additionally, the BVI Proceedings were not commenced by a single creditor pursuing its own recovery, but rather by the BVI Attorney General with the goal of benefiting all who may have claims against the estate." *Prince Glob. Holdings Ltd.*, 2026 WL 1694259, at *18 (citation omitted).

21. Judge Glenn's reasoning applies with equal force here. Under the Companies Act, whether an official liquidation is commenced following a winding up order on just and equitable grounds or a supervision order, the liquidation process is the same, benefitting all who may have claims against the estate, much like the BVI proceedings in *Prince Global*. Accompanying Moran Decl. ¶¶ 10–13.

### B. Chapter 15 Recognition Is Available to Debtors Regardless of Their Solvency, and the Cayman Proceeding is Conducted Under a Law Relating to Insolvency

22. Next, the Patrick Entities argue the Cayman Proceeding fails element (v) of section 101(23) of the Bankruptcy Code—that the proceeding must be "authorized or conducted under a

law related to insolvency or the adjustment of debts"—because HoldCo was solvent at the time of filing. Obj. ¶¶ 93, 93 n.35, 103–108. This argument fundamentally misconstrues the statutory inquiry and applicable legal standard. The law is clear that a foreign debtor is not required to be insolvent before it can be protected by the Bankruptcy Code.

**(i) <u>Solvent Debtors Qualify for Chapter 15 Recognition</u>**

23. Section 101(23) of the Bankruptcy Code does not require the debtor to be insolvent; it requires only that the proceeding be conducted "under a law relating to insolvency or adjustment of debt." 11 U.S.C. § 101(23). As Judge Glenn explains in *Prince Global*, "the court in Global Cord noted that the test [to determine] whether a proceeding is 'under a law relating to insolvency' is not whether the proceeding concerns insolvency or adjustment of debt[s]' but rather if the proceeding is being brought under a 'law' that 'relates to' insolvency or adjustment of debt. Under this permissive standard, a proceeding need only possess a unified structure of the external administration provisions to constitute a law that relates to insolvency." *Prince Glob. Holdings Ltd.*, 2026 WL 1694259, at *17 (citations omitted); *see also In re Millard*, 501 B.R. 644, 650 (Bankr. S.D.N.Y. 2013) (stating that a foreign debtor "need not be insolvent to take advantage of chapter 15 recognition"). The *Millard* court also provided that it was not "aware of any [authority to the contrary]. That is hardly surprising, because it would require a rewriting of the U.S. statute." *Id.; see also ABC Learning Ctrs. Ltd.*, 728 F.3d at 306 (acknowledging that chapter 15 "mandat[es] recognition when a foreign proceeding meets Section 1517 recognition requirements" (citation omitted)).

24. Likewise, in *In re Betcorp Ltd.*, the court rejected an argument identical to the one the Patrick Entities advance here, holding that "this element [of section 101(23)] does not require the company to be either insolvent or to be contemplating using the provisions of [the applicable]

law to adjust any debts." 400 B.R. 266, 282 (Bankr. D. Nev. 2009) (footnote omitted).[8] Instead, the court focused on the nature of the law under which the proceeding was conducted, finding that, because the applicable foreign law contained "several sub-parts . . . that deal with corporate insolvency and allow for the adjustment of debts," the voluntary winding up—even of a solvent entity—satisfied element (v). *Id.*

**(ii) The Companies Act Is Widely Recognized by U.S. Courts as a Law Relating to Insolvency**

25. Here, the Cayman Proceeding was brought under Part V of the Companies Act (2025 Revision), which governs the winding up of companies in the Cayman Islands. U.S. bankruptcy courts, (including the court in *Global Cord*, *see Global Cord*, 2022 WL 17478530, at *9), have repeatedly and consistently held that Part V of the Companies Act constitutes a "law relating to insolvency or the adjustment of debt" for purposes of section 101(23).[9] To the Petitioners' knowledge, no U.S. court has ever reached a contrary conclusion, nor have the Patrick Entities identified any such authority in their Objection.

[8] *See also In re Manley Toys Ltd.*, 580 B.R. 632 (Bankr. D.N.J. 2018) (Where a solvency argument was squarely raised, the court rejected the argument that recognition should be denied because the debtor was solvent, holding: "the inquiry for this element is not the Debtor's actions or whether the Debtor was solvent; but is whether Hong Kong has a framework in place so that 'courts, merchants and creditors can know them in advance, and apply them evenly in practice'" (quoting *ABC Learning Ctrs. Ltd.*, 445 B.R. at 328)).

[9] *See, e.g., In re Ocean Rig UDW Inc.*, 570 B.R. 687, 701–02 (Bankr. S.D.N.Y. 2017) (recognizing Cayman provisional liquidation under Part V as a law relating to insolvency); *In re Ascot Fund Ltd.*, 603 B.R. 271, 286 (Bankr. S.D.N.Y. 2019) (recognizing Cayman liquidation as foreign main proceeding); *Millard*, 501 B.R. at 648–50 (recognizing Cayman bankruptcy proceeding notwithstanding challenge to debtor's solvency);; *Manley Toys Ltd.*, 580 B.R. at 641–42, 652 (Bankr. D.N.J. 2018) (recognizing Cayman official liquidation as foreign main proceeding); *In re LDK Solar Co.*, No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014), D.I. 43 (recognizing Cayman provisional liquidation and scheme of arrangement), a true and correct copy of which is attached hereto as **Exhibit D**; *In re Modern Land (China) Co.*, 641 B.R. 768, 793 (Bankr. S.D.N.Y. 2022) (same); *In re Farfetch Ltd.*, No. 24-11519 (CTG) (Bankr. D. Del. Aug. 5, 2024), D.I. 46 (same), a true and correct copy of which is attached hereto as **Exhibit E**; *In re Saad Invs. Fin. Co. (No.5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 4, 2009), D.I. 39, a true and correct copy of which is attached hereto as **Exhibit F**.

**(iii) <u>International Law and the Model Law Do Not Support the Patrick Entities Contention that the Cayman Proceeding Is Not a Foreign Proceeding</u>**

26. Absent colorable grounds to oppose recognition based on Chapter 15's plain language requiring that foreign proceedings be authorized under a law relating to insolvency or the adjustment of debt and the U.S. court's interpretation of the same, the Patrick Entities ask this court to look to the non-U.S. sources, namely the Model Law and several non-U.S. decisions declining to recognize specific proceedings involving solvent debtors. Obj. ¶¶ 104–106. Putting aside that this Court need not go into this level of inquiry here, the Patrick Entities' reliance on the UNCITRAL's Guide to Enactment of the Model Law on Cross-Border Insolvency (as amended, the "<u>Enactment Guide</u>") is misleading and erroneous, and the foreign cases that the Patrick Entities cite are clearly distinguishable from the Cayman Proceeding. The Patrick Entities also neglect to cite to a more recent foreign decision that persuasively reasons that, to the extent other foreign courts have imposed a solvent debtor requirement into the Model Law, they are wrongly decided.

**(iv) <u>The Model Law Does Not Preclude Recognition of Cases Involving a Solvent Debtor.</u>**

27. A proceeding involving a solvent debtor can be a collective proceeding under both Chapter 15 and the Model Law. In enacting Chapter 15, the framers intentionally broadened the scope of the definition of "foreign proceeding" under the Model Law to include proceedings under a law relating to insolvency "or the adjustment of debt." This addition of "adjustment of debt" was intended to make clear that proceedings involving solvent debtors and proceedings pending under non-insolvency law can be eligible for recognition in the United States (this should be no surprise considering there is both no solvency requirement for debtors under the Bankruptcy Code and no doubt that a proceeding under the Bankruptcy Code is collective irrespective of a debtor's financial

condition). *See* Deutsch & Vazquez, *Building Blocks, Introduction to Recognition under Chapter 15*, 29-4 Am. Bankr. Inst. J. 46, 46 (2010).

28. Moreover, the Enactment Guide provides that the use of the term "insolvency," which is not defined in the Model Law, "refers to various types of collective proceedings commenced with respect to debtors that are in severe financial distress or insolvent." *See* Enactment Guide ¶ 48. The Enactment Guide goes on to describe those debtors that would be covered by the Model Law include "debtors that are or will be generally unable to pay their debts as they mature or whose liabilities exceed the value of their assets." *Id.* ¶ 49. In other words, the Model Law accepts that either a cash flow or balance sheet test can be used to evidence a conclusion that a debtor is insolvent or in severe financial distress. *See id*.

29. Moreover, the Enactment Guide further explains that the Model Law recognizes that "insolvency proceedings may be commenced under specific circumstances defined by law that do not necessarily mean the debtor is in fact insolvent." *Id.* ¶¶ 72, 235. These include, for example, "cessation of payments by the debtor or certain actions of the debtor such as a corporate decision, dissipation of its assets or abandonment of its establishment." *See id*. The Cayman Islands is not a jurisdiction in which proof that the debtor is insolvent is required for the commencement of insolvency proceedings.

**(v) <u>HoldCo is Hardly a "Solvent" Debtor</u>**

30. The Patrick Entities make much of HoldCo's supposed "solvency." For Cayman law purposes, the JOLs are required to make a non-binding determination of the debtor's balance sheet solvency. *See* Accompanying Moran Decl. ¶¶ 37-38. On the basis of the JOLs' belief that they have strong claims that would result in the recovery of assets they allege were improperly transferred from the Debtor to the Named Defendants, the JOLs have taken the view that HoldCo's

estate is solvent and that the parties for whose ultimate benefit the estate is being managed—the Participating Shareholders—are the contributories. *See id.* ¶¶ 41.

31. When the JOLs made the initial solvency determination on June 2, 2025, shortly following the commencement of the Cayman Proceeding and their appointment, the JOLs noted that HoldCo's assets consisted entirely and exclusively of a retainer in the amount of $150,000.00 and the value of its interest in the Fund, which ranged from zero to $270 million depending on whether the Named Defendants consummated the restructuring transactions legitimately or illegitimately. *See* Accompanying MacInnis Decl. ¶ 22. Taking into account the proof of debt filed against the estate by an indemnity claimant in the amount of $18,785.36 and invoices in the amount of $91,268.50 provided by the firm holding the retainer and ascribing no value to HoldCo's interest in the Fund, the JOLs determined that HoldCo was solvent by virtue of a net balance sheet surplus in the amount of $39,946.[10] *See id.* ¶ 21. In making this determination, the JOLs did not base their decision on whether HoldCo was solvent on a cash flow basis, but rather on a balance sheet basis as they are required to do so. *See* Accompanying Moran Decl. ¶ 42.

32. The JOLs did not conclude (and would never conclude) that $150,000.00, much less $39,946.00, was sufficient cash on hand to enable HoldCo to be solvent on a cash flow basis given the costs and expenses it would need to incur to recover its most valuable asset through litigation. *See* Accompanying MacInnis Decl. ¶ 22. While solvent on a balance sheet basis, HoldCo

[10] Moreover, the Patrick Entities' characterization of HoldCo as a solvent liquidation is contrary to the position that they advanced in the Cayman Proceeding, where DFW initiated a Solvency Summons to determine that the Cayman Liquidation be considered an insolvent liquidation for the purposes of the Companies Act. The Patrick Entities asserted that HoldCo is "insolvent or of doubtful solvency, at best," relying on the alleged (1) dismissal of HoldCo's contingent claims to the Fund's assets by the Injunction Judgment; (2) accrual of significant liabilities, including in excess of $1 million in unsatisfied costs orders; (3) exhaustion of the Funding Agreement (defined below); and (4) absence of further third-party funding.

The Solvency Summons was withdrawn in the Consent Order and Costs with costs awarded to the JOLs.

was insolvent on a cash flow basis when the Cayman Proceeding commenced. The Patrick Entities characterization of HoldCo as a "solvent" liquidation is highly misleading without this context.[11]

**(vi) Sturgeon and its progeny are distinguishable on their terms and wrongly decided to the extent they stand for the proposition that the Model Law bars recognition of proceedings involving solvent debtors**

33. The Patrick Entities point to *Sturgeon* and *Seahawk* to support the proposition that proceedings involving solvent debtors should not be entitled to recognition as foreign proceedings. *See* Obj. ¶ 106. Neither opinion is availing.

34. *In Re: Sturgeon*, the English Court declined to recognize the just and equitable winding up under Bermuda law of a solvent investment company with the majority of its assets managed by an investment manager based in London. *Re Bailey (Sturgeon Central Asia Balanced Fund Ltd)*, [2020] EWHC at [9], [123] (Ch) (Eng.). Sturgeon's statement of affairs showed that it had net assets of approximately $39 million. *Id*. at ¶ 15. Justice Briggs, applying the Model Law as adopted in England, which does not contemplate proceedings authorized under laws relating to the adjustment of debt, held that the foreign representatives had not sufficiently demonstrated that the debtor was insolvent or in severe financial distress and, accordingly, denied recognition. *Id*. at ¶¶ 116–117, 123. Justice Briggs dismissed concerns that his approach would require every court to investigate insolvency by noting that, in the vast majority of cases, solvency will be obvious. *See id*. at ¶ 121. The JOLs respectfully submit there is sufficient difference between having a net

[11] Moreover, the Patrick Entities' characterization of HoldCo as a solvent liquidation is contrary to the position that they advanced in the Cayman Proceeding, where they initiated a Solvency Summons to determine that the Cayman Liquidation be considered an insolvent liquidation for the purposes of the Companies Act. The Patrick Entities asserted that HoldCo is "insolvent or of doubtful solvency, at best," relying on the alleged (1) dismissal of HoldCo's contingent claims to the Fund's assets by the Injunction Judgment; (2) accrual of significant liabilities, including in excess of $1 million in unsatisfied costs orders; (3) exhaustion of the Funding Agreement (defined below); and (4) absence of further third-party funding.

The Solvency Summons was withdrawn in the Consent Order and Costs with costs awarded to the JOLs.

balance of $39 million in *Sturgeon* and having a balance of $39,000.00, here, to persuade Justice Briggs that the Cayman Proceeding involves insolvency or severe financial distress.

35. In *Seahawk*, Cayman JPLs were appointed to exercise management powers over the debtor's assets in Hong Kong. The authority vested in the JPLs was limited. *In re Seahawk China Dynamic Fund (in provisional Liquidation in the Cayman Islands)* [2022] HKCFI 1994. The JPLs admitted that they were not conducting a collective insolvency process and that Seahawk was a solvent and highly profitable company. *Id.* Here, unlike *Seahawk*, the JOLs have full authority to conduct HoldCo's winding up. In addition, HoldCo is far from a highly profitable operating business. The Patrick Entities divested it of all of its assets in consummating the Relevant Transactions, leaving it solvent for balance sheet purposes, but insolvent or in severe financial distress for cash flow purposes.

36. Moreover, the Patrick Entities neglected to cite to a decision rendered by the Singapore Court of Appeals (the "Singapore Court") in *Ascentra*, which persuasively argues that *Sturgeon* and its progeny are wrong to the extent they incorporate a solvency requirement. *See Ascentra Holdings, Inc (in official liquidation) v. SPGK Pte Ltd*, [2023] SGCA 32 ¶ 89 (Sing. Ct. App. 2023), a true and correct copy of which is annexed hereto as **Exhibit G**. In *Ascentra*, the Singapore Court considered whether a Cayman Liquidation in which the Joint Official Liquidators determined that the debtor was solvent was a collective proceeding and was being conducted under a law relating to insolvency or the adjustment of debt in accordance with the definition of foreign proceeding applicable in Singapore's adoption of the Model Law. *See id.* ¶¶ 1–2.

37. The Singapore Court surveyed jurisprudence in the United States, England, Australia, and New Zealand on this issue in concluding that, while the Model Law is primarily focused on companies that are insolvent or in severe financial distress, it would not be contrary to

the purpose and object of the Model Law to extend the scope of the Model Law to proceedings concerning solvent companies. *See id.* ¶ 89. The Court disagreed with *Sturgeon*'s criticism that *Betcorp* had made a wrong turn by recognizing as a foreign proceeding the liquidation of a company that was neither insolvent nor in severe financial distress. *See id.* ¶¶ 88–89. The Court criticized decisions that impose a requirement that a debtor must be insolvent or in severe financial distress for imposing unnecessary complexity at the recognition stage. *See id.* ¶ 97 ("In other words, the applicant for recognition must be prepared, at the time of presentation of the petition for recognition, to prove the insolvency or severe financial distress of the subject company under the relevant foreign law. This may require that in contested cases, evidence be adduced not only as to the financial status of the company but conceivably as to foreign law (see *Pacific Recreation Pte Ltd v S Y Technology Inc and another appeal* [2008], 2 SLR(R) 491 at [54]). In our view, introducing such requirements at the recognition stage would be undesirable.") The Court went on to conclude that the Cayman voluntary liquidation was a collective proceeding pending under a law relating to insolvency or the adjustment of debt for the purpose of liquidation. *See id.* ¶¶ 104-07.

### C. <u>**The Cayman Proceeding is Being Conducted for the Purpose of Liquidation**</u>

38. Finally, the Cayman Proceeding is an official liquidation. The JOLs have been appointed by the Cayman Court with the power to wind up HoldCo. *See* Supervision Order §§ 2, 5–6. Unlike in *Global Cord*, the JOLs are expressly pursuing a liquidation in the Cayman Proceeding. *See Prince Glob. Holdings Ltd.*, 2026 WL 1694259, at *17 ("First, the BVI Proceedings are for the purpose of liquidation as they were commenced under the BVI Insolvency Act, and the BVI Attorney General preserves the Debtors assets and coordinate administration and recovery for creditors. The objectors points to *In re Global Cord Blood Corp.* as instructive by claiming that Judge Jones found that a Cayman proceeding was not for the purpose of liquidation

when the JPLs in that case did not have the power to liquidate the debtor company and instead were charged with merely preserving the corporation's assets and investigating company affairs. However, Judge Jones specifically noted the JPLs in that case were not pursuing a liquidation and hoped that they would never have to pursue one. In the case at hand, the JPLs have explicitly sought to liquidate the Debtors and the BVI Originating Applications and *Skeleton Argument of the BVI Attorney General* provide evidence of that purpose." (citations omitted)).

39. Therefore, the Cayman Proceeding is, by definition, being pursued for the purpose of liquidation. *See Glob. Cord Blood Corp.*, 2022 WL 17478530, at *10 ("Frequently when Cayman proceedings are recognized, the Grand Court has entered a winding up order and/or appointed an official liquidator or joint official liquidators." (citation omitted)); *In re Platinum Partners Value Arbitrage Intermediate Fund Ltd.*, No. 17-12269 (Bankr. S.D.N.Y. 2017), D.I. 3-2 ¶ 2, 12 (recognizing Cayman proceeding where Grand Court entered winding up order and appointed official liquidators in liquidation proceeding started by a creditor), true and correct copies of which are attached hereto as **Exhibit H and Exhibit I**, respectively; *In re AJW Offshore Ltd.*, No. 13-70078 (Bankr. E.D.N.Y. 2013), D.I. 3-1 ¶ 2, 31 (recognizing Cayman proceeding where Grand Court entered winding up order and appointed official liquidators in Companies Act § 124 voluntary liquidation); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (Bankr. D. Del. 2009), D.I. 2-3 ¶ 2, 47 (recognizing Cayman proceeding where Grand Court entered winding up order and appointed official liquidators), true and correct copies of which are attached hereto as **Exhibit J and Exhibit K**, respectively.

## II. Recognition Is Not Manifestly Contrary to the Public Policy of the United States

40. The Patrick Entities invoke section 1506 of the Bankruptcy Code to argue that recognition "would be manifestly contrary to the public policy of the United States" because Mr. Dondero is allegedly using the JOLs to pursue "a personal vendetta." Obj. ¶¶ 114–15 (citation

omitted). The same theme underscores their misguided attempt to paint the Cayman Proceeding as a two-party dispute.[12] This argument does not come close to satisfying the governing standard.[13] *See* Accompanying Moran Decl. ¶¶ 46–61.

41. Section 1506 is a narrow exception, available only "where the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections or where recognition would impinge severely a U.S. constitutional or statutory right." *ABC Learning Ctrs. Ltd.*, 728 F.3d at 309 (citation omitted). No court in this Circuit has ever sustained a section 1506 objection to deny chapter 15 recognition. *See, e.g., Manley Toys Ltd.*, 580 B.R. at 648–51 (finding "that recognition of the foreign proceeding is not manifestly contrary to public policy"); *In re Credito Real, S.A.B. de C.V., SOFOM, E.N.R.*, 670 B.R. 150 (Bankr. D. Del. 2025) (concluding that the objector's "public policy exception argument fails"), *aff'd sub nom. In re Credito Real S.A.B. de C.V., SOFOM, E.N.R.*, 677 B.R. 192 (D. Del. 2026).

42. There is nothing contrary to public policy, let alone "manifestly" contrary, about recognizing a chapter 15 case when a non-party (Mr. Dondero) has been called a vexatious litigant by another court. *See* Obj. ¶ 5. The JOLs are court-appointed, independent fiduciaries empowered to stand in the shoes of HoldCo to wind up under the supervision of the Cayman Court. *See* Accompanying Moran Decl. ¶¶ 9, 36, 46; Accompanying MacInnis Decl. ¶¶ 1, 6. The theory that underpins the Patrick Entities' position—that the JOLs are Mr. Dondero's puppets—is offensive and is predicated on the same discredited bases upon which they sought to remove the JOLs from

[12] The Patrick Entities also allege the Cayman Proceeding is a two-party dispute because it is not collective. For the same reasons set forth above explaining that the Cayman Proceeding is collective, it therefore cannot be a two-party dispute.

[13] The Objection contains pages and pages of allegations regarding the Highland Foundations, the DAF Structure, Mr. Dondero and other matters that are irrelevant to recognition of the Cayman Proceeding and too numerous to correct. For the avoidance of doubt, the JOLs reserve the right to refute the allegations made in the Objection in the appropriate forum at the appropriate time.

their role in the Cayman Proceeding. *See* Accompanying Moran Decl. ¶¶ 47–50; Accompanying MacInnis Decl. Ex. 1. The Patrick Entities ultimately withdrew the Removal Summons, acknowledging there were no grounds for them to seek the removal of the JOLs on the basis on any of the actions that they had taken in the Cayman Proceeding through June 23, 2026. *See id.* ¶¶ 50-51; Accompanying MacInnis Decl. Ex. 6 at *1.

43. The Patrick Entities' attempts to liken the Cayman Proceeding to a two-party dispute intentionally mischaracterize the nature of the Cayman Proceeding. Two things are happening. First, the JOLs are observing statutory requirements to wind up and liquidate HoldCo under the Cayman law. S*ee* Accompanying Moran Decl. ¶¶ 9–32. And second, the JOLs, on behalf of HoldCo, have asserted claims and are seeking injunctive relief against the Named Defendants. *See* Accompanying Moran Decl. ¶¶ 62–63. It should be no surprise that the Relevant Transactions, which divested HoldCo of all of its assets, would be subject to scrutiny. The outcome of the Cayman Proceeding will affect all stakeholders, creditors and contributories, in accordance with Cayman Law. *See* Accompanying MacInnis Decl. ¶ 20. If the JOLs are successful in pursuing their claim against the Patrick Entities, they will restore value to HoldCo for the benefit of all of its stakeholders, creditors, the Supporting Organizations, and charities for whose benefit HoldCo was originally established before the Patrick Entities divested it. *Id.*

44. Any concerns about the purported undue influence from Mr. Dondero or anyone else are checked by the independence of the JOLs and the supervision of the Cayman Court. *See, e.g., Millard*, 501 B.R. at 649–52 (recognizing that a Cayman bankruptcy proceeding is a "foreign proceeding" under 11 U.S.C. § 101(23) and that "no showing has been made that Cayman's procedural protections for creditors vary materially from U.S. insolvency law, much less that they are repugnant to U.S. law"); *Manley Toys Ltd.,* 580 B.R. at 637–38, 641–42 648 (recognizing

Cayman official liquidation as foreign main proceeding; noting that recognition proper where "foreign tribunal's procedures and safeguards" are "fair and impartial"); *Ocean Rig UDW Inc.*, 570 B.R. at 701–02 (recognizing Cayman provisional liquidation under Part V as a law relating to insolvency and noting that the Cayman Companies Law provides structural safeguards comparable to U.S. insolvency law).

45. Finally, despite having cited no case applying the two-party-dispute doctrine in a chapter 15 proceeding, the Patrick Entities argue that the doctrine should apply more forcefully in a chapter 15 case. *See* Obj. ¶¶ 111–12. Their argument is wrong. The two-party dispute doctrine is either a creature of the application of the abstention standard under Section 305 of the Bankruptcy Code or a factor for dismissal under section 1112(b) of the Bankruptcy Code. *See Efron v. Candelario (Ire Efron)*, 529 B.R. 396, 406 (B.A.P. 1st Cir. 2015) ("A significant factor in favor of dismissing a case pursuant to § 305(a)(1) is the absence of a true bankruptcy purpose, particularly where the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor." (citations omitted)); *In re Traxcell Techs., LLC*, 657 B.R. 453, 461–62, 466–67 (Bankr. W.D. Tex. 2024) (applying two-party-dispute factor as a consideration under abstention and 1112(b) dismissal).

46. Section 103(a) of the Bankruptcy Code makes clear that section 305 of the Bankruptcy Code does not apply under chapter 15. *See* 11 U.S.C. § 103(a); *see also British Am. Ins. Co. v Fullerton (In re British Am. Ins. Co.)*, 488 B.R. 205, 239–40 (Bankr. S.D. Fla. 2013) ("There is no provision in federal law allowing a federal court to abstain from an entire chapter 15 case. Nor is there any provision in federal law permitting abstention from matters arising under chapter 15 or arising in a chapter 15 case." (footnote omitted)). Additionally, section 1112(b) expressly applies to cases under chapter 11, not chapter 15. *See* 11 U.S.C. § 103(g).

Recognition under Chapter 15 is intended to be governed strictly by section 1517 of the Bankruptcy Code so that, as the legislative history states "[t]he decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code." 109 H.R. Rep. No. 31 at 113 (2005).[14]

## III. **Recognition of the Interim Appellate Order and Entrustment of Assets are Both Necessary and Appropriate**

47. In accordance with principles of comity and pursuant to the Court's authority under section 1521(a)(7) and 1507, the Petitioners request that the Court recognize and enforce the Interim Appellate Order. *See* Verified Pet. ¶¶ 178–84. In seeking to avoid recognition, the Patrick Entities fail to make any showing under section 1521(a)(7) or 1507 as to why recognition should not be granted or why principles of comity do not require recognition.

48. The Patrick Entities argue that the remedies of injunctive relief and entrustment over the Debtor's assets are unavailable in this case. Obj. ¶ 117. They contend, in reliance on the Cayman Court's judgment regarding interim relief pending the Injunction Judgment Appeal, that there is no basis for prejudgment attachment. *Id.* However, the Petitioners are not presently seeking the same broad injunctive relief that was denied by the Cayman Court or recognition of the Injunction Judgment Appeal; they are narrowly requesting recognition of the currently operative Interim Appellate Order, which preserves the status quo pending appeal. *See* Accompanying MacInnis Decl. ¶¶ 50-52. The risk of irreparable harm is ongoing because the Debtor's proprietary interests could be further dissipated pending the outcome of the Cayman litigation. Recognition of

[14] For this reason, the Patrick Entities' argument that the request for recognition is somehow premature also fails. The JOLs seek recognition now for the reasons set forth herein, including to recognize and enforce the Interim Appellate Order and obtain authority to use U.S. discovery tools to continue their investigation into HoldCo's assets and affairs and identify potential claims.

the Interim Appellate Order is therefore necessary to preserve the status quo and to protect the Debtor's assets pending the outcome of the Injunction Judgment Appeal.

49. As set forth in greater detail in the Verified Petition, upon recognition of the Cayman Proceeding, this Court will be given a broad grant to assist the JOLs, so long as such support is consistent with principles of comity. *See* Verified Pet. ¶¶ 168–77; *see also* 11 U.S.C. §§ 1507, 1521(a)(7). Federal courts generally extend comity to foreign proceedings so long as the "foreign court ha[s] proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987)). In the Chapter 15 context, "American courts have long recognized the need to extend comity to foreign bankruptcy proceedings, because the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail." *Id*. (quoting *Victrix*, 825 F.2d at 713–14).

50. Using principles of comity, courts have specifically recognized injunctions issued by foreign courts. *See In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 688, 700 (Bankr. S.D.N.Y. 2010); *Winczura v. Scott (In re Canterbury Sec., Ltd.)*, 675 B.R. 109, 116, 125 (S.D.N.Y. 2025). In this chapter 15 case, principles of comity demand that this Court recognize the Interim Appellate Order granted by the Cayman Court. Each applicable consideration for comity detailed in the Verified Petition is present here: the Cayman Court is a court of competent jurisdiction, the Interim Appellate Order was not obtained by fraud, and recognition would not violate U.S. public policy. *See* Verified Pet. ¶¶ 173–75.

51. Recognition of the Interim Appellate Order also satisfies the fairness considerations of section 1507(b). Recognition would promote fair and equitable treatment of all creditors by preserving HoldCo's estate for all stakeholders and prevents improper transfers or disposition of HoldCo's assets.

52. The Patrick Entities' argument is similarly unavailable for purposes of entrustment of assets pursuant to 11 U.S.C § 1521(a)(5). Section 1521 grants courts "exceedingly broad" discretion to grant "any appropriate relief that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors." *Atlas Shipping A/S*, 404 B.R. at 739 (citation omitted). This includes ordering "the entrustment of a debtor's assets to the foreign representative." *Id.* at 740. Courts have exercised this discretion by ordering entrustment of assets to foreign liquidators. *See In re Frontera Res. Caucasus Corp.*, No. 19-13418 (Bankr. S.D.N.Y. Jan. 21, 2020), D.I. 19, a true and correct copy of which is attached hereto as **Exhibit L**. Here, creditors will not be sufficiently protected unless the Cayman Proceeding is recognized and any assets the JOLs recover will be entrusted to them to administer. Should the Debtor's assets be recovered in full, it is expected that the claims of all creditors and the Participating Shareholders will be satisfied. *See* Accompanying MacInnis Decl. ¶ 20. Accordingly, the Petitioners ask this Court to use its authority under Section 1521 to authorize the JOLs to administer assets in the United States that they may recover.

## IV. The JOLs' Requested Discovery Relief Should be Granted under 11 U.S.C § 1521(a)(4)

### A. The Requested Discovery Relief is Necessary and Appropriate

53. The Patrick Entities go to great lengths to frame the Petitioners' requested discovery relief as unnecessary, arguing that it "encourages . . . multiplicity of proceedings" and is contrary to Cayman law. *See* Obj. ¶ 124. However, the Petitioners' requested discovery is

necessary to aid the JOLs in their investigations, is authorized by the Bankruptcy Code and Bankruptcy Rules, and should therefore be granted.

54. Section 1521(a)(4) permits post-recognition discovery concerning a debtor's assets, affairs, rights, obligations, or liabilities when necessary to effectuate the purposes of chapter 15 by protecting a debtor's assets or protecting creditors' interests. *See* 11 U.S.C. § 1521(a)(4). The necessity standard may be satisfied when discovery concerns the debtor's assets, affairs, rights, obligations, or liabilities, including when discovery is needed for a foreign representative to investigate potential causes of action held by the foreign debtor against third parties. *See In re B.C.I. Fins. Pty Ltd. (in Liquidation)*, 668 B.R. 51, 55–56 (Bankr. S.D.N.Y. 2025). In *B.C.I. Finances*, the court specifically found that discovery into potential causes of action is discovery that "concerns the assets" of the debtor. *Id.* at 56. Indeed, in *In re Prince Glob. Holdings Ltd.*, the court recently found that discovery is appropriate where the foreign representatives assert that such relief is necessary to obtain records, communications, contracts, account information, and transactional documents located in the United States or held by U.S. counterparties. *See* 679 B.R. 146, 155, 169 (Bankr. S.D.N.Y. 2026).

55. Additionally, courts have granted discovery relief under section 1521 even where such relief exceeds a liquidator's foreign law authority. *See id.* at 166–67. Importantly, "foreign law does not preclude the availability of additional relief under Chapter 15, particularly when granting such relief does not run contrary to the public policy of the foreign jurisdiction." *Id.* at 167 (citation omitted). For example, the court in *In re Platinum Partners Value Arbitrage Fund, L.P.* squarely rejected the argument that discovery should be limited to what is obtainable under Cayman law, holding that "section 1521 specifically provides this Court with the authority to order the discovery sought" and that decisions from foreign courts generally do not bind American

courts. *See* 583 B.R. 803, 817–18 (Bankr. S.D.N.Y. 2018) ("*Singularis*, which was an appeal from the Court of Appeal of Bermuda, is only authoritative and not technically binding on Cayman courts or on this Court." (footnote omitted)).

56. Moreover, the substantive legal framework here is entirely distinguishable from that in *Singularis*. Unlike the U.S., which based chapter 15 of the Bankruptcy Code on the Model Law, Bermuda has not adopted the Model Law. Thus, the Privy Council's recognition was determined solely pursuant to the principles of comity and under the common law. Rather than establishing a binding ruling under the Model Law, *Singularis* merely outlines the limits of the court's common law power to assist a foreign court in overseas insolvency proceedings by ordering the production of information which was necessary for the administration of a winding-up. Although the Privy Council concluded that it was not "a proper use of the power of assistance to make good a limitation on the powers of" the Cayman Islands jurisdiction, it also noted that "[w]here a domestic court has a power to grant ancillary relief in support of the proceedings of a foreign court, it is not necessarily an objection to its exercise that the foreign court had no power to make a corresponding order itself." *Singularis Holdings Limited v. PricewaterhouseCoopers*, [2014] UKPC 36 ¶ 29 (Bermuda Ct. App. 2014). Specifically, the *Singularis* court noted that it would be appropriate for a court that had "**an unqualified statutory power to give ancillary relief**" in the form of a world-wide asset-freezing injunction issue that relief notwithstanding that the foreign court could not issue a similar order. *See id.* (citing *Credit Suisse Fides Trust SA v Cuoghi*, [1998] QB 818) (emphasis added). Here, because the Bankruptcy Code and Bankruptcy Rules plainly afford the Court statutory authority to order discovery in a chapter 15 case, such ancillary relief is entirely appropriate even if such relief might not otherwise be available from the Cayman Court.

57. Indeed, "[a] foreign nation may limit discovery in its own jurisdiction 'for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts.'" *Prince Glob. Holdings Ltd.*, 679 B.R. at 167 (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 261 (2004)) (noting that the objectors "have not provided any indication that the requested relief would be contrary to the public policy of the [foreign jurisdiction]"). In *Prince Glob. Holdings*, Judge Glenn granted discovery relief pursuant to section 1521(a)(4) where the objectors failed to provide any indication that the requested relief would be contrary to public policy in the foreign jurisdiction. *See id.* at 166–67. Courts have further noted that Cayman courts are receptive to U.S. discovery "[b]ecause Cayman law neither prohibits nor is hostile to the discovery sought here under U.S. law, principles of comity decisively weigh in favor of granting the Motion." *Platinum Partners*, 583 B.R. at 817.

58. Here, the Petitioners' requested discovery relief is appropriate and should be granted. First, as noted in the Verified Petition, the Petitioners seek discovery to (i) locate the Fund and uncover related frauds and potential assets of the Debtor and (ii) determine causes of action against and defenses to third parties. *See* Verified Pet. ¶ 162. Given that many of the potential discovery targets are located in the United States, it is essential that section 1521(a)(4) relief be granted to facilitate the JOLs' investigations, which is consistent with their statutory obligations under Cayman law and bring recovery to estate beneficiaries. *See* Accompanying Moran Decl. ¶¶ 31–35.

59. Critically, numerous U.S.-based service providers and counterparties have refused to cooperate voluntarily with the JOLs' requests for information and documentation. *See* Accompanying MacInnis Decl. ¶ 34. As set forth in the Accompanying MacInnis Declaration, "certain information has required repeated follow-up and, in some cases, formal processes before

production has been forthcoming." *Id.* On August 27, 2025, the JOLs were compelled to file a motion for provisional relief in the chapter 15 Proceedings seeking the compulsory turnover of books and records "following the failure of certain parties to comply voluntarily with the JOLs' requests for information and documentation." *See id.* ¶ 28. This demonstrates exactly why section 1521(a)(4) relief is necessary.

60. Indeed, chapter 15 exists precisely to enable foreign representatives to access discovery from U.S. persons that are beyond the jurisdictional reach of the foreign court. *See In re Banco Master, S.A.*, 678 B.R. 690, 696–97 (Bankr. S.D. Fla. 2026) (explaining that the model law upon which chapter 15 was based was "designed to confront the increasing problem of fraud by insolvent debtors, in particular by concealing assets or transferring them to foreign jurisdictions" (footnote omitted)); *see also In re Three Arrows Cap., Ltd.*, 647 B.R. 440, 452–53 (Bankr. S.D.N.Y. 2022) (authorizing discovery where "much of the relevant discovery sought is uniquely obtainable" from third parties "via the Debtor's connections with the United States").

61. Second, despite the Patrick Entities' assertions to the contrary, affording the Petitioners discovery relief will not "encourage" a multiplicity of proceedings. As admitted in the Objection, the purpose of chapter 15 is to facilitate cooperation between United States and foreign courts. *See* Obj. ¶ 121. Permitting the requested discovery, which will aid the JOLs in their investigatory efforts, does exactly that. Discovery will directly aid the JOLs in their litigation in the Cayman Proceeding and will not necessarily lead to additional litigation, nor will it promote multiplicity of international proceedings.[15]

[15] The Patrick Entities cite numerous cases to persuade this Court that all discovery related relief should be deferred to the Cayman Proceeding. However, those cases are easily distinguishable. First, *In re Golden Sphinx Ltd.* involved a creditor—not a foreign representative—seeking broad Rule 2004 relief that was irrelevant to any proceeding in the foreign court. *See* No. 22-14320, 2023 WL 2823391, at *3 (Bankr. C.D. Cal. Mar. 31, 2023). Notably, that court expressly held that "Rule 2004 does apply in Chapter 15 cases," directly supporting the Petitioners' position here. *See id.* at *2. Second, *In re Daewoo Log*istics Corp. did not involve discovery relief at all and was simply regarding whether a stay imposed by a recognition order survived closure of a foreign proceeding. *See* 461 B.R. 175, 178

62. Third, the requested discovery is not contrary to public policy in the Cayman Islands. *See* Accompanying Moran Decl. ¶ 36. The Patrick Entities assert that discovery relief should be denied because "the proposed recognition order goes substantially beyond discovery that is permitted in the Cayman Islands in both scope and timing." Obj. ¶ 125. However, the Patrick Entities make no argument that the requested discovery is contrary to public policy, which is the appropriate standard in determining whether to grant section 1521(a)(4) relief. As the court in *Platinum Partners* explained, comity does not require that the relief available in the United States be identical to the relief available in the foreign proceeding; "it is sufficient if the result is comparable and that the foreign laws are not repugnant to our laws and policies." 583 B.R. at 815 (footnote omitted). "[R]equiring this Court to ensure compliance with foreign law prior to granting relief" would require "a full-blown analysis of foreign law each and every time a foreign representative seeks additional relief in the United States," which is "contrary to the intent of the Model Law on which Chapter 15 is based." *Id.* at 817 (footnotes omitted). Additionally, it is imperative that discovery be propounded immediately so that there is no delay in prosecuting causes of action to provide recovery for HoldCo's creditors and stakeholders.

### B. **<u>The Discovery Relief Sought Sufficiently Protects the Patrick Entities' Interests</u>**

63. Despite the Patrick Entities' assertions to the contrary, their interests are sufficiently protected with respect to the requested discovery relief. "The idea underlying § 1522 is that there should be a balance between relief that may be granted to the foreign representative

(Bankr. S.D.N.Y. 2011). Third, *In re Board of Directors of Hopewell Int'l Ins. Ltd.* was a case that arose under the repealed section 304 (i.e., not chapter 15). 258 B.R. 580, 581 (Bankr. S.D.N.Y. 2001). Additionally, as noted in *Platinum Partners*, *Hopewell* involved discovery in connection with a pending Bermuda arbitration, "which is supposed to take place with a minimum of court supervision and interference." *See* 583 B.R. at 818 (footnote omitted). There is no pending arbitration here, and *Platinum Partners* expressly distinguished *Hopewell* because there was "no pending arbitration or proceeding in th[at] case." *Id.*

and the interests of the persons that may be affected by such relief." *Prince Glob. Holdings Ltd.*, 679 B.R. at 166 (citation omitted). Indeed, in another decision in the *In re Prince Glob. Holdings Ltd.* case, the court found that, where proceedings were "initiated by the [foreign government] in the public interest, [and] seeks to distribute proceeds to victims and claimants, in a manner broadly consistent with U.S. law," section 1522's "sufficient protection" standard was satisfied. *See* No. 26-10769 (MG), 2026 WL 1694259, at *19 (Bankr. S.D.N.Y. June 11, 2026).

64. Here, while the Petitioners have shown that discovery is needed to satisfy their fiduciary duties under Cayman law, the Patrick Entities have failed to present any real concern if this Court grants the JOLs' section 1521(a)(4) relief. As is typical for this case, the Patrick Entities suggest that Mr. Dondero and the JOLs are one and the same and that any information sharing pursuant to the Funding Agreement with Crossvine would promote litigation.

65. However, this argument ignores several key facts. First, the Funding Agreement was reviewed and sanctioned by the Cayman Court, which would not have approved an agreement that gave the funder control over the JOLs' conduct. *See* Accompanying Moran Decl. ¶¶ 48, 52–61. Second, the JOLs are officers of the Cayman Court with their own statutory responsibilities; they cannot be conflated with Mr. Dondero or any other party. *See id.*

66. The JOLs' independence is further confirmed by the fact that the Removal Summons—seeking the removal of the JOLs and appointment of replacement liquidators—was dismissed by consent order on June 23, 2026, with DFW accepting that "there is no cause for the removal of the JOLs." *Id.* ¶¶ 45-51; Accompanying MacInnis Decl. Ex. 6. The JOLs are not seeking to promote Mr. Dondero or any other entities' litigations against Mr. Patrick or Mr. Murphy. Rather, discovery is being sought so the JOLs, as independent third-party fiduciaries, can accomplish their mission of increasing recovery for HoldCo's stakeholders. Third, to the extent

that there are any issues regarding potential information sharing with Mr. Dondero, the JOLs are happy to enter into protective orders to alleviate such concerns.

67. Additionally, the Patrick Entities' argument that the requested discovery duplicates efforts under way in the Cayman Islands and Texas Business Court is without merit. First, the JOLs are not parties to the proceeding in the Texas Business Court, which is currently being held in abeyance. The discovery relief sought in the Verified Petition will provide the Petitioners with the discovery tools that would permit the JOLs to compel production from third parties in the United States who would otherwise be beyond the jurisdictional reach of the Cayman Court. As the JOLs have explained, "the books and records provided to date remain incomplete in a number of respects," and "the JOLs anticipate that further recovery of books and records from certain third parties may require additional formal processes, including in the United States." Accompanying MacInnis Decl. ¶ 34.

68. Furthermore, the Patrick Entities' argument that the requested discovery would expose them to multiple discovery processes does not outweigh the benefits to the JOLs and HoldCo's estate in increasing recovery to creditors and stakeholders. The Grand Court has found that "there was a serious issue to be tried as to whether Mr. Patrick and/or Mr. Murphy breached their fiduciary duties with respect to HoldCo's restructuring" and the value of the Fund and its underlying subsidiaries is approximately US $292 million. *Id.* ¶ 46. Indeed, courts have routinely granted chapter 15 discovery relief even where parallel proceedings exist in the foreign jurisdiction. *See, e.g., Platinum Partners*, 583 B.R. at 818–19 (rejecting argument that foreign representative should first seek discovery in the Caymans).

## V. <u>The Petitioners Should Be Afforded Relief Under Bankruptcy Rule 2004</u>

69. A party seeking to conduct a Rule 2004 examination has the burden of showing good cause for the examination. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627

(Bankr. D. Del. 2016). "Generally, good cause is shown if the Rule 2004 examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *Id.* at 627 (footnote omitted). Relief under Bankruptcy Rule 2004 should be granted because it is necessary to (a) examine potential causes of action against third parties and (b) determine the nature and extent of the bankruptcy estate. *See id.* The JOLs do not seek Rule 2004 relief as to the Patrick Entities involved in the Cayman Litigation. Rather, the JOLs are seeking the ability to issue Rule 2004 requests to parties who are not currently subject to litigation, such as various service providers. As reflected throughout the Verified Petition and Objection, the background of this case is complex. Given that cooperation from potential discovery targets has not been forthcoming, it is necessary that the JOLs be afforded broad discovery rights and failure to grant such relief would cause the JOLs undue harm in advancing their investigatory duties. *See* Accompanying MacInnis Decl. ¶ 35.

70. Moreover, Bankruptcy Rule 2004 applies in chapter 15 proceedings and permits examination regarding the debtor's acts, conduct, property, liabilities, and financial condition, as well as any matter affecting the administration of the debtor's estate. *See* Fed. R. Bankr. P. 2004(a)–(b)(1); *Platinum Partners*, 583 B.R. at 810; *In re Petroforte Brasileiro de Petróleo Ltda.*, 542 B.R. 899, 911 (Bankr. S.D. Fla. 2015). Indeed, courts have found that "[o]ne of the main purposes of chapter 15 is to assist a foreign representative in the administration of the foreign estate, and Rule 2004 proceedings are one of the mechanisms by which bankruptcy courts provide such assistance." *Krys v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP (In re China Med. Techs., Inc.)*, 539 B.R. 643, 649 (S.D.N.Y. 2015) (citations omitted).

71. The interplay between section 1521(a)(4) and Rule 2004 supports the Petitioners' request. Section 1521(a)(4) provides the substantive authority for a foreign representative's

discovery rights, while Rule 2004 supplies the investigatory procedure. *See In re Glitnir banki hf*, No. 08-14757, 2011 WL 3652764, at *6 (Bankr. S.D.N.Y. Aug. 19, 2011) ("Section 1521(a)(4) expressly governs the Foreign Representative's discovery rights. Bankruptcy Rule 2004 complements those rights . . . ." (footnote omitted)). "Bankruptcy Rule 2004 may also be available pursuant to sections 1507, 1521(a)(4) or 1521(a)(7)." *Platinum Partners*, 583 B.R. at 810–11. Regardless of the source, the scope of Rule 2004 discovery is "unfettered and broad," designed "to enable the trustee to discover the nature and extent of the bankruptcy estate." *In re Wash. Mut., Inc.*, 408 B.R. 45, 49–50 (Bankr. D. Del. 2009). Indeed, courts in this district have recognized that the "[l]egitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." *Id.* at 50 (citation omitted). The JOLs seek discovery to investigate potential causes of action and to locate assets for HoldCo's stakeholders, which are included within the legitimate goals of Rule 2004 examinations.

72. The Patrick Entities' argument that granting Rule 2004 relief would constitute an abuse of judicial process is meritless. *See* Obj. ¶ 135. Numerous bankruptcy courts have found that Rule 2004 applies in chapter 15 cases. *See Golden Sphinx Ltd.*, 2023 WL 2823391, at *2 ("[T]his Court is persuaded that Rule 2004 does apply in Chapter 15 cases."); *In re Transbrasil S.A. Linhas Aéreas*, No. 19-23700, 2020 WL 10458631, at *5 (Bankr. S.D. Fla. Mar. 16, 2020); *Platinum Partners,* 583 B.R. at 810 (recognizing that "discovery under section 1521(a)(4) includes the examination of witnesses pursuant to Rule 2004 and the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities" (citation omitted)). In *Comair*, the court expressly addressed the interplay between Rule 2004 and section 1521(a)(4), concluding "that Rule 2004 applies in Chapter 15 cases." *In re Comair Ltd.*, No. 21-10298 (JLG), 2021 WL 5312988, at *9 n.19 (Bankr. S.D.N.Y. Nov. 14, 2021) (citations omitted).

73. Finally, the Patrick Entities' argument that the JOLs have ample opportunity for discovery in other proceedings does not justify denying Rule 2004 relief. *See* Obj. ¶ 134. Chapter 15 was designed to complement, not replace, foreign discovery, and courts have rejected arguments that foreign representatives should first seek discovery abroad. *See Platinum Partners*, 583 B.R. at 817–18. Given that voluntary cooperation has been insufficient and "the books and records provided to date remain incomplete," Rule 2004 relief is necessary to fill gaps that cannot be addressed through other proceedings. *See* Accompanying MacInnis Decl. ¶ 31.[16]

## **CONCLUSION**

**WHEREFORE**, the Petitioners respectfully request that the Court (i) enter the Amended Recognition Order, (ii) overrule the Objection, and (iii) grant the Petitioners such other relief as is appropriate.

[*The remainder of this page was intentionally left blank.*]

[16] A true and accurate copy of the Accompanying MacInnis Declaration is attached hereto as **Exhibit M**. A true and accurate copy of the Accompanying Moran Declaration is attached hereto as **Exhibit N**.

Dated: August 17, 2026
Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Jason D. Angelo*

Jason D. Angelo (No. 6009)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: +1.302.778.7500
Facsimile: +1.302.778.7575
E-mail: jangelo@reedsmith.com

-and-

Casey Laffey, Esq. (admitted *pro hac vice*)
Aaron Javian, Esq. (admitted *pro hac vice*)
Ian M. Turetsky, Esq. (admitted *pro hac vice*)
Richard C. Solow, Esq. (admitted *pro hac vice*)
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: +1.212.521.5400
Facsimile: +1.212.521.5450
E-mail: claffey@reedsmith.com
ajavian@reedsmith.com
ituretsky@reedsmith.com
rsolow@reedsmith.com

*Counsel to Margot MacInnis and Sandipan Bhowmik, as Joint Official Liquidators of Chapter 15 Debtor*