**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARITABLE DAF HOLDCO, LTD. (In Official Liquidation),[1]<br><br>Debtor in a foreign proceeding. | Chapter 15<br>Case No. 25-11376 (BLS) |

**SUPPLEMENTAL DECLARATION OF CAROLINE MORAN IN SUPPORT OF THE REPLY TO THE OBJECTION TO THE VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF**

I, Caroline Moran, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this supplemental declaration (this "Supplemental Declaration"). The facts and matters contained in this Supplemental Declaration are true and correct to the best of my information, knowledge and belief.

2. I submit this Supplemental Declaration in support of the Petitioners' *Reply in Support of the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 50] (the "Reply") and to further supplement my declaration filed in support of the Reply [D.I. 52] (the "Accompanying Moran Declaration").[2]

---

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

[2] Capitalized terms that are used but not defined in this Supplemental Declaration shall have the meanings given to them in the Reply, Accompanying Moran Declaration, or Goodman Declaration (defined below), as the case may be.

3. In preparing this Supplemental Declaration, I reviewed the *CDM Parties' Objection to the Verified Petition for (i) Recognition of Foreign Main Proceeding, (ii) Recognition of Foreign Representative, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 46] and the *Declaration of Mark Goodman in Support of CDM Parties' Objection to the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 56] (the "Goodman Declaration"). I have reviewed the Goodman Declaration and would like to supplement the Accompanying Moran Declaration accordingly.

4. This Supplemental Declaration comprises matters that are statements of my view of Cayman law or statements of fact. Where the matters stated in this Supplemental Declaration are statements regarding Cayman law, such statements represent my view of Cayman law as an attorney admitted and authorized to practice in the Cayman Islands. Where the matters stated in this Supplemental Declaration are statements of fact that are within my personal knowledge, I believe them to be true. Where the matters stated in this Supplemental Declaration are statements of fact that are not within my personal knowledge, they are derived, as appropriate, from documents maintained by the Cayman Islands Registrar of Companies, from the records maintained by Maples as a result of advising the JOLs in connection with the Cayman Proceeding, and/or from information supplied to me by or on behalf of the JOLs and are true to the best of my knowledge, information, and belief. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## I. The Interim Appellate Order

5. I disagree with Mr. Goodman's assertion that the JOLs mischaracterize the Interim Appellate Order. The JOLs noted in the Reply that the Interim Appellate Order preserves the *status quo* pending appeal, which Mr. Goodman admits. *See* Reply, at ¶ 48; Goodman Decl. ¶ 10.

However, Mr. Goodman asserts that the Interim Appellate Order was only entered due to a "scheduling conflict" given that the Cayman Islands Court of Appeal (the "Court of Appeal") couldn't hear the Injunction Judgment Appeal on an expedited basis.

6. The Interim Appellate Order was not simply entered due to a scheduling conflict. Rather, at a hearing on March 27, 2026, the Court of Appeal determined that there was cause to enter injunctive relief, which would not have existed but for the entry of the Interim Appellate Order. As noted in the Accompanying Moran Declaration, the Court of Appeal concluded that HoldCo has a "seriously arguable appeal" because, "in the light of *Aquapoint LP (in Off. Liquidation) v. Fan* [2025] UKPC 56, [48], it is arguable that [HoldCo] was entitled to injunctive relief to preserve the value of its partnership interest in the Fund even if it has no direct legal or beneficial interest in its underlying assets." ¶ 75. In making this finding, the Court of Appeal reached a different conclusion from that of the Cayman Court at first instance as to the strength of the merits of the substantive claim.

7. Specifically, in entering the Interim Appellate Order, the Court of Appeal saw fit to enter injunctive relief pending the disposition of the Injunction Judgment Appeal when the Cayman Court did not. Among other things, the Interim Appellate Order prevents the Named Defendants and related entities specified in the Interim Appellate Order (the "Fund Entities") from doing the following until the Injunction Judgment Appeal is determined:

a. Transferring or otherwise disposing of the assets or shares of the Fund Entities outside the ordinary course of business.

b. Increasing the remuneration paid to any employee, manager, or director of the Fund Entities.

c. Dissolving or otherwise altering the Fund Entities' corporate standing.

d. Modifying the corporate governance of the Fund Entities.

e. Selling any of the Fund Entities' assets unless (1) the sale is to a *bona fide* purchaser for reasonably equivalent value; (2) the *bona fide* purchaser is made aware of the Interim Appellate Order (except in the case of marketable securities); and (3) the sale proceeds remain owned by the Fund Entities.

f. Altering, concealing, or destroying any business records concerning the Named Defendants or Fund Entities.

8. The Interim Appellate Order also requires the Named Defendants and Fund Entities to preserve and not dispose of or diminish any interest in the Fund, the Fund Entities, and/or any asset of the Fund other than in the ordinary course of business. The Interim Appellate Order is binding on the Named Defendants and enforceable in accordance with its terms.

## II. The Removal and Solvency Summons

9. I disagree with Mr. Goodman's characterization of the Consent Order. Mr. Goodman suggests that DFW's withdrawal of the Removal Summons and Solvency Summons was "a matter of commercial pragmatism and should not be characterized as a concession by DFW on the merits of the applications." *See* Goodman Decl., at ¶ 14. Mr. Goodman then attempts to justify DFW's reasoning for entering into the Consent Order, concluding that withdrawal "was a strategic choice made by DFW without any merits findings, costs were only applied as a function of Cayman law, and the JOLs have significantly overstated the impact of the withdrawal." *See* Goodman Decl., at ¶¶ 14–17.

10. Mr. Goodman fails to note that the Cayman Court declined to adjourn the Removal Summons to a date after the appeal was determined because it disagreed with DFW's position that the outcome of the appeal should have any bearing on whether the JOLs should be removed. The Cayman Court was "sceptical that the outcome of the appeal . . . [would] have any relevance" to

whether the JOLs should be removed.[3] Among other things, the Cayman Court considered this was because any criticism of the JOLs' decision to pursue the Cayman Litigation would likely be completely answered so long as the Cayman Litigation was pursued on a *bona fide* basis and was supported by advice from counsel. Without waiver of privilege, I note that the JOLs have pursued the Cayman litigation on a *bona fide* basis and done so on advice from counsel. Accordingly, as a condition to dismissing the summons, the JOLs and DFW agreed that the Consent Order would include the following recital: "*And upon [DFW] accepting that at the date of this Order there is no cause for removal of the [JOLs].*" (emphasis added). *See* Consent Order, attached as Exhibit 3 to Accompanying MacInnis Decl.

11. Whatever internal reasoning DFW had in agreeing to the Consent Order is irrelevant in light of the plain text of the order.

**III. Discovery Powers Under Cayman Law**

12. I disagree with Mr. Goodman's characterization of the JOLs' discovery powers under Cayman Law. Mr. Goodman suggests that the JOLs are limited in the discovery that they can seek from the Patrick Entities because the Injunction Judgment held that HoldCo has no proprietary interest in the DAF's assets. However, Mr. Goodman fails to note that Section 5(a) of the Supervision Order provides that the JOLs have the power, without further sanction by the Cayman Court, "to commence legal proceedings in the name and on behalf of [HoldCo] to obtain the provision of information and/or documents and/or the examination of individuals in the Cayman Islands or the United States." *See* Supervision Order, at 5(a), First MacInnis Decl., at Ex. 1. Additionally, the Supervision Order affords the JOLs, without further court sanction, "the power to seek registration or recognition of themselves and/or the [the Cayman Proceeding] in any

[3] Ex. A at ¶ 9(a), Email from Cayman Court dated 12 June 2026.

State in the United States for any purpose connected with the exercise of the powers" specified in section 5(a). *Id.* at 6(c). The Supervision Order expressly provides the JOLs the authority to obtain discovery from third parties, without tying such discovery rights to documents otherwise belonging to HoldCo or to which it is otherwise contractually entitled and authorizes the JOLs to seek relief in the United States in furtherance of those powers. The express authority granted by the Cayman Court in the Supervision Order to use discovery tools available under Chapter 15 goes beyond mere permission to obtain recognition. *Compare, e.g.,* Winding Up Order, *In re Farfetch Ltd. (in Official Liquidation)*, No. 24-11519 (CTG) (Bankr. D. Del. July 10, 2024), D.I. 1, which is attached hereto as **Exhibit B** (generally authorizing the joint official liquidators to obtain recognition of their appointment in the United States and to make applications for that purpose, but not specifically authorizing proceedings to obtain information or documents or to examine individuals in the United States), *with* D.I. 4-2 (Supervision Order) (specifically authorizing the JOLs to seek recognition of themselves or the Cayman Proceeding in the United States and to commence proceedings to obtain information or documents or to examine individuals in the Cayman Islands or the United States).

13. In addition, Mr. Goodman mischaracterizes the ratio of the decision in *Singularis*. *Singularis* is not authority for the blanket proposition that "*liquidators are not entitled to obtain in a foreign court greater relief than they would be entitled to under their own domestic*" as Mr. Goodman suggests. *Singularis* is a decision about the scope of the common law power to grant assistance to foreign liquidators. In that case, Bermuda had not adopted the Model Law. Accordingly, the Cayman Liquidators were relying on the common law powers to assist foreign liquidators. The Privy Council determined that, at common law, Cayman liquidators could not obtain discovery in Bermuda that exceeded the discovery available to them in the Cayman Islands.

The Privy Council, however, expressly noted that the analysis would be different in a jurisdiction that has adopted the Model Law where there was a statutory regime governing the scope of assistance that could be granted to foreign liquidators. In other words, assistance at common law is limited by what is permitted in the home jurisdiction, but this does not preclude any wider statutory assistance that may be available.

## IV. Discovery Relief is Not Premature

14. I am aware that Mr. Goodman asserts that discovery is premature in this Chapter 15 Case because: (1) discovery hasn't commenced in the Cayman Proceeding; and (2) the ATE insurance in the Funding Agreement is insufficient, causing potential procedural unfairness. The timing for discovery in the Cayman Proceeding has no relevance to when liquidators can seek discovery from foreign courts, and, in particular, is of no import here where the Cayman Court has already authorized the JOLs to seek discovery in the Supervision Order. As far as I am aware, no court in the Cayman Islands has ever found that discovery in a foreign jurisdiction must wait until discovery in the underlying Cayman action is actively pending. And, as a matter of general practice, litigants in proceedings pending in the Cayman Islands often seek discovery in the United States pursuant to 28 U.S. Code § 1782 at a very early stage well before discovery has commenced in the Cayman proceeding.

15. Similarly, the Cayman Court has never considered U.S. costs rules as being a basis to prevent Cayman Islands litigants from accessing U.S. discovery tools. The Patrick Entities have not tried to run this argument in the Cayman Proceeding, which would have been the appropriate forum to have raised such concern.

## V. The Cayman Opinion

16. I disagree with Mr. Goodman that the JOLs mischaracterized the Injunction Judgment. I described the Injunction Judgment in detail in the Accompanying Moran Declaration.

*See* Accompanying Moran Dec., at ¶¶ 66–71. Flagging that the Cayman Court held "there is a serious issue to be tried as to whether the Directors acted in breach of duty in undertaking the restructuring"—a central question in the Cayman Litigation—is not mischaracterizing the Injunction Judgment. *Id*., at ¶ 66.

17. Nor is it a mischaracterization to point out that the Cayman Opinion was interlocutory. The fact is: (1) the Injunction Application is an interlocutory application; and (2) the Injunction Judgment was not a merits decision with respect to the Cayman Litigation. Mr. Goodman's contrary assertions misrepresent the effect of the Injunction Judgment.

**VI. *Global Cord* is Distinguishable**

18. I disagree with Mr. Goodman that *Global Cord* is not distinguishable from this case. Despite Mr. Goodman's assertions, the JOLs are conducting a traditional liquidation by seeking recovery of the Debtor's property for distribution to creditors and stakeholders. As admitted by Mr. Goodman, two proofs of debt have been filed in the Cayman Proceeding. In *Global Cord*, there was not even an effort to identify or classify creditors to determine how and whether to satisfy their claims. *See* Reply, at ¶ 17.

19. Importantly, despite Mr. Goodman's contrary assertion, the distinction between an "official liquidation" as opposed to a "provisional liquidation" is important. A provisional liquidation is an interim proceeding where provisional liquidators have limited powers because the Court has not yet made an order winding up the company. For instance, in *Global Cord Blood*, the JPLs' powers were limited by the supervision order solely to prevent potential mismanagement or misconduct by Global Cord's directors and the potential dissipation and/or misuse of Global Cord's assets. The JPLs in *Global Cord* were appointed to maintain the status quo and preserve the assets pending the hearing of the winding up petition. They had no powers to realise assets and wind up the company. This is in contrast to the broad powers the JOLs are afforded under

section 110 of the Companies Act after a winding up order is made. These powers include the power to collect, realise, and distribute the assets of the company to its creditors and stakeholders. Simply put, the Cayman Proceeding's central tenet is an official liquidation where the purpose is to realise and recover assets in order to increase recoveries to creditors and stakeholders, *Global Cord* involved only a provisional measure pending determination of whether the company should be put into liquidation.

## VII. CONCLUSION

20. Based on the foregoing, I respectfully submit this Supplemental Declaration in support of the Reply filed contemporaneously herewith.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

Dated: August 26, 2026

*<u>/s/ Caroline Moran</u>*
Caroline Moran