# EXHIBIT 2

HIGHGATE CONSULTING GROUP, INC. D/B/A SKYVIEW GROUP SUBPOENA

(Attached)

# UNITED STATES BANKRUPTCY COURT

District of Delaware

In re Charitable DAF HoldCo, Ltd. (In Official Liquidation),
Debtor in a foreign proceeding

Case No. 25-11376 (BLS)

*(Complete if issued in an adversary proceeding)*

Chapter 15

Plaintiff
v.

Adv. Proc. No.

Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Highgate Consulting Group, Inc. d/b/a Skyview Group
c/o Vcorp Services, LLC, Registered Agent, 1999 Bryan Street, Suite 900, Dallas, Texas 75201
*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
The documents, electronically stored information, and objects described in Exhibit A attached hereto. Production may be made electronically to Jason D. Angelo, Reed Smith LLP, jangelo@reedsmith.com, in lieu of appearance, on or before the date and time set forth below.

| PLACE | DATE AND TIME |
|---|---|
| Reed Smith LLP, 2850 N. Harwood Street, Suite 1500, Dallas, Texas 75201 (or electronically to jangelo@reedsmith.com) | November 9, 2026 at 10:00 a.m. (CT) |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: October 7, 2026

CLERK OF COURT

OR

_________________________
*Signature of Clerk or Deputy Clerk*

Jason D. Angelo
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Margot MacInnis and Sandipan Bhowmik, as Joint Official Liquidators and Foreign Representatives of Charitable DAF HoldCo, Ltd. (In Official Liquidation), who issues or requests this subpoena, are:
Jason D. Angelo (Del. No. 6009), Reed Smith LLP, 1201 North Market Street, Suite 1500, Wilmington, DE 19801
jangelo@reedsmith.com; Telephone: (302) 778-7500

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ________________________________________________
on *(date)* ___________.

☐ I served the subpoena by delivering a copy to the named person as follows: ______________________________________
_____________________________________________________________________________________________________
____________________________________on (*date*) ____________________; or

☐ I returned the subpoena unexecuted because: __________________________________________________________________
_____________________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _________________________.

My fees are $ __________for travel and $__________for services, for a total of $__________ .

I declare under penalty of perjury that this information is true and correct.

Date: ________________

_____________________________________________
*Server's signature*

_____________________________________________
*Printed name and title*

_____________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
**(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)**

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A

This Exhibit A sets forth the Documents and Communications to be produced pursuant to the subpoena duces tecum issued to Highgate Consulting Group, Inc. d/b/a Skyview Group under Federal Rule of Civil Procedure 45 (as incorporated by Federal Rule of Bankruptcy Procedure 9016), Federal Rule of Bankruptcy Procedure 2004, and Paragraph 9 of the Order Granting Recognition of Foreign Main Proceeding and Discretionary Relief entered on September 1, 2026 (D.I. 74) (the "Recognition Order") in the above-captioned Chapter 15 case.

## I. DEFINITIONS

1. "CDM" — CDMCFAD, LLC, a Delaware limited liability company incorporated on December 12, 2024.

2. "Communication" — the transmittal of information, in the form of facts, ideas, inquiries, or otherwise, and any response thereto, and therefore includes, but is not limited to, any telephone conversation, face-to-face meeting or conversation, visit, conference, internal or external discussion, emails, texts, electronic data rooms, file sharing, or other similar forms of electronic communication, or exchange of a document or documents.

3. "Concerning" — relating to, referring to, describing, evidencing, or constituting.

4. "Debtor" — Charitable DAF HoldCo, Ltd. (in Official Liquidation).

5. "DFW" — DFW Charitable Foundation, a Delaware nonprofit non-stock corporation incorporated on December 9, 2024.

6. "Directors" — collectively, Mark Eric Patrick and Paul Murphy, in their capacity as former directors of the Debtor.

7. "Document" — shall have the same full meaning as in Federal Rule of Bankruptcy Procedure 7034 and Federal Rule of Civil Procedure 34 and includes the

original, any draft (whether disseminated or not) and any copy, regardless of origin or location, of any correspondence, letter, memorandum, electronic mail (e-mail), text message, messages from messaging platforms (including WhatsApp, Teams, Skype, GoogleChat), statement, summary, outline, contract, agreement, book, pamphlet, periodical, telegram, telecopy, telefax, wire, cable, record, study, report, schedule, diary, desk calendar, organizer, appointment book, photograph, reproduction, map, survey, drawing, chart, model, index, tape, data sheet or data processing card, computerized information, data base or disk (including, without limitation, hard, soft, floppy, or compact), invoice, purchase order, ledger, journal, check (front and back), check stub, note, bond, assignment, transfer, account statement, tax report, tax schedule, financial statement, workpaper, business form, timesheet, log, inventory, print-out, computer tape, and notes of meetings, conferences, conversations or telephone conversations, and any and all other written, printed, telecopied, telefaxed, transcribed, punched, taped, stored, filmed and graphic matter, however produced or reproduced, and specifically includes any preliminary note, outline, or draft of any of the foregoing in Your custody, possession, or control.

8. “Dondero” — James Dondero, individually and in any capacity.

9. “Fund” — Charitable DAF Fund, LP, a Cayman Islands exempted limited partnership.

10. “Fund Entities” — collectively, the Debtor, the Fund, CDM, CDH GP, Ltd. (the “New GP”), CLO HoldCo, Ltd., DFW, Charitable DAF Holdings Corp., Liberty

CLO Holdco, Ltd., Liberty Sub, Ltd., HCT Holdco 2, Ltd., MGM Studios Holdco, Ltd., Charitable DAF GP, LLC, and each of their respective subsidiaries and affiliates.

11. "Including" — means including but not limited to.

12. "Person" — means any individual, partnership, joint venture, corporation, limited liability company, trust, estate, unincorporated association, governmental authority, or any other entity.

13. "Relevant Period" — the period from April 1, 2021 through the present.

14. "Services Agreement" — the Services Agreement dated effective April 1, 2021, between You and Charitable DAF Fund, L.P. and the DAF Subsidiaries listed therein, together with all amendments, change requests, schedules, annexes, and supplements thereto.

15. "Supporting Organizations" — Highland Dallas Foundation, Inc., Highland Kansas City Foundation, Inc., Highland Santa Barbara Foundation, Inc., and the Community Foundation of North Texas.

16. "You" or "Your" — Highgate Consulting Group, Inc. d/b/a Skyview Group, and includes its officers, directors, employees, partners, principals, agents, representatives, contractors, attorneys, accountants, consultants, and all other persons acting on its behalf or under its direction, and any predecessor, successor, parent, subsidiary, affiliate, division, or department thereof, including but not limited to Scott Ellington, Chris Rice, Frank Waterhouse, Will Mabry, and any other personnel who provided services to or had access to records of the Debtor, the Fund, or any Fund Entity.

## II. INSTRUCTIONS

17. Unless otherwise indicated, these requests cover the Relevant Period.

18. If there are no Documents responsive to any particular Document request, the response shall state so in writing.

19. These requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents after Your initial production.

20. Electronically stored information ("ESI") shall be produced in its native format or, if native production is not feasible, in a reasonably usable, searchable format such as single-page TIFF images with extracted text and metadata in a standard load file (e.g., Concordance or Relativity). All metadata fields, including but not limited to author, date created, date modified, date sent, date received, sender, recipient(s), cc, bcc, subject, and file path, shall be preserved and produced.

21. The use of the singular form of any word includes the plural and vice versa. The use of any tense of any verb includes all other tenses. The connective "and" shall be construed as both conjunctive and disjunctive, and the connective "or" shall be construed as both disjunctive and conjunctive, so as to bring within the scope of these requests all Documents and Communications that might otherwise be construed to be outside the scope thereof.

22. No request is intended to limit the scope of any other request.

23. The foregoing instructions are not intended to limit Your obligations under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure

(including Rule 2004), the Recognition Order, or any other applicable rule, regulation, or law.

## III. REQUESTS FOR PRODUCTION

### A. ENGAGEMENT AND SCOPE

1. The Services Agreement, in all forms, including all amendments, change requests, schedules, annexes, the DAF Subsidiary Schedule, the Authorized Signatory Schedule, and supplements.

2. All Documents and Communications concerning the scope, purpose, objectives, or terms of the Services Agreement, including all instructions, directions, or guidance received from any Person concerning the services to be performed.

3. All invoices, billing records, fee statements, Base Services Fee calculations, Actual Third-Party Cost reports, Services Payment records, and payment records concerning services performed by You for or on behalf of the Debtor, the Fund, or any Fund Entity during the Relevant Period.

4. All Documents and Communications concerning any change, expansion, limitation, or amendment to the Services or the Base Services Fee, including any Change Requests and annual fee-adjustment reports.

### B. ELECTRONIC BOOKS AND RECORDS

5. All electronically maintained books, records, databases, accounting systems, general-ledger platforms, fund-accounting systems, document-management systems, shared drives, cloud repositories, data rooms, and other electronic repositories in Your possession, custody, or control containing Documents concerning the Debtor, the Fund, or any Fund Entity, including complete database

exports in native format with all metadata, audit trails, version histories, user-access logs, file indexes, and data dictionaries.

6. All Documents and Communications concerning any data room, document repository, file-sharing platform, or other electronic or physical location maintained, hosted, or administered by You containing Documents concerning the Debtor, the Fund, or any Fund Entity, including a complete index, log, or inventory of all materials contained therein.

**C. FINANCIAL REPORTING AND ACCOUNTING**

7. All general ledgers, trial balances, balance sheets, income statements, cash-flow statements, financial statements, management accounts, and closing packages prepared, maintained, reviewed, or provided by You concerning the Debtor, the Fund, CLO HoldCo, Ltd., Charitable DAF Holdings Corp., or any Fund Entity during the Relevant Period, including both consolidated and entity-level statements.

8. All fund-accounting reports, capital-account statements, partner and member ledgers, investment schedules, portfolio reports, distribution records, net asset value calculations, P&L reconciliations, position reconciliations, and cash reconciliations prepared, maintained, or provided by You concerning the Fund or any Fund Entity.

9. All journal entries, adjusting entries, correcting entries, and reclassification entries posted or proposed by You in connection with the books and records of the Debtor, the Fund, or any Fund Entity.

10. All account reconciliations, intercompany reconciliations, bank reconciliations, and cash reconciliations prepared by You for the Debtor, the Fund, or any Fund Entity.

**D. TAX AND COMPLIANCE**

11. All tax returns, tax filings, tax workpapers, tax schedules, tax planning documents, federal and state tax preparation records, Form 1099 records, FATCA reports, ASC 740 analyses, and other tax-related Documents prepared, reviewed, or filed by You for or on behalf of the Debtor, the Fund, or any Fund Entity.

12. All compliance records, pre-trade verification records, personal trading monitoring records, and written policies and procedures maintained by You in connection with the Debtor, the Fund, or any Fund Entity.

**E. PAYMENTS AND TRANSACTIONS**

13. All Documents and Communications concerning any payment, transfer, distribution, contribution, dividend, fee, salary, bonus, incentive payment, expense reimbursement, or other disbursement made by or on behalf of the Debtor, the Fund, or any Fund Entity to Mark Eric Patrick, Paul Murphy, Shawn Raver, or any other director, officer, or employee during the Relevant Period.

14. All Documents and Communications concerning any intercompany transfer, loan, contribution, distribution, or other transaction between or among the Debtor, the Fund, CDM, DFW, CLO HoldCo, Ltd., Charitable DAF Holdings Corp., or any Fund Entity during the Relevant Period.

15. All Documents and Communications concerning any payment, fee, management fee, or other compensation paid by the Debtor, the Fund, CLO HoldCo,

Ltd., or any Fund Entity to You during the Relevant Period, including all wire transfer records, invoices, and Base Services Fee calculations.

**F. DONDERO, NEXPOINT, AND RELATED-PARTY MATTERS**

16. All Documents and Communications between or among You and Dondero concerning the Debtor, the Fund, any Fund Entity, any NexPoint entity, or any investment, fee, financial, or governance matter.

17. All Documents and Communications concerning the relationship between You and Dondero, including Dondero's role, authority, influence, or control over Your operations, personnel, compensation, or business decisions.

18. All Documents and Communications concerning any NexPoint entity's relationship with the Debtor, the Fund, or any Fund Entity, including investment advisory, management, or consulting arrangements.

19. All Documents and Communications concerning any invoice, payment request, or proposed payment by or on behalf of the Debtor, the Fund, or any Fund Entity to You that was not supported by services actually performed, including the approximately $1.5 million invoice referenced in the proceedings.

**G. CHRIS RICE AND THE OCTOBER 2024 EVENTS**

20. All Documents and Communications sent, received, created, reviewed, or maintained by Chris Rice concerning the Debtor, the Fund, any Fund Entity, SEI Secured Income Fund, Ltd., NexPoint, or any investment, advisory, or financial matter.

21. All Documents and Communications concerning Chris Rice's contacts with SEI Secured Income Fund, Ltd. or any SEI-affiliated entity in or around October 2024, including any financial information obtained, provided, or discussed.

22. All Documents and Communications concerning any information provided by or through Chris Rice to the Supporting Organizations, Dondero, or any other Person concerning the Debtor, the Fund, or any Fund Entity.

**H. TERMINATION AND TRANSITION**

23. All Documents and Communications concerning the termination of the Services Agreement on or about October 2, 2024, including the termination notice, the $500,000 termination payment, and all communications concerning the reasons for, circumstances of, or effect of the termination.

24. All Documents and Communications concerning the transition of services, books, records, data, systems, or access from You to Armanino Advisory LLC, Armanino LLP, or any other successor service provider.

25. All Documents and Communications concerning any books, records, files, data, systems, or property of the Debtor, the Fund, or any Fund Entity that remain in Your possession, custody, or control after the termination of the Services Agreement, including a complete inventory thereof.

**I. COMMUNICATIONS AND GENERAL**

26. All Documents and Communications between or among You and Mark Eric Patrick concerning the Debtor, the Fund, any Fund Entity, or any service, accounting, tax, compliance, or financial matter.

27. All Documents and Communications between or among You and Paul Murphy concerning the Debtor, the Fund, any Fund Entity, or any service, accounting, tax, compliance, or financial matter.

28. All Documents and Communications between or among You and Shields Legal Group, Seyfarth Shaw LLP, Douglas Mancino, Walkers (Cayman) LLP, Carrington Coleman, ValueScope, Inc. and/or ValueScope, LLC, or any other legal counsel, accountant, or advisor concerning the Debtor, the Fund, or any Fund Entity.

29. All Documents and Communications concerning any actual or potential conflict of interest, independence concern, or limitation on the scope or use of any engagement, service, or report.

30. All Documents and Communications concerning the retention, preservation, collection, review, production, or destruction of Documents, data, or files relating to the Debtor, the Fund, or any Fund Entity, including any document retention policies, litigation hold notices, or preservation requests received by You.

31. All Documents and Communications sufficient to identify the whereabouts of any books, records, files, or property of the Debtor, the Fund, or any Fund Entity that are or were in Your possession, custody, or control but have been transferred, returned, or delivered to any other Person, including identification of the Person to whom such materials were delivered and the date of delivery.

32. All Documents and Communications not otherwise called for by the foregoing requests that concern the Debtor, the Fund, CDM, DFW, or any Fund Entity.