**EXHIBIT 3**

VALUESCOPE, LLC (F/K/A VALUESCOPE, INC.) SUBPOENA

(Attached)

# UNITED STATES BANKRUPTCY COURT

District of Delaware

In re Charitable DAF HoldCo, Ltd. (In Official Liquidation),
Debtor in a foreign proceeding

Case No. 25-11376 (BLS)

*(Complete if issued in an adversary proceeding)*

Chapter 15

Plaintiff
v.

Adv. Proc. No. ________________

Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: ValueScope, LLC (f/k/a ValueScope, Inc.),
c/o Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company,
Registered Agent, 211 E. 7th Street, Suite 620, Austin, Texas 78701
*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
The documents, electronically stored information, and objects described in Exhibit A attached hereto. Production may be made electronically to Jason D. Angelo, Reed Smith LLP, jangelo@reedsmith.com, in lieu of appearance, on or before the date and time set forth below.

| PLACE | DATE AND TIME |
|---|---|
| Reed Smith LLP, 2850 N. Harwood Street, Suite 1500, Dallas, Texas 75201 (or electronically to jangelo@reedsmith.com) | November 9, 2026 at 10:00 a.m. (CT) |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: October 7, 2026

CLERK OF COURT

OR

_________________________
*Signature of Clerk or Deputy Clerk*

Jason D. Angelo
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Margot MacInnis and Sandipan Bhowmik, as Joint Official Liquidators and Foreign Representatives of Charitable DAF HoldCo, Ltd. (In Official Liquidation), who issues or requests this subpoena, are:
Jason D. Angelo (Del. No. 6009), Reed Smith LLP, 1201 North Market Street, Suite 1500, Wilmington, DE 19801
jangelo@reedsmith.com; Telephone: (302) 778-7500

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ______________________________________________
on *(date)* __________.

☐ I served the subpoena by delivering a copy to the named person as follows: ____________________________________
_____________________________________________________________________________________________
__________________________________on (*date*) ___________________; or

☐ I returned the subpoena unexecuted because: ____________________________________________________________
_____________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _______________________.

My fees are $ _________for travel and $_________for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

________________________________________________
*Server's signature*

________________________________________________
*Printed name and title*

________________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A

This Exhibit A sets forth the Documents and Communications to be produced pursuant to the subpoena duces tecum issued to ValueScope, LLC (f/k/a ValueScope, Inc.) under Federal Rule of Civil Procedure 45 (as incorporated by Federal Rule of Bankruptcy Procedure 9016), Federal Rule of Bankruptcy Procedure 2004, and Paragraph 9 of the Order Granting Recognition of Foreign Main Proceeding and Discretionary Relief entered on September 1, 2026 (D.I. 74) (the "Recognition Order") in the above-captioned Chapter 15 case.

## I. DEFINITIONS

1. "CDM" — CDMCFAD, LLC, a Delaware limited liability company incorporated on December 12, 2024.

2. "CDM Membership Interest" — the 100% membership interest in CDM received by the Debtor in connection with the LP/LLC Exchange.

3. "Communication" — the transmittal of information, in the form of facts, ideas, inquiries, or otherwise, and any response thereto, and therefore includes, but is not limited to, any telephone conversation, face-to-face meeting or conversation, visit, conference, internal or external discussion, emails, texts, electronic data rooms, file sharing, or other similar forms of electronic communication, or exchange of a document or documents.

4. "Concerning" — relating to, referring to, describing, evidencing, or constituting.

5. "Debtor" — Charitable DAF HoldCo, Ltd. (in Official Liquidation).

6. "DFW Share Issuance" — the issuance of 318 Participating Shares in the Debtor to DFW on or about February 7, 2025.

7. "Directors" — collectively, Mark Eric Patrick and Paul Murphy, in their capacity as former directors of the Debtor.

8. “Document” — shall have the same full meaning as in Federal Rule of Bankruptcy Procedure 7034 and Federal Rule of Civil Procedure 34 and includes the original, any draft (whether disseminated or not) and any copy, regardless of origin or location, of any correspondence, letter, memorandum, electronic mail (e-mail), text message, messages from messaging platforms (including WhatsApp, Teams, Skype, GoogleChat), statement, summary, outline, contract, agreement, book, pamphlet, periodical, telegram, telecopy, telefax, wire, cable, record, study, report, schedule, diary, desk calendar, organizer, appointment book, photograph, reproduction, map, survey, drawing, chart, model, index, tape, data sheet or data processing card, computerized information, data base or disk (including, without limitation, hard, soft, floppy, or compact), invoice, purchase order, ledger, journal, check (front and back), check stub, note, bond, assignment, transfer, account statement, tax report, tax schedule, financial statement, workpaper, business form, timesheet, log, inventory, print-out, computer tape, and notes of meetings, conferences, conversations or telephone conversations, and any and all other written, printed, telecopied, telefaxed, transcribed, punched, taped, stored, filmed and graphic matter, however produced or reproduced, and specifically includes any preliminary note, outline, or draft of any of the foregoing in Your custody, possession, or control.

9. “Fund” — Charitable DAF Fund, LP, a Cayman Islands exempted limited partnership.

10. "Fund Entities" — collectively, the Debtor, the Fund, CDM, CDH GP, Ltd. (the "New GP"), CLO HoldCo, Ltd., DFW Charitable Foundation ("DFW"), and each of their respective subsidiaries and affiliates.

11. "Including" — means including but not limited to.

12. "LP/LLC Exchange" — the transfer of the Debtor's limited partnership interest in the Fund to CDM on or about December 18, 2024, in exchange for the CDM Membership Interest.

13. "March 2025 Valuations" — collectively, the valuation analyses prepared by ValueScope concerning the 100% membership interest in CDM and certain Participating Shares of the Debtor as of March 25, 2025.

14. "Original GP" — Charitable DAF GP, LLC, a Delaware limited liability company that served as the general partner of the Fund from its formation until on or about March 7, 2024.

15. "Original Participating Shareholders" — Highland Dallas Foundation, Inc., Highland Kansas City Foundation, Inc., Highland Santa Barbara Foundation, Inc., and the Community Foundation of North Texas, being the holders of Participating Shares in the Debtor prior to the DFW Share Issuance.

16. "Participating Shares" — the participating shares in the Debtor, as defined in the Debtor's articles of association.

17. "Person" — means any individual, partnership, joint venture, corporation, limited liability company, trust, estate, unincorporated association, governmental authority, or any other entity.

18. "Prior Valuations" — collectively, the valuation analyses prepared by ValueScope as of December 31, 2020, December 31, 2021, December 31, 2022, December 31, 2023, and September 30, 2024 concerning 100 Participating Shares of the Debtor.

19. "Redemption" — the redemption of the Debtor's membership interest in CDM on or about March 27, 2025, for approximately $1,637,192.

20. "Relevant Period" — the period from January 1, 2020 through the present.

21. "Relevant Transactions" — collectively, the LP/LLC Exchange, the DFW Share Issuance, and the Redemption.

22. "Supporting Organizations" — Highland Dallas Foundation, Inc., Highland Kansas City Foundation, Inc., Highland Santa Barbara Foundation, Inc., and the Community Foundation of North Texas.

23. "Valuation Damages Report" — any report, analysis, memorandum, presentation, schedule, model, or other Document prepared by or for ValueScope that analyzes, quantifies, or addresses damages, diminution in value, lost value, or other monetary impact arising from or relating to the Relevant Transactions.

24. "You" or "Your" — ValueScope, LLC (f/k/a ValueScope, Inc.), including ValueScope, Inc. prior to its conversion into ValueScope, LLC on or about June 27, 2024, and includes its officers, directors, managers, members, employees, partners, principals, agents, representatives, contractors, attorneys, accountants, consultants, and all other persons acting on its behalf or under its direction, and any predecessor, successor, parent, subsidiary, affiliate, division, or department thereof.

## II. INSTRUCTIONS

25. Unless otherwise indicated, these requests cover the Relevant Period.

26. These requests call for all responsive Documents and Communications within Your possession, custody, or control, including Documents and Communications created or received by ValueScope, Inc. before its conversion into ValueScope, LLC.

27. If there are no Documents responsive to any particular Document request, the response shall state so in writing.

28. These requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents after Your initial production.

29. Electronically stored information ("ESI") shall be produced in its native format or, if native production is not feasible, in a reasonably usable, searchable format such as single-page TIFF images with extracted text and metadata in a standard load file (e.g., Concordance or Relativity). All metadata fields, including but not limited to author, date created, date modified, date sent, date received, sender, recipient(s), cc, bcc, subject, and file path, shall be preserved and produced.

30. The use of the singular form of any word includes the plural and vice versa. The use of any tense of any verb includes all other tenses. The connective "and" shall be construed as both conjunctive and disjunctive, and the connective "or" shall be construed as both disjunctive and conjunctive, so as to bring within the scope of these requests all Documents and Communications that might otherwise be construed to be outside the scope thereof.

31. No request is intended to limit the scope of any other request.

32. If any Document or Communication, or any portion thereof, responsive to these requests is withheld or redacted on the basis of any privilege or protection, You shall expressly make the claim and provide a privilege log, consistent with Federal Rule of Civil Procedure 45(e)(2)(A), identifying for each such Document or Communication its date, author(s), recipient(s), general subject matter, type of Document, number of pages, the privilege or protection claimed, and the factual basis for the claim, and shall produce all non-privileged portions.

33. The foregoing instructions are not intended to limit Your obligations under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure (including Rule 2004), the Recognition Order, or any other applicable rule, regulation, or law.

## III. REQUESTS FOR PRODUCTION

### A. ENGAGEMENTS AND SCOPE

1. All engagement letters, retainer agreements, statements of work, fee agreements, and amendments thereto between You and the Debtor, CDM, the Fund, Mark Eric Patrick, Paul Murphy, Shields Legal Group, Walkers (Cayman) LLP, or any other Person concerning the engagement of Your services in connection with the Debtor, the Fund, CDM, the Relevant Transactions, or any Fund Entity.

2. All Documents and Communications concerning the scope, purpose, objectives, or terms of each engagement or assignment You performed for or on behalf of the Debtor, the Fund, CDM, or any Fund Entity, including all instructions, directions, or guidance received from any Person.

3. All invoices, billing records, fee statements, and payment records concerning services performed by You for or on behalf of the Debtor, the Fund, CDM, or any Fund Entity during the Relevant Period.

4. All Documents and Communications concerning any change, expansion, limitation, or amendment to the scope of any engagement, including any request that an analysis address a transaction, fairness, damages, or reliance by any Person.

**B. PRIOR VALUATIONS**

5. Each of the Prior Valuations, in all forms, including all drafts, final versions, attachments, exhibits, appendices, and supplements.

6. All workpapers, calculations, models, spreadsheets, databases, schedules, and supporting data underlying or used in connection with the Prior Valuations, including all inputs, assumptions, discount rates, comparables, and adjustments.

7. All Documents and Communications concerning the methodology, approach, or analytical framework used in preparing the Prior Valuations, including any decision to use an asset-based or net asset value approach.

8. All Documents and Communications concerning the data, information, or Documents provided to You or obtained by You in connection with the Prior Valuations, including financial statements, balance sheets, asset schedules, liability schedules, and net asset value calculations.

**C. MARCH 2025 VALUATIONS**

9. The March 2025 Valuations, in all forms, including all drafts, final versions, attachments, exhibits, appendices, and supplements.

10. All Documents and Communications concerning the preparation of the valuation analysis of the 100% membership interest in CDM as of March 25, 2025, including all instructions, drafts, assumptions, calculations, and conclusions.

11. All Documents and Communications concerning the preparation of the valuation analysis of the Participating Shares as of March 25, 2025, including all instructions, drafts, assumptions, calculations, and conclusions.

12. All Documents and Communications concerning any change from the methodology used in the Prior Valuations to the methodology used in the March 2025 Valuations, including the use of discounted cash flow, discounts for lack of control, and discounts for lack of marketability.

13. All Documents and Communications concerning the impact of the LP/LLC Exchange, the DFW Share Issuance, or the Redemption on the value of the Debtor, the Fund, CDM, the CDM Membership Interest, or the Participating Shares.

14. All Documents and Communications concerning whether the March 2025 Valuations were prepared for, relied upon in, or used to support any transaction, redemption, sale, transfer, liquidation, or other disposition involving the Debtor, CDM, or the Fund.

**D. VALUATION METHODOLOGY AND ANALYSES**

15. All models, calculations, spreadsheets, databases, schedules, and other analytical tools used in preparing any valuation, appraisal, report, memorandum, or analysis concerning the Debtor, the Fund, CDM, or the Participating Shares.

16. All Documents and Communications concerning assumptions, projections, expected distributions, cash flows, net asset value, fair market value, liabilities, or other financial inputs used in any valuation or analysis.

17. All Documents and Communications concerning any discount for lack of control, discount for lack of marketability, control premium, liquidity adjustment, or other adjustment applied in any valuation or analysis.

18. All Documents and Communications concerning comparable companies, comparable transactions, market data, industry research, third-party reports, or other external materials considered, rejected, or relied upon in any valuation or analysis.

**E. SOURCE DOCUMENTS AND DATA**

19. All Documents and Communications provided to You by the Debtor, CDM, the Fund, the Directors, Mark Eric Patrick, Paul Murphy, Shields Legal Group, Walkers (Cayman) LLP, FTI Consulting, Inc., or any other Person in connection with any engagement or valuation.

20. All financial statements, balance sheets, asset schedules, liability schedules, general ledgers, account statements, distribution records, and net asset value calculations provided to, reviewed by, or prepared by You.

21. All Documents and Communications concerning the assets, investments, liabilities, distributions, and financial condition of the Fund, including materials concerning the approximately $270 million of assets managed through the Fund.

22. All Documents and Communications concerning any error, omission, inconsistency, change, correction, qualification, limitation, or concern identified in

connection with any data, source material, assumption, methodology, or conclusion used in any valuation or analysis.

**F. COMMUNICATIONS WITH THIRD PARTIES**

23. All Documents and Communications between or among You and Mark Eric Patrick concerning the Debtor, the Fund, CDM, the Relevant Transactions, any valuation, any analysis, or any report.

24. All Documents and Communications between or among You and Paul Murphy concerning the Debtor, the Fund, CDM, the Relevant Transactions, any valuation, any analysis, or any report.

25. All Documents and Communications between or among You and Shields Legal Group or Walkers (Cayman) LLP concerning the Debtor, the Fund, CDM, the Relevant Transactions, any valuation, any analysis, or any report.

26. All Documents and Communications between or among You and FTI Consulting, Inc., Weaver and Tidwell, LLP, Mercer, or any other valuation firm, accountant, advisor, or consultant concerning the Debtor, the Fund, CDM, the Relevant Transactions, or any valuation or analysis.

27. All Documents and Communications concerning the presentation by You and Douglas Mancino to Holland & Knight LLP on or about November 20, 2024, concerning the Debtor, the Fund, or any Fund Entity, including all presentation materials, slides, handouts, reports, data, notes, memoranda, summaries, and follow-up communications, and all Documents and Communications concerning the preparation, review, revision, or approval of such presentation.

**G. RELEVANT TRANSACTIONS AND GOVERNANCE**

28. All Documents and Communications concerning the LP/LLC Exchange, including the transfer of the Debtor's limited partnership interest in the Fund to CDM, the consideration exchanged, and the effect of the transfer on any valuation or analysis.

29. All Documents and Communications concerning the DFW Share Issuance, including the issuance of 318 Participating Shares, the resulting dilution, and the effect of the issuance on the value of the Original Participating Shareholders' interests.

30. All Documents and Communications concerning the Redemption, including the redemption of the Debtor's membership interest in CDM, the approximately $1,637,192 proceeds, and any analysis of whether the Redemption price reflected fair market value.

31. All Documents and Communications concerning the CDM Limited Liability Company Agreement, the rights and restrictions applicable to the CDM Membership Interest, the Manager's authority, redemption provisions, and any governance or fiduciary-duty issue considered in connection with a valuation or analysis.

**H. VALUATION DAMAGES REPORT**

32. The Valuation Damages Report, in all forms, including all drafts, final versions, attachments, exhibits, appendices, schedules, and supplements.

33. All workpapers, calculations, models, spreadsheets, databases, assumptions, and supporting data underlying or used in connection with the Valuation Damages Report.

34. All Documents and Communications concerning the preparation, review, revision, dissemination, use, or reliance upon the Valuation Damages Report, including any discussion of causation, diminution in value, lost value, or alternative valuation outcomes.

**I. OTHER SERVICES AND RELATED WORK**

35. All Documents and Communications concerning any other services performed by You for or on behalf of the Debtor, the Fund, CDM, DFW, or any Fund Entity during the Relevant Period, including tax, assurance, advisory, valuation, consulting, investment, or real-estate-related services.

36. All Documents and Communications concerning any conflict of interest, independence concern, limitation, qualification, disclaimer, or restriction on the scope or use of any engagement, valuation, report, or analysis.

**J. DOCUMENT RETENTION AND PRESERVATION**

37. All Documents and Communications concerning the retention, preservation, collection, review, production, or destruction of Documents, data, or files relating to Your engagement(s) by or on behalf of the Debtor, the Fund, CDM, or any Fund Entity, including document-retention policies, litigation-hold notices, and preservation requests.

**K. PRIVILEGE, OWNERSHIP, AND WITHHELD MATERIALS**

38. All privilege logs, withholding logs, redaction logs, ownership assertions, and Documents and Communications concerning any decision to withhold, redact, segregate, or exclude responsive materials on the basis of privilege, protection, confidentiality, ownership, or third-party rights.

39. All Documents and Communications concerning any assertion that responsive Documents or Communications belong to the Fund, any Fund Entity, or any other Person, including any instructions from a client or third party concerning ownership or production.

40. All Documents and Communications concerning any request, demand, order, subpoena, or proceeding requiring You to produce Documents or Communications relating to the Debtor, the Fund, CDM, the Relevant Transactions, or any valuation.

41. All Documents and Communications sufficient to identify every responsive Document or Communication not produced in response to these requests and the basis on which it was not produced.