# EXHIBIT 12

MERCER (US) LLC SUBPOENA

(Attached)

# UNITED STATES BANKRUPTCY COURT

District of Delaware

In re Charitable DAF HoldCo, Ltd. (In Official Liquidation),
Debtor in a foreign proceeding

Case No. 25-11376 (BLS)

(Complete if issued in an adversary proceeding)

Chapter 15

Plaintiff
v.

Adv. Proc. No. ________

Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Mercer (US) LLC, c/o The Corporation Trust Company,
Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801
*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
The documents, electronically stored information, and objects described in Exhibit A attached hereto. Production may be made electronically to Jason D. Angelo, Reed Smith LLP, jangelo@reedsmith.com, in lieu of appearance, on or before the date and time set forth below.

| PLACE | DATE AND TIME |
|---|---|
| Reed Smith LLP, 599 Lexington Avenue, 22nd Floor,<br>New York, New York 10022<br>(or electronically to jangelo@reedsmith.com) | November 9, 2026 at 10:00 a.m. (ET) |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: October 7, 2026

CLERK OF COURT

OR

________________________
*Signature of Clerk or Deputy Clerk*

Jason D. Angelo
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Margot MacInnis and Sandipan Bhowmik, as Joint Official Liquidators and Foreign Representatives of Charitable DAF HoldCo, Ltd. (In Official Liquidation), who issues or requests this subpoena, are:
Jason D. Angelo (Del. No. 6009), Reed Smith LLP, 1201 North Market Street, Suite 1500, Wilmington, DE 19801
jangelo@reedsmith.com; Telephone: (302) 778-7500

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ______________________________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ____________________________________
_____________________________________________________________________________________________
__________________________________ on (*date*) ___________________ ; or

☐ I returned the subpoena unexecuted because: ____________________________________________________________
_____________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _______________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

_______________________________________________
*Server's signature*

_______________________________________________
*Printed name and title*

_______________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A

This Exhibit A sets forth the Documents and Communications to be produced pursuant to the subpoena duces tecum issued to Mercer (US) LLC under Federal Rule of Civil Procedure 45 (as incorporated by Federal Rule of Bankruptcy Procedure 9016), Federal Rule of Bankruptcy Procedure 2004, and Paragraph 9 of the Order Granting Recognition of Foreign Main Proceeding and Discretionary Relief entered on September 1, 2026 (D.I. 74) (the "Recognition Order") in the above-captioned Chapter 15 case.

## I. DEFINITIONS

1. "CDM" — CDMCFAD, LLC, a Delaware limited liability company formed on December 12, 2024.

2. "Communication" — the transmittal of information, in the form of facts, ideas, inquiries, or otherwise, and any response thereto, and therefore includes, but is not limited to, any telephone conversation, face-to-face meeting or conversation, visit, conference, internal or external discussion, email, text message, electronic data room, file sharing, or other similar form of electronic communication, or exchange of a Document or Documents.

3. "Compensation Decisions" — collectively, the resolutions of the Directors dated on or about September 13, 2024 and October 1, 2024 concerning the compensation of Mark Eric Patrick, the Patrick Employment Agreement, and any other decision approving, setting, or paying salary, bonus, long-term incentive, or other remuneration to any Director or officer of the Debtor or any Fund Entity during the Relevant Period.

4. "Concerning" — relating to, referring to, describing, evidencing, or constituting.

5. "Debtor" — Charitable DAF HoldCo, Ltd. (in Official Liquidation).

6. "Directors" — collectively, Mark Eric Patrick and Paul Murphy, in their capacity as former directors of the Debtor.

7. "Document" — shall have the same full meaning as in Federal Rule of Bankruptcy Procedure 7034 and Federal Rule of Civil Procedure 34 and includes the original, any draft (whether disseminated or not) and any copy, regardless of origin or location, of any correspondence, letter, memorandum, electronic mail (e-mail), text message, messages from messaging platforms (including WhatsApp, Teams, Skype, GoogleChat), statement, summary, outline, contract, agreement, book, pamphlet, periodical, telegram, telecopy, telefax, wire, cable, record, study, report, schedule, diary, desk calendar, organizer, appointment book, photograph, reproduction, map, survey, drawing, chart, model, index, tape, data sheet or data processing card, computerized information, data base or disk (including, without limitation, hard, soft, floppy, or compact), invoice, purchase order, ledger, journal, check (front and back), check stub, note, bond, assignment, transfer, account statement, tax report, tax schedule, financial statement, workpaper, business form, timesheet, log, inventory, print-out, computer tape, and notes of meetings, conferences, conversations or telephone conversations, and any and all other written, printed, telecopied, telefaxed, transcribed, punched, taped, stored, filmed and graphic matter, however produced or reproduced, and specifically includes any preliminary note, outline, or draft of any of the foregoing in Your custody, possession, or control.

8. "Engagement" — any engagement, assignment, project, or services performed or proposed by You for or on behalf of the Debtor, the Fund, any Fund

Entity, Seyfarth Shaw LLP, or any Director, including the services described in the Statement of Work.

9. “Fund” — Charitable DAF Fund, LP, a Cayman Islands exempted limited partnership.

10. “Fund Entities” — collectively, the Debtor, the Fund, CDM, CDH GP, Ltd., CLO HoldCo, Ltd., Charitable DAF Holdings Corp., Liberty CLO Holdco, Ltd., DFW Charitable Foundation, and each of their respective subsidiaries and affiliates; any one of them is a “Fund Entity.”

11. “Including” — including but not limited to.

12. “Interviewees” — Mark Eric Patrick, Alex McGeoch, Shawn Raver, Steve Hastings, Paul Murphy, Ken Gill, Jim Shields, and any other Person interviewed or consulted by You in connection with the Engagement.

13. “Mercer Report” — each compensation assessment, report, presentation, or analysis prepared by You in connection with the Engagement, including the market compensation assessment dated on or about August 14, 2024 and the report dated on or about August 26, 2024, together with all drafts, versions, appendices, and supplements.

14. “Patrick Employment Agreement” — the Executive Employment Agreement between Mark Eric Patrick and the Debtor, stated to be effective as of March 24, 2021, and all drafts and amendments.

15. "Person" — any individual, partnership, joint venture, corporation, limited liability company, trust, estate, unincorporated association, governmental authority, or any other entity.

16. "Reasonableness Opinion Letter" — the reasonableness opinion letter contemplated by Step 2 of the Statement of Work, in any draft or final form, whether or not issued.

17. "Relevant Period" — the period from January 1, 2024 through the present.

18. "Statement of Work" — the Compensation Consulting Services Statement of Work dated February 29, 2024, addressed to the late Douglas Mancino, then of Seyfarth Shaw LLP, together with the engagement letter dated on or about February 29, 2024 referenced therein and any amendments or supplements.

19. "Supporting Organizations" — Highland Dallas Foundation, Inc., Highland Kansas City Foundation, Inc., Highland Santa Barbara Foundation, Inc., and the Community Foundation of North Texas.

20. "You" or "Your" — Mercer (US) LLC, and includes its officers, directors, employees, partners, principals, agents, representatives, contractors, subcontractors, consultants, and all other Persons acting on its behalf or under its direction, and any predecessor, successor, parent (including Marsh McLennan), subsidiary, affiliate, division, or department thereof, including Heidi O'Brien, Matthew Mullen, Katy Ringenberg-Means, Chuhan Huang, and any other personnel who worked on the Engagement.

## II. INSTRUCTIONS

21. Unless otherwise indicated, these requests cover the Relevant Period, which begins on January 1, 2024.

22. If there are no Documents responsive to any particular request, the response shall state so in writing.

23. These requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents after Your initial production.

24. Electronically stored information ("ESI") shall be produced in its native format or, if native production is not feasible, in a reasonably usable, searchable format such as single-page TIFF images with extracted text and metadata in a standard load file (e.g., Concordance or Relativity). All metadata fields, including author, date created, date modified, date sent, date received, sender, recipient(s), cc, bcc, subject, and file path, shall be preserved and produced.

25. The use of the singular form of any word includes the plural and vice versa. The use of any tense of any verb includes all other tenses. The connective "and" shall be construed as both conjunctive and disjunctive, and the connective "or" shall be construed as both disjunctive and conjunctive, so as to bring within the scope of these requests all Documents and Communications that might otherwise be construed to be outside the scope thereof.

26. No request is intended to limit the scope of any other request.

27. If any Document or Communication, or any portion thereof, responsive to these requests is withheld or redacted on the basis of any privilege or protection, You

shall expressly make the claim and provide a privilege log, consistent with Federal Rule of Civil Procedure 45(e)(2)(A), identifying for each such Document or Communication its date, author(s), recipient(s), general subject matter, type of Document, number of pages, the privilege or protection claimed, and the factual basis for the claim, and shall produce all non-privileged portions.

28. The foregoing instructions are not intended to limit Your obligations under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure (including Rule 2004), the Recognition Order, or any other applicable rule, regulation, or law.

29. These requests seek Documents in Your possession, custody, or control, including Documents maintained by or for any former employee, such as Heidi O'Brien, that remain in Your systems, archives, or backups.

## III. REQUESTS FOR PRODUCTION

### A. ENGAGEMENT AND SCOPE

1. The Statement of Work and any engagement letter, master services agreement terms and conditions, amendment, supplement, or side letter governing the Engagement, in executed and draft form, including the engagement letter dated on or about February 29, 2024, and Documents sufficient to show each Person who executed, accepted, or acknowledged the Statement of Work or any engagement letter, and the date of each such execution, acceptance, or acknowledgment.

2. All Documents and Communications concerning how You came to be engaged, including all Communications with Douglas Mancino, Seyfarth Shaw LLP, Mark Eric Patrick, Paul Murphy, or Shields Legal Group before February 29, 2024,

and all Documents identifying who selected You, who instructed You, and to whom You reported.

3. All Documents and Communications concerning the scope, purpose, or objectives of the Engagement, and any change, expansion, or limitation to that scope, including any change from the peer group described in the Statement of Work (Mercer's 2023 Compensation Survey for Investment Groups within Endowments and Foundations) to the private equity, REIT, and general industry comparators used in the Mercer Report.

4. All invoices, billing records, time entries, expense records, and payment records for the Engagement, including Documents sufficient to identify each Person that paid You and the date and amount of each payment.

**5.** All conflict checks, independence reviews, and Documents and Communications concerning any actual or potential conflict of interest under Your Global Business Standards for Executive Rewards or otherwise in connection with the Engagement.

## B. THE MERCER REPORT AND THE REASONABLENESS OPINION LETTER

6. The Mercer Report, in all forms, including all drafts, redlines, versions, appendices, exhibits, and supplements, and all Communications transmitting any of them.

7. The Reasonableness Opinion Letter, in all draft and final forms, and Documents sufficient to show whether it was issued and, if not, why not.

8. All Documents and Communications concerning the timing of the Engagement, including the period between the Statement of Work and the issuance of the Mercer Report, any delay in the receipt of requested data, any interim, preliminary, or draft analyses prepared between February 29, 2024 and August 26, 2024, and any extension of the deadlines set out in the Statement of Work.

9. All Documents and Communications concerning comments, edits, or feedback on any draft of the Mercer Report or the Reasonableness Opinion Letter from any Director, Mark Eric Patrick, Douglas Mancino, Seyfarth Shaw LLP, Shields Legal Group, or any other Person, and all Documents showing how You responded.

10. All Documents and Communications reflecting peer review, quality-control review, supervisory approval, or any concern, question, or reservation raised by any of Your personnel about the Engagement, the methodology, the data, or the conclusions of the Mercer Report.

11. All Documents and Communications concerning the designation of the Mercer Report as "Subject to Attorney/Client Privilege," including any instruction from any Person to apply that designation.

**C. METHODOLOGY, DATA, AND INPUTS**

12. All workpapers, models, spreadsheets, calculations, and analyses underlying the Mercer Report, in native format.

13. Documents sufficient to identify every company, organization, and survey participant included in, or considered and excluded from, each comparator group, and all Documents concerning the criteria for those decisions.

14. All data extracts, custom cuts, and working files from each survey or database used for the Mercer Report, including the 2024 and 2023 Preqin Private Capital Compensation and Employment Review, the 2022 Heidrick & Struggles North America Private Equity Compensation Survey, the REIT proxy filings, the 2023 Mercer US Benchmark Database, the 2024 Mercer US Endowments and Foundations Investment Groups Survey, and the benefits surveys and tools identified in the Mercer Report, together with Documents showing the size scoping, sample sizes, and data-aging calculations applied.

15. All Documents and Communications concerning the asset size of approximately $350 million and revenue of approximately $78 million used to scope the market data, including the source of each figure, the Person who provided it, and any analysis of its accuracy.

16. All Documents and Communications concerning the decision to benchmark against chief executive officer and chief investment officer positions, the treatment of the legal and compliance components of Mark Eric Patrick's role, and the decision to target the top quartile.

17. All data and Documents provided to You by the Debtor, the Fund, any Fund Entity, any Director, Shawn Raver, or any other Person in connection with the Engagement, including compensation data, job descriptions, organization charts, employment agreements, financial statements, historical fund balances, and fund earnings data.

18. All Documents and Communications concerning the statement in the Mercer Report that compensation to date had been "well below market," including the information provided to You about Mark Eric Patrick's prior compensation and the compensation of his predecessor, Grant Scott, regardless of whether such Documents and Communications were created before the Relevant Period.

**D. LONG-TERM INCENTIVE AND COMPENSATION DECISIONS**

19. All Documents and Communications concerning the design of the recommended long-term incentive, including the 7.5% rate, the 10% hurdle, the 25% cap, the performance periods, and whether any initial performance period should include 2021 or other periods before the Engagement, regardless of whether such Documents and Communications were created before the Relevant Period.

20. All Documents and Communications concerning the calculation of an approximately $5.08 million long-term incentive payment for 2021 through 2023, the fund earnings data used, the statement that such data were not net of fund expenses, and any recalculation using net fund returns.

21. All Documents and Communications concerning the recommended base salary of $850,000 and the alternative of $750,000 if general partner liability insurance were obtained.

22. All Documents and Communications concerning the Compensation Decisions, including any Communication in which You were asked to review, confirm, or comment on any Compensation Decision, the Patrick Employment Agreement, the approximately $4,759,000 long-term incentive payment, the

$975,000 long-term incentive payment, or the 2023 discretionary bonus of 2.5 times base salary.

23. All Documents and Communications concerning any analysis, advice, or statement concerning the reasonableness of compensation for any Director or for Shawn Raver, other than Mark Eric Patrick.

24. All Documents and Communications concerning the tax treatment of any recommended compensation, including IRC Section 457A, IRC Section 4958, excess-benefit, or private-inurement considerations, and any advice from counsel referenced in the Mercer Report.

**E. INTERVIEWS**

25. All notes, memoranda, summaries, recordings, questionnaires, and other records of each interview of an Interviewee, and all Communications scheduling or following up on those interviews.

26. All Documents and Communications concerning how the Interviewees were selected, including any list of proposed interviewees provided to You, and any consideration of whether an Interviewee was independent of Mark Eric Patrick.

**F. COMMUNICATIONS**

27. All Communications between You and Mark Eric Patrick, Paul Murphy, or Shawn Raver concerning the Engagement, the Mercer Report, the Debtor, the Fund, or any Fund Entity.

28. All Communications between You and Douglas Mancino or Seyfarth Shaw LLP concerning the Engagement, the Mercer Report, the Debtor, the Fund, or any Fund Entity.

29. All Communications between You and Shields Legal Group, Hunton Andrews Kurth LLP, Walkers (Cayman) LLP, Carrington, Coleman, Sloman & Blumenthal, LLP, ValueScope, Inc., Weaver and Tidwell, LLP, or any other counsel, accountant, or advisor concerning the Engagement, the Mercer Report, the Debtor, the Fund, or any Fund Entity.

30. All Communications between You and the Supporting Organizations or any court, government agency, or regulatory authority concerning the Engagement, the Mercer Report, the Debtor, the Fund, or any Fund Entity.

**G. HEIDI O'BRIEN MATERIALS**

31. All Documents and Communications sent, received, created, or maintained by Heidi O'Brien concerning the Engagement, the Mercer Report, the Reasonableness Opinion Letter, the Debtor, the Fund, any Fund Entity, or any Director, including emails, calendar entries, notes, and files retained in Your systems, archives, or backups after her departure.

32. Documents sufficient to show the date of Heidi O'Brien's departure from You, the steps taken to preserve or transfer her files concerning the Engagement, and the Person who assumed responsibility for the Engagement.

**H. GENERAL**

33. All Documents and Communications concerning any other services performed or proposed by You for or on behalf of the Debtor, the Fund, any Fund Entity, any Director, Seyfarth Shaw LLP (in connection with the Debtor or any Fund Entity), or any Supporting Organization during the Relevant Period.

34. All Documents and Communications concerning the retention, preservation, collection, or destruction of Documents relating to the Engagement, including any litigation hold or preservation request received by You.

35. All Documents and Communications concerning any request, demand, subpoena, or proceeding requiring You to produce Documents or provide testimony concerning the Engagement or the Mercer Report, and any Communications with any Person concerning such a request.

36. All Documents and Communications not otherwise called for by the foregoing requests that concern the Engagement, the Mercer Report, the Debtor, the Fund, or any Fund Entity.